Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>Crypto Infiniti LLC,<br><br>    Defendant. | Civil Action No. 1:22-CV-00155-SWS |

**AMENDED COMPLAINT**

INTRODUCTION

This is a breach of contract case where the Defendant used the false promise of purchasing large amounts of digital currency hosting services related to currency mining to induce the Plaintiffs to incur substantial financial expense and risk. After inducing Plaintiffs to take that action, the parties executed two contracts on the same date. That was not a coincidence. The two contracts were an integrated package that allowed Plaintiffs to create a specific payment structure to purchase and deliver the hosting services Defendant claimed it needed. Defendant owed the initial payment for each contract on the date of execution. Defendant took weeks to pay the initial payment for one contract and has failed to pay any for the other. Despite Plaintiffs' attempts to have Defendant fulfill its very first duty in these contracts to ensure Plaintiffs'

millions invested did not go to waste, Defendant has not complied and, as a result, forced Plaintiffs to file this Amended Complaint.

## PARTIES

1. Plaintiff, MO POW 3, LLC (MO 3) is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming. The sole member of MO 3 is a citizen of Wyoming.

2. Plaintiff, MO POW 4, LLC (MO 4) is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming. The sole member of MO 4 is a citizen of Wyoming.

3. Defendant, Crypto Infiniti, LLC (Infiniti), is a Nevada limited liability company with its principal place of business in Reno, Nevada. Upon information and belief, the members of Infiniti are citizens of California and China.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case under 28 U.S.C. § 1332(a).

5. Upon information and belief, complete diversity exists between Plaintiffs and Defendant.

6. The amount in controversy exceeds $75,000.

7. Venue is proper in this Court because the contract at issue selects Wyoming courts as the forum for resolving any dispute.

8. Defendant has also availed itself of Wyoming in several ways, including causing events of important consequences to happen in Wyoming, namely causing harm to a Wyoming LLC. Defendant's actions are substantially connected to Wyoming as they strike at the heart of a contract executed by a Wyoming LLC that selects Wyoming as the forum.

**FACTS COMMON TO ALL ALLEGATIONS**

9.     MO 3 and MO 4 are part of a consortium of companies providing hosting services for companies that mine for digital currency, analogous to a traditional data center business model. MO 3 and MO 4 entered into two binding service agreements with Infiniti to provide a total of thirty-five (35) megawatts (MW) of hosting service capacity to Infiniti's digital currency mining equipment, requiring the owners of MO 3 and MO 4 to procure energy services from the municipal utility, City Utilities of Springfield, pursuant to a combination of multiple property, energy, and economic development agreements.

10.    On May 26, 2022, MO 3 executed a First Master Hosting Services Agreement with Infiniti. (Attached as Exhibit 1.) This First Master Hosting Services Agreement set out the arrangement for MO 3 to provide hosting services to Infiniti's initial fifteen (15) MW of digital mining equipment in Greene County, Missouri, roughly equivalent to forty-two percent (42%) of Infiniti's 35 MW of contracted hosting capacity.

11.    Simultaneously, on May 26, 2022, Infiniti also entered into a Second Master Hosting Services Agreement with MO 4 to co-locate in the same county an additional twenty (20) MW digital mining equipment, the remaining fifty-eight percent (58%) of Infiniti's digital currency mining equipment in Green County, Missouri. (Attached as Exhibit 2.) MO 3's First Master Hosting Services Agreement unequivocally referenced the MO 4 Second Master Hosting Services Agreement in the recitals and in Section 1.2, stating *"The Rate Buy Down is being paid as consideration to "buy down" the Managed Services Rate of this Agreement and the 2nd Agreement."* (Exhibit 1 at 3, emphasis added.)

12.    The Second Master Hosting Services Agreement rate buy down was negotiated and structured to allow the owners of MO 3 and MO 4 to provide Infiniti an overall lower rate

for hosting services rate for its 35 MW development. Digital currency hosting services are materially dependent on procuring energy services at a discount to achieve a lower "levelized cost of energy", or "LCOE". In other words, only by executing both the two MO 3 and MO 4 hosting service agreements achieved the prerequisite economies of scale – 35 MW of hosting capacity - required for Infiniti's hosting services agreements to be financially viable at the combined pricing offered jointly to Infiniti from MO 3 and MO 4.

13. In exchange for and as consideration for receiving hosting services at a preferred rate, Infiniti agreed to make the following payments. First, Infiniti agreed to make two down payments specified in both the MO 3 and MO 4 Order Forms attached to both Master Hosting Services Agreements. Per the terms of the Order Forms, attached as Exhibit A to the Master Hosting Services Agreements, the down payments were due upon execution of both Hosting Services Agreements. Second, Infiniti agreed to pay monthly Managed Services Fees with a minimum required fee based on unutilized MW as outlined in the Order Form and Payment Schedule of MO 3's First Master Hosting Services Agreement and MO 4's Second Master Hosting Services Agreement. Article 2 also set out the timing, method, and conditions of payments.

14. As discussed in MO 3's First Master Hosting Services Agreement, Infiniti also entered into MO 4's Second Master Hosting Services Agreement on the same day as the first. This Agreement, however, was with MO 4. But aside from that difference, the basic terms and requirements of MO 4's Second Master Hosting Services Agreement are the same. The down payment and rate buy down in the Order Form were different than those in MO 3's First Master Hosting Services Agreement but remained consistent with the overall structure of the contracts.

15. After executing these two Master Hosting Service Agreements, Infiniti had a duty to make both down payments and begin the required rate buy down payments. Infiniti, however, did not make the required payments. Infiniti did not transfer funds upon execution of the agreements and then took additional time to make the required payments under MO 3's First Master Hosting Services Agreement. As of the filing of this Amended Complaint, Infiniti has not made any of the required payments under MO 4's Second Master Hosting Services Agreement.

16. On June 24, 2022, MO 4 notified Infiniti that it was in default of its obligations in the Second Master Hosting Services Agreement and demanded full payment. MO 4 also notified Infiniti that it may invoke the termination provisions in the Second Master Hosting Services Agreement.

17. Infiniti responded a little over a week later, demanding that MO 3 uphold its duties under the MO 3 First Master Hosting Services Agreement even if the MO 4 Second Master Hosting Services Agreement got terminated.

## CLAIM 1: BREACH OF CONTRACT

18. MO 3 and MO 4 incorporate by reference the foregoing Paragraphs of the Amended Complaint as if set forth fully herein.

19. MO 3 and Infiniti executed a valid contract with the First Master Hosting Services Agreement.

20. MO 3's First Master Hosting Service Agreement required Infiniti's performance on MO 4's Second Master Hosting Services Agreement.

21. MO 4's Second Master Hosting Services Agreement required timely payment of the down payment. Infiniti has failed to make the required down payment under MO 4's Second Master Hosting Services Agreement.

22. The above actions are a default and breach of the First Master Hosting Services Agreement.

23. Infiniti's breaches have caused MO 3 to suffer loss and damages in an amount to be determined at trial, which damages continue to accrue.

## CLAIM 2: BREACH OF CONTRACT

24. MO 3 and MO 4 incorporate by reference the foregoing Paragraphs of the Amended Complaint as if set forth fully herein.

25. MO 4 and Infiniti executed a valid contract with the Second Master Hosting Services Agreement.

26. MO 4's Second Master Hosting Services Agreement required timely payment of the down payment. Infiniti, in breach of MO 4's Second Master Hosting Services Agreement, has failed to make the required down payment under MO 4's Second Master Hosting Services Agreement.

27. The above actions are a default and breach of the Second Master Hosting Services Agreement.

28. Infiniti's breaches have caused MO 4 to suffer loss and damages in an amount to be determined at trial, which damages continue to accrue.

## CLAIM 3: FRAUDULENT INDUCEMENT

29. MO 3 and MO 4 incorporate by reference the foregoing Paragraphs of the Amended Complaint as if set forth fully herein.

30. Upon information and belief, Infiniti made false representations about its intent to locate its mining equipment and the required capacity of hosting services it would require.

Infiniti made these false representations to induce MO 3 and MO 4 to uneconomically develop digital currency mining infrastructure in Missouri for Infiniti.

31. Based on these false representations, MO 3 and MO 4 entered into a variety of property, energy, and economic development agreements with the local municipality and utility creating the obligation to pay the municipal utility company for those energy services to— (a) facilitate the rapid buildout of thirty-five (35) MW of digital currency hosting capacity and (b) began delivering the initial hosting services to Infiniti pursuant to MO 3.

32. At the time, MO 3 and MO 4 negotiated the Master Hosting Services Agreements and contracted for the required energy services, they reasonably believed the representations of Infiniti that it would require 35 MW of hosting services and capacity, not 15 MW. As a result, MO 3 and MO 4 incurred significant material expenses associated with (a) site preparation, (b) capital expenditures for electrical infrastructure, (c) professional services, and (d) other reasonable expenses required to establish and provide hosting services to Infiniti's mining equipment.

33. MO 3 and MO 4 have suffered damages to be proven at trial. Not only have they incurred expenses to prepare the site; but they have taken on material contractual exposure in contracting for energy services with the local utility based on the combined economic arrangement of both Master Hosting Services Agreements.

34. In sum, Infiniti fraudulently induced MO 3 and MO 4 to incur both expense and risk without Infiniti ever intending to comply with MO 4's Second Master Hosting Services Agreement.

## CLAIM 4: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. MO 3 and MO 4 incorporate by reference the foregoing Paragraphs of the Amended Complaint as if set forth fully herein.

36. The First and Second Master Hosting Services Agreements include an implied covenant of good faith and fair dealing. This covenant requires Infiniti's actions be consistent with the agreed-upon common purpose and justified expectations of the other party. The common purpose and expectations of the two Master Hosting Services Agreements was to leverage economies of scale to provide thirty-five (35) MW of energy services at a lower levelized cost of energy to allow a more mutually economically beneficial arrangement for both Parties.

37. Infiniti has breached the implied covenant of good faith and fair dealing through the conduct described herein.

38. As a result of the breach of this covenant, MO 3 and MO 4 have suffered loss and damages in an amount to be determined at trial, which damages are ongoing and continue at the time of the filing of this Amended Complaint.

## CLAIM 5: DECLARATORY JUDGMENT

39. MO 3 and MO 4 incorporate by reference the foregoing Paragraphs of the Amended Complaint as if set forth fully herein.

40. The Federal Declaratory Judgment Act provides, in pertinent part, that any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such

declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

41. Here, MO 3 and MO 4 executed the First and Second Master Hosting Services Agreements together to accomplish a common purpose of creating economies of scale for the delivery of large amounts of energy services. Section 1.2 of MO 3's First Master Hosting Services Agreement says exactly this, noting the rate buy down structure provides consideration for both hosting agreements. The combination of these agreements allowed for the rate buy down structure to exist, creating a workable economic solution for all parties.

42. MO 3 and MO 4 contemporaneously executed these agreements as two parts of a single, aggregate 35 MW development on behalf of Infiniti. The economic viability of developing the digital currency hosting capacity for the 35 MW Infiniti project did not and continues to remain uneconomic as two independent agreements.

43. Put another way, the related and integrated nature of the two agreements means MO 3 cannot perform the First Master Hosting Services Agreement without performance of MO 4's Second Master Hosting Services Agreement because the project depends on a certain amount of power at a blended rate.

44. Therefore, MO 3 and MO 4 are entitled to a declaration that the First and Second Master Hosting Services Agreements represent an interrelated set of agreements that require the performance of both. MO 3 and MO 4 are also entitled to a declaration that MO 3 does not have to perform MO 3's First Master Hosting Services Agreement until Infiniti fulfills its duties under the Second Master Hosting Services Agreement because the combined payments accomplish the rate buy down.

## REQUESTED RELIEF

WHEREFORE, MO 3 and MO 4 pray for the following relief:

A. That the Court enter judgment in favor of MO 3 and MO 4 on their claims for relief, specifically that:

    1. Infiniti has breached the First and Second Master Hosting Services Agreements and MO 3 and MO 4 are entitled to damages proven at trial;

    2. Infiniti has fraudulently induced MO 3 and MO 4 to enter into contracts and MO 3 and MO 4 are entitled to damages proven at trial;

    3. Infiniti has breached the implied covenant of good faith and fair dealing in both agreements and MO 3 and MO 4 are entitled to damages proven at trial; and

    4. The First and Second Master Hosting Services Agreements collectively provide the duties of the parties and MO 3 does not have to perform the First Master Hosting Services Agreement until Infiniti performs its duties under the Second Master Hosting Services Agreement.

B. That the Court award MO 3 and MO 4 their attorney fees and costs.

C. That the Court award such other and further relief as the Court deems just and proper.

DATED: August 8, 2022.

*/s/ Jeffrey S. Pope*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Fax: 307.778.8175
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC and MO POW 4, LLC

19351608_v2