Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR DEFENDANT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Civil Action No. 22-CV-155-SWS |
| | ) |
| CRYPTO INFINITI LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     NATURE OF THE CASE AND PROCEDURAL POSTURE ......................................... 2

III.    LEGAL STANDARD .................................................................................................... 4

IV.     ARGUMENT ................................................................................................................. 5

V.      CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Angell v. Freedom Mortg. Corp.*,
No. 16-cv-0192, 2016 WL 9453335, at *1 (D. Wyo. Sept. 8, 2016)........................................2

*Apodaca v. Safeway, Inc.*,
2015 WY 51, ¶ 9, 346 P.3d 21, 23 (Wyo. 2015) .......................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)), *aff'd*, 720 F.3d 788 (10th Cir. 2013) ............................................4

*Bear Peak Res., LLC v. Peak Powder River Res.*,
2017 WY 124, ¶ 68, 403 P.3d 1033, 1054 (Wyo. 2017) ................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555, 557, *aff'd*, 610 F. App'x 751 (10th Cir. 2015)...........................................4

*Berneike v. CitiMortgage, Inc.*,
708 F.3d 1141, 1146 (10th Cir 2013) .........................................................5

*Breen v. Pruter*,
No. 14-cv-00081, 2015 WL 6163439, at *8 (D. Wyo. Aug. 6, 2015), *aff'd*, 679
F. App'x 713 (10th Cir. 2017) ..............................................................8

*Claman v. Popp*,
2012 WY 92, ¶ 43, 279 P.3d 1003 at 1016 (Wyo. 2012) .......................................................9

*Cleary v. Wind Quarry, LLC*,
No. 15-CV-189-KHR, 2016 WL 10518596, at *2 (D. Wyo. Jan. 29, 2016).....................5, 10

*Elworthy v. First Tennessee Bank*,
2017 WY 33, ¶ 42, 391 P.3d 1113, 1124 (Wyo. 2017) .......................................................8, 9

*Excel Const., Inc. v. HKM Eng'g, Inc.*,
2010 WY 34, ¶¶ 25, 31, 228 P.3d 40 (Wyo. 2010)...........................................................11, 12

*Franklin Life Ins. Co. v. Johnson*,
157 F.2d 653, 657 (10th Cir. 1946) .........................................................15

*Free Speech v. Fed. Election Comm'n*,
No. 12-cv-127, 2013 WL 12142583, at *2 (D. Wyo. Mar. 19, 2013) .......................................4

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) .........................................................5

*Halling v. Yovanovich*,
  2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017) ........................................15

*Harper v. Fidelity & Guar. Life Ins. Co.*,
  843 P.2d 1190, 1197 (Wyo. 1992).......................................................................13

*In Re Country World Casinos, Inc.*,
  181 F.3d 1146, 1150 (10th Cir. 1999) .................................................................13

*JBC of Wyoming Corp. v. City of Cheyenne*,
  843 P.2d 1190, 1197 (Wyo. 1992).......................................................................11

*Koch v. Koch Indus., Inc.*,
  203 F.3d 1202, 1236 (10th Cir. 2000) ................................................................8, 9

*Maverick Benefit Advisors, LLC v. Bostrom*,
  2016 WY 96, ¶ 14, 382 P.3d 753, 758 (Wyo. 2016) ...........................................15

*Mincin v. Vail Holdings, Inc.*,
  308 F.3d 1105, 1108 (10th Cir. 2002) ...................................................................9

*MK Int'l LLC v. Crown Prod. & Servs. Inc.*,
  812 F. App'x 740, 746 (10th Cir. 2020)...............................................................11

*Morrow v. Xanterra Parks & Resorts*,
  No. 12-cv-141, 2012 WL 13065593, at *2 (D. Wyo. Oct. 22, 2012) .....................4

*Pennaco Energy, Inc. v. KD Co. LLC*,
  2015 WY 152, ¶ 79, 363 P.3d 18, 38–39 (Wyo. 2015) .........................................6

*Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*,
  929 P.2d 1228, 1234–35 (Wyo. 1996) .................................................................11

*Scherer Constr., LLC v. Hedquist Constr., Inc.*,
  2001 WY 23, ¶ 19, 18 P.3d 645, 653-54 (Wyo. 2001) ........................................13

*Schwartz v. Celestial Seasonings, Inc.*,
  124 F.3d 1246, 1252 (10th Cir. 1997) ...................................................................8

*Sinclair Wyoming Refinery Co. v. A&B Builders, Ltd.*,
  15-CV-91-ABJ, 2019 WL 13177821, at *12 (D. Wyo. June 11, 2019), 989
  F.3d 747 (10th Cir. 202 *aff'd sub nom. Sinclair Wyoming Ref. Co. v. A & B
  Builders, Ltd.*) .....................................................................................................6

*Smith v. United States*,
  561 F.3d 1090, 1098 (10th Cir. 2009) ...................................................................4

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*,
  887 F.3d 1003, 1020 (10th Cir. 2018) .................................................................12

*Stone v. Simone*,
   13-cv-00126, 2014 WL 11357747, at *2 (D. Wyo. July 7, 2014) ............................................4

*Ultra Res., Inc. v. Hartman*,
   2010 WY 36, ¶ 85, 226 P.3d 889, 920 (Wyo. 2010) ...............................................14

*U.S. Aviation Underwriters, Inc. v. Dassault Aviation*,
   505 F. Supp. 2d 1252, 1271 (D. Wyo. 2007).........................................15

*Western Plains Serv. Corp. v. Pondersoa Dev. Corp.*,
   769 F.2d 654, 657 (10th Cir. 1985) .........................................13

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201.........................................15

**Rules**

Fed. R. Civ. P. 9 .........................................1

Fed. R. Civ. P. 12 .........................................1

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), Defendant Crypto Infiniti LLC submits this brief in support of its motion to dismiss with prejudice Claims I, III, IV, and V in the First Amended Complaint ("Amended Complaint") filed by Plaintiffs MO POW 3, LLC and MO POW 4, LLC (collectively "Plaintiffs").

## I.   INTRODUCTION

In the Amended Complaint, Plaintiffs try to convert an ordinary contract claim into various flawed theories in an attempt to get MO POW 3, LLC out of its legally required performance under the first contract and to generate additional damages against Crypto Infiniti. The Court should dismiss these insufficiently pled claims, reject Plaintiffs' attempts to expand this case, and focus this case on the actual cause of action at issue.

**First**, Plaintiffs' breach of contract claim (Claim I) fails because Crypto Infiniti has fully performed its duties under the First Master Hosting Services Agreement. Indeed, Plaintiffs fail to allege any conduct to the contrary.

**Second**, Plaintiffs' fraudulent inducement claim (Claim III) not only fails to adequately plead any specific actionable misrepresentations of present fact allegedly made by Crypto Infiniti or its representatives with the particularity as required by FRCP 9(b), but also fails to adequately plead that Crypto Infiniti made any misrepresentations or that Plaintiffs reasonably relied on any such misrepresentations. Additionally, this claim is barred by Economic Loss Rule.

**Third**, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Claim IV) fails to allege any facts showing that Crypto Infiniti acted in bad faith relating to the performance of the contracts at issue.

**Fourth**, Plaintiffs' request for Declaratory Judgment (Claim V) is unnecessarily duplicative of their breach of contract claims, are excessively vague, and are not actually declaratory in nature.

## II.     NATURE OF THE CASE AND PROCEDURAL POSTURE[1]

Plaintiffs are Wyoming LLCs in the business of providing hosting services for companies that mine digital currency.  (Am. Compl., ECF No. 7, ¶¶ 1, 2, and 9.)  Crypto Infiniti is a Nevada LLC.  (*Id*. at ¶ 3.)  Crypto Infiniti mines digital currency using its mining equipment (*Id*. at ¶ 9.)

### A.  The First Master Hosting Services Agreement

The Amended Complaint alleges that on May 26, 2022, MO POW 3, LLC ("MO 3") and Crypto Infiniti entered into the First Master Hosting Services Agreement ("First Agreement.") (Am. Compl. ¶ 10.)  The First Agreement governed the relationship between MO 3 and Crypto Infiniti wherein MO 3 would provide hosting services to Crypto Infiniti for fifteen (15) megawatts (MW) of Crypto Infiniti's digital currency equipment.  (Am. Compl. ¶ 10; *See generally* Ex. 1 to Am. Compl., First Agreement.) Pursuant to the terms of the First Agreement, Crypto Infiniti was required to pay the Down Payment of $2,000,000.00 and Rate Buy Down Payment of $2,135,250.00 after both parties had executed an Order Form in compliance with the First Agreement.  (First Agreement, § 2.1.)  After the execution of the First Agreement, Crypto Infiniti paid to MO 3 both the Down Payment and Rate Buy Down Payment, for a total payment of $4,135,250.00. (Am. Compl. ¶ 15; First Agreement, Exhibit A.)

### B.  The Second Master Hosting Services Agreement

The Amended Complaint alleges that also on May 26, 2022, MO POW 4, LLC ("MO 4")— a separate entity and distinct from MO 3—and Crypto Infiniti entered into the Second Master

---

[1] Unless otherwise noted, the "facts" as outlined in this section are drawn from the allegations contained in the Amended Complaint. *See Angell v. Freedom Mortg. Corp.*, No. 16-cv-0192, 2016 WL 9453335, at *1 (D. Wyo. Sept. 8, 2016) (noting that "[i]n reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff" (quotation marks omitted)).  By reciting Plaintiffs' allegations in this Motion, Defendant does not concede the truth of any of Plaintiffs' allegations.  The allegations are recited herein solely for purposes of this Motion and are taken as true solely to the extent provided under the standards governing a Rule 12 (b)(6) Motion to Dismiss.

Hosting Services Agreement ("Second Agreement.") (Am. Compl. ¶ 11.) The Second Agreement governed the relationship between MO 4 and Crypto Infiniti wherein MO 4 would provide hosting services to Crypto Infiniti for twenty (20) megawatts (MW) of Crypto Infiniti's digital currency equipment.  (Am. Compl. ¶ 10; *See generally* Ex. 2 to Am. Compl., Second Agreement.)  The services under the Second Agreement were being provided independently by MO 4 to Crypto Infiniti at a separate location than those provided by MO 3 under the First Agreement. (*Compare* First Agreement, § 1.1(A)(1) *with* Second Agreement, § 1.1(A)(1).) Pursuant to the terms of the Second Agreement, Crypto Infiniti was required to make a Down Payment of $3,066,000.00 to MO 4 after both parties had executed an Order Form in compliance with the Second Agreement. (Second Agreement, § 2.1.) Plaintiffs allege that Crypto Infiniti has failed to make the Down Payment as prescribed by the terms of the Second Agreement.  (Am. Compl. ¶ 15.)

## C.  The Alleged Dispute

After executing the First Agreement and the Second Agreement, Plaintiffs allege "[Crypto] Infiniti had a duty to make both down payments and begin the required rate buy down payments." (Am. Compl. ¶ 15.) Plaintiffs take issue with the time it took Crypto Infiniti to make the required payments under the First Agreement, but admit that the payments totaling over four million dollars were made, and then allege "[Crypto] Infiniti has not made any of the required payments under [the Second Agreement]." (Am. Compl. ¶ 15.)  Due to this, "[o]n June 24, 2022, MO 4 notified [Crypto] Infiniti that it was in default of its obligations in the Second [] Agreement and demanded full payment." (Am. Compl. ¶ 16.) "MO 4 also notified [Crypto] Infiniti that it may invoke the termination provisions in the Second [] Agreement." (Am. Compl. ¶ 16.)  MO 3 did not assert any allegations of default of the First Agreement.  (*See generally*, Am. Compl.)   Crypto Infiniti responded to the June 24, 2022, notification demanding that MO 3 upholds its duties under the

First Agreement "even if the MO 4 Second [] Agreement got terminated." (Am. Compl. ¶ 17.) In response, Plaintiffs hastily instituted this action.

### D.  Procedural Posture

Plaintiffs commenced this action on or about July 18, 2022, by filing a complaint (the "Original Complaint") against Crypto Infiniti.  (ECF No. 1).  Prior to Crypto Infiniti responding to the Original Complaint, Plaintiffs filed their second complaint (the "Amended Complaint"). (ECF No. 7).  Originally only suing for breach of contract of the Second Agreement, Plaintiffs' Amended Complaint added a claim for breach of contract of the First Agreement.

### III.    LEGAL STANDARD

### A.  Rule 12(b)(6) – Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Free Speech v. Fed. Election Comm'n*, No. 12-cv-127, 2013 WL 12142583, at *2 (D. Wyo. Mar. 19, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *aff'd*, 720 F.3d 788 (10th Cir. 2013).  "Accordingly, complaints that 'offer[ ] labels and conclusions[,] a formulaic recitation of the elements of a cause of action or 'naked assertions devoid of further factual enhancement,' will not survive a motion to dismiss." *Stone v. Simone*, No. 13-cv-00126, 2014 WL 11357747, at *2 (D. Wyo. July 7, 2014) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557), *aff'd*, 610 F. App'x 751 (10th Cir. 2015); *Morrow v. Xanterra Parks & Resorts*, No. 12-cv-141, 2012 WL 13065593, at *2 (D. Wyo. Oct. 22, 2012) ("If a complaint fails to sufficiently allege facts supporting each element of a claim, then the court should dismiss the claim under Rule 12(b)(6)."). "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Free Speech*, 2013 WL 12142583, at *2 (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).

### B. Matters outside the Pleadings.

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. However, if a Plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the Plaintiff's claim, a Defendant may submit an indispensable copy to the court to be considered on a motion to dismiss. *Cf. Apodaca v. Safeway, Inc.*, 2015 WY 51, ¶ 9, 346 P.3d 21, 23 (Wyo. 2015); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir 2013) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).   Moreover, "mere legal conclusions and factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp.*, 130 F.3d at 1385. It is therefore proper for this Court to consider the attached Economic Development Rider Agreement, Ground Lease Agreement, and Interruptible Electric Service Agreement for purposes of this Motion to Dismiss.

### IV.    ARGUMENT

### A. Plaintiffs' First Cause of Action Fails to State a Claim for Breach of Contract.

Plaintiffs' breach of contract claim concerning the First Agreement fails for the simple reason that Plaintiffs do not allege *any* facts showing that Crypto Infiniti breached the First Agreement.  In fact, Plaintiffs admit that Crypto Infiniti has performed its obligations under the First Agreement by making the required payments under the First Agreement.  (Am. Compl. ¶ 15). Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Cleary v. Wind Quarry, LLC*, No. 15-CV-189-KHR, 2016 WL 10518596, at *2 (D. Wyo. Jan. 29, 2016).

To overcome this issue, Plaintiffs try to obfuscate the facts and argue to this Court that these two standalone contracts—the First Agreement and the Second Agreement—should be "integrated" into one contract. (Am. Compl. ¶ 43.) Their reasoning behind such an argument is obvious: MO 3 needs the alleged lack of performance by Crypto Infiniti under the Second Agreement, to which MO 3 is not a party, as a basis to excuse its own breach of the First Agreement.  And without the integration of the two contracts, MO 3 is left exposed as being the party who breached the First Agreement.

> Under general contract principles, when a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together. ***However, in order for an instrument to be incorporated into and become part of a contract, the instrument must actually be incorporated. It is not enough for the contract to merely mention the instrument; the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument***. Parties do not undertake obligations contained in a separate document unless their contract clearly says so. ***A reference in a contract to another instrument will incorporate the other instrument only to the extent indicated and for the specific purpose indicated***.

*Sinclair Wyoming Refinery Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2019 WL 13177821, at *12 (D. Wyo. June 11, 2019), 989 F.3d 747 (10th Cir. 202 *aff'd sub nom. Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*) (quoting *Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶ 79, 363 P.3d 18, 38–39 (Wyo. 2015) (emphasis added). The First Agreement makes the following references to the Second Agreement:

- WHEREAS Client is also concurrently entering into a second hosting agreement (the "2nd Agreement") with Host's affiliate MO POW 4, LLC for colocation at MO POW 4's facility located at 5501 East Farm Road 112, Strafford, Missouri 65757;

- WHEREAS Client desires to "buy down" Host's typical Managed Services Fee and also MO POW 4's typical Managed Services Fee, by providing a two million dollars ($2,000,000.00)

payment for discounted Managed Services in this Agreement and the 2nd Agreement during the Initial Term;

- 1.2 2nd Agreement. The Rate Buy Down is being paid as consideration to "buy down" the Managed Services Rate of this Agreement and the 2nd Agreement.

(Second Agreement, Recitals 2, 3, and §1.2.) Nothing in the Recitals or Section 1.2 demonstrates that the parties intended to incorporate all or even part of the Second Agreement into the First Agreement. There are no specific purposes indicated in the references. It is an even further stretch when considering the parties to the agreements are different.

Plaintiffs own Amended Complaint confirms the position that the contracts are two separate agreements: (1) Plaintiff MO 3 asserts a breach of contract claim for the First Agreement; (2) Plaintiff MO 4 asserts a breach of contract for the Second Agreement; and (3) Plaintiffs then allege the following facts in their Amended Complaint:

- MO 3 and MO 4 entered into *two* binding service agreements with [Crypto] Infiniti (Am. Compl. ¶ 9) (emphasis added);

- MO 3 executed the First Agreement with Crypto Infiniti (Am. Compl. ¶ 10);

- MO 4 executed the Second Agreement with Crytpo Infiniti (Am. Compl. ¶ 11);

- Payments were separately owed and calculated under the two Agreements (Am. Compl. ¶ 13);

- Plaintiffs even plead specifically that the Second Agreement "was with MO 4" and that "[t]he down payment and rate buy down in the Order Form [for the Second Agreement] were different than those in MO 3's First [] Agreement." (Am. Compl. ¶ 14).

Based on the face of the Complaint, is it not plausible that the First Agreement and Second Agreement can be construed as one contract. Consequently, because Plaintiffs have alleged no

conduct by Crypto Infiniti that would constitute a breach the First Agreement, that claim must be dismissed.

### B. Plaintiffs' Fraudulent Inducement Claim Lacks Particularity.

Fed. R. Civ. Pro. 9(b) specifically provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent knowledge, and other conditions of a person's mind may be alleged generally." Fraud must be alleged with particularity in order to meet the requirements of Fed. R. Civ. Pro. 9(b), and proved by clear and convincing evidence. *Breen v. Pruter*, No. 14-cv-00081, 2015 WL 6163439, at *8 (D. Wyo. Aug. 6, 2015), *aff'd*, 679 F. App'x 713 (10th Cir. 2017); *accord Elworthy v. First Tennessee Bank*, 2017 WY 33, ¶ 42, 391 P.3d 1113, 1124 (Wyo. 2017). In *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir. 1997), the Tenth Circuit explained that "[t]he purpose of Rule 9(b) is to afford the defendant fair notice of plaintiff's claim and the factual ground upon which they are based." The court continued, "[s]imply stated, a complaint must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id*.

In this case, the Plaintiffs' specific instances of fraudulent inducement in their Amended Complaint are pled under Paragraphs 30 – 34.  These allegations include that Crypto Infiniti (1) "made false representations about its intent to locate its mining equipment and the required capacity of hosting services it would require" to "induce [Plaintiffs] to uneconomically develop digital currency mining infrastructure in Missouri for [Crypto] Infiniti;" (2) Plaintiffs entered in a "variety of [] agreements with the local and utility" based on the false representations of Crypto Infiniti; (3) Plaintiffs "incurred significant material expenses [] to establish and provide hosting services to [Crypto] Infiniti; and (4) Plaintiffs have "suffered damages to be proven at trial."  (Am. Compl. ¶¶ 30-34.) A pleading that merely avers the technical elements of fraud does not have sufficient informational content to pass muster. *Elworthy*, 2017 WY 33, ¶ 42, 391 P.3d at1124–25 (internal citations omitted); *see Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1236 (10th Cir. 2000).

Plaintiffs' claims fail facially as they fail to provide the times, places, or content of any of the alleged fraudulent representations occurred; they fail to identify the speakers or recipients of any representations; and they fail to provide the method of communication. *See Koch,* 203 F.3d at 1237.

There is no clear and convincing evidence that Crypto Infiniti committed fraud, as Plaintiffs do not provide anything more than an alleged breach of contract claim as a basis for their fraudulent inducement claim. Accordingly, Plaintiff's fraud claim lacks the requisite particularity and must be dismissed.

### C. Plaintiffs' Claim for Fraudulent Inducement Should Be Dismissed for Failure to State a Claim Upon Which Relief can be Granted.

Even accepting the Amended Complaint's allegations as true, Plaintiffs have failed to plead a cause of action for fraudulent inducement with respect to both the First Agreement and the Second Agreement. Under Wyoming law, "[t]he elements that must be alleged to support [a claim for fraudulent inducement] are 1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Elworthy.* ¶ 41, 391 P.3d at 1124.[2] (quotation marks omitted); *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003 at 1016 (Wyo. 2012). The Amended Complaint fails to meet these pleading standards for two reasons.

First, Plaintiffs have failed to state any claim whereby Crypto Infiniti perpetrated a fraud upon them. For Plaintiffs' claim of fraud to survive, the Amended Complaint must reference, with specificity, that Crypto Infiniti made a false representation and Plaintiffs then relied on such representation. Nowhere in their Complaint do Plaintiffs reference any false representations by

---

[2] This claim is governed by Wyoming law both because "[a] federal court sitting in diversity applies the substantive law of the forum state," *Mincin v. Vail Holdings, Inc*., 308 F.3d 1105, 1108 (10th Cir. 2002), and because the First Agreement and the Second Agreement contain an enforceable choice-of-law clause which provides, in pertinent part, that "This Agreement, including performance hereunder, are governed by the laws of the State of Wyoming, irrespective of its conflict of laws rules." (First Agreement, at § 7.2; Second Agreement, at § 7.2)

Crypto Infiniti upon which the Plaintiffs then relied.  Plaintiffs' claim appears to allege that because Crypto Infiniti entered into the First Agreement and the Second Agreement, and then allegedly breached the Second Agreement, that they somehow perpetrated fraud upon the Plaintiffs through that breach. However, the law does not allow for a fraud claim purely because a transaction was entered into between the parties.  Mere broken promises do not constitute actionable fraud. *See, e.g., Cleary v. Wind Quarry, LLC*, No. 15-cv-189, 2016 WL 10518596, at *6 (D. Wyo. Jan. 29, 2016) (noting that "a breach of contract does not automatically demonstrate fraud"). There is no conduct of Crypto Infiniti's that is alleged by Plaintiffs that was not contemplated by the agreements entered between the Parties.

Second, Plaintiffs allege they entered into "a variety of property, energy, and economic development agreements with the local municipality and utility creating the obligation to pay the municipal utility company for those energy services" based on unidentified false representations by Crypto Infiniti.  (Am. Compl. ¶ 31.)  No agreements were attached to the Amended Complaint in support of such claims.  Crypto Infiniti, however, is aware of the Economic Development Rider Agreement entered into between MO 3 and the City of Springfield, Missouri dated March of 2022. (Attached as Exhibit A.) Additionally, MO 3 entered into a Ground Lease Agreement and an Interruptible Electric Service Agreement with the City of Springfield, Missouri, both dated May 5, 2022. (Attached as Exhibits B and C.)  Crypto Infiniti is not in possession of any third-party agreements showing that MO 4 has contracted with any local municipalities or utilities.  The First Agreement between MO 3 and Crypto Infiniti and the Second Agreement between MO 4 and Crypto Infiniti were both entered into **<u>after</u>** MO 3 had already contracted with the City of Springfield, Missouri in all three agreements attached hereto.  These agreements were sent to Crypto Infiniti by a broker in the bitcoin mining industry prior to Crypto Infiniti having any contact with MO 3 or MO 4.  They were then resent to Crypto Infiniti by a representative for Plaintiffs

when negotiations began regarding the First Agreement and the Second Agreement. Crypto Infiniti did not induce, fraudulently or otherwise, MO 3 to enter contracts it had already executed prior to even meeting the representatives of Crypto Infiniti.

Based on the foregoing, the Court should dismiss Plaintiffs' claim for fraudulent inducement.

### D. The Economic Loss Rule Bars Plaintiffs Fraud Claim.

Wyoming law recognizes the "economic loss rule," which precludes "recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234–35 (Wyo. 1996); *MK Int'l LLC v. Crown Prod. & Servs. Inc.*, 812 F. App'x 740, 746 (10th Cir. 2020) ("Under Wyoming law, the economic loss rule bars recovery in tort when a plaintiff claims economic damages unaccompanied by physical injury to persons or property."). "The purpose of the 'economic loss rule' is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Rissler*, 929 P.2d at 1234–35. And it is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of contract." *Id.* at 1235 (citation omitted). Claims for fraud run afoul of the economic loss rule, and thus must be barred, when they are not based on independent duties. *Excel Const., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶¶ 25, 31, 228 P.3d 40 (Wyo. 2010) (citing *Rissler*, 929 P.2d at 1235 n. 1); see also *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo. 1992) ("[T]ort liability can only be premised on a duty independent of contractual duties."). A plaintiff, in other words, "may not use a fraud claim as an artifice to sidestep contractual duties or the economic loss rule." *Excel*, 2010 WY 34, ¶ 25, 228 P.3d at 47. Thus, "[t]o survive a motion to dismiss based on the economic loss rule," Plaintiffs must "allege sufficient facts, taken in the

light most favorable to [them], that would amount to the violation of a tort duty that is independent of the contract." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (citation omitted).

Plaintiffs' fraud and contract claims are based on the same alleged facts, duties, and damages. *Excel Const.*, 2010 WY 34, ¶ 31 ("Determining whether a particular intentional tort claim is simply a repackaged contract claim requires consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed."). For their fraud claim, Plaintiffs allege that Crypto Infiniti entered into the First Agreement and Second Agreement and then allegedly did not follow through on its obligations under the Second Agreement, and such conduct perpetrated a fraud on the Plaintiffs.  Yet these are the exact same allegations Plaintiffs assert with respect to their claims for breach of contract against Crypto Infiniti (See, e.g., Am. Compl., ¶¶ 18-28.)

 Plaintiffs' fraud claim is not based on an independent duty. Without an independent duty, the Plaintiffs' fraud claim is nothing more than a repackaged version of its breach of contract claim and is barred by the economic loss rule. For this additional reason, Plaintiffs' fraud claim must be dismissed.

### E.  Plaintiffs' Fourth Cause of Action Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing.

Plaintiffs' fourth cause of action seeks damages for breach of the duty of good faith and fair dealing. (Am. Compl. ¶¶ 35-38.) This claim fails because it again merely duplicates Plaintiffs' breach of contract claims, rather than resting on any concrete, independent allegations of bad faith conduct.  A breach of the covenant of good faith and fair dealing implied in a contract occurs when a party interferes or fails to cooperate in the other party's performance of its duties under the contract. *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 68, 403 P.3d

1033, 1054 (Wyo. 2017) (quoting *Scherer Constr., LLC v. Hedquist Constr., Inc*., 2001 WY 23, ¶ 19, 18 P.3d 645, 653-54 (Wyo. 2001)). "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. In other words, the concept of good faith and fair dealing is not a limitless one." *Id*. Further, "[u]nder Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Harper v. Fidelity & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 34, 234 P.3d 1211, 1221 (Wyo. 2010).  The Tenth Circuit has further held that "a party to a contract cannot claim its benefits where he is the first to violate its terms." *In Re Country World Casinos, Inc.,* 181 F.3d 1146, 1150 (10th Cir. 1999) (*quoting Western Plains Serv. Corp. v. Pondersoa Dev. Corp.*, 769 F.2d 654, 657 (10th Cir. 1985).

In their Amended Complaint, by direct reference, MO 3 admits that they were the first party to breach the First Agreement. (Am. Compl. ¶¶ 43-44) The Plaintiffs chose to enter into two separate agreements with Crypto Infiniti.  MO 3 entered into the First Agreement with Crypto Infiniti, and MO 4 entered into the Second Agreement with Crypto Infiniti.  Crypto Infiniti has fully performed its duties under the First Agreement with MO 3 by making the required payments under the First Agreement.  (Am. Compl. ¶15.) MO 3, however, has not held up their end of the bargain by complying with their obligations under the First Agreement, (Am. Compl. ¶ 17) and is asking this Court to absolve them of their duties under the First Agreement.  (Am. Compl. ¶¶ 43-44.) Because MO 3, by their own admission, were the first to breach the First Agreement, and have alleged no conduct by Crypto Infiniti that would support a breach of the covenant of good faith and fair dealing, they have no valid claim for breach of the duty of good faith and fair dealing in this case. *In Re Country World Casinos, Inc.*, 181 F.3d at 1150.

MO 4 also asserts a breach of the duty of good faith and fair dealing as it relates to the Second Agreement.  (*See* Am. Compl. ¶¶ 35-38.) Plaintiffs, again, however, rely solely on the same facts that are in support of their breach of contract claims.  "In the absence of evidence of self-dealing or breach of community standards of decency, fairness and reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 85, 226 P.3d 889, 920 (Wyo. 2010) (internal citations omitted). The only alleged conduct to support Plaintiffs' claim of a breach of the duty of good faith and fair dealing as it relates to the Second Agreement is the allegation that Crypto Infiniti "has not made any of the required payments under MO 4's Second [] Agreement." (Am. Compl. ¶ 16.) "Although [the Wyoming Supreme Court has] recognized that resolution of a bad faith claim will generally involve a factual inquiry, a party is entitled to a judgment as a matter of law if, under the facts in the record, the party's actions alleged as a basis for the breach of the implied covenant were in conformity with the clear language of the contract." *Ultra*, 2010 WY 36, ¶ 85, 226 P.3d at 920 (internal citations and quotations omitted).  An alleged failure to pay amounts owed under the Second Agreement, Am. Compl. ¶¶15-17 and 36-38, does not rise to the level of factual conduct necessary to support a claim of breach of the duty of good faith and fair dealing.

For these reasons, Plaintiffs' claim for breach of the implied duty of good faith and fair dealing as to both the First Agreement and the Second Agreement should be dismissed.

### F.  Plaintiffs' Declaratory Judgment Claim Should Be Dismissed.

The Amended Complaint's fifth cause of action seeks a declaration that the First Agreement and Second Agreement "represent an interrelated set of agreements that require the performance of both." (Am. Compl., ¶ 44.) Plaintiffs further seek a declaration that MO 3 is excused from performance under the First Agreement due to Crypto Infiniti's alleged failure to perform under the Second Agreement – an agreement MO 3 is not even a party to.  This claim

should be dismissed because such is duplicative of the breach of contract claims pleaded in the Amended Complaint's first and second causes of action. To succeed on their breach of contract claims, Plaintiffs must demonstrate that they performed under the contracts or were excused from doing so (*i.e.*, that they themselves are not in breach of the contracts). *Halling v. Yovanovich*, 2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017) (holding that an essential element of a breach of contract claim is that the defendant's failure to perform was *un-justified*); *Maverick Benefit Advisors, LLC v. Bostrom,* 2016 WY 96, ¶ 14, 382 P.3d 753, 758 (Wyo. 2016) ("The rule provides that a party cannot claim the benefit of a contract that it was the first to materially breach.").

Determining these identical issues in the context of a declaratory judgment claim would therefore be unnecessary and duplicative. *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1271 (D. Wyo. 2007) (dismissing declaratory judgment claim as "not appropriate" where it sought "to address [Plaintiffs'] breach of contract/warranty claims in a declaratory judgment context"); *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 657 (10th Cir. 1946). Indeed, the purpose of the Declaratory Judgment Act, 28 U.S.C. § 2201, is to "enable[] parties uncertain of their legal rights to seek a declaration of right *prior to injury*." *U.S. Aviation Underwriters, Inc.*, 505 F. Supp. 2d at 1271 (emphasis added) (quotation marks omitted). There is no need to seek a declaration of rights after "damages have already accrued." *Id*. Such would be directly contrary to the purpose of declaratory relief and is a waste of judicial resources.

## V.    CONCLUSION

For the reasons set forth above, Crypto Infiniti respectfully requests that the Court grant its Motion and dismiss Claims I, III, IV, and V asserted in the Amended Complaint with prejudice.

**DATED** this 29th day of August 2022.

HATHAWAY & KUNZ, LLP,

By: */s/ Melissa K. Burke*_____
    Matthew D. Kaufman, WSB #6-3960
    Tyler J. Garrett, WSB #6-4400
    Melissa K. Burke, WSB #7-5694
    Hathaway & Kunz, LLP
    P.O. Box 1208
    Cheyenne, WY 82003-1208
    Phone:  307-634-7723
    Fax:  307-634-0985

    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that on the 29th day of August, 2022, a true and correct copy of the foregoing was served upon counsel as follows:

Jeffrey S. Pope                     [ ✓ ] EM/ECF/Electronic Filing
Kasey J. Schlueter               [   ] U.S. Mail
Holland & Hart, LLP            [   ] Fax:
2515 Warren Avenue, Suite 450   [   ] E-mail
P.O. Box 1347
Cheyenne, WY 82003-1347

*Attorneys for Plaintiffs*

*/s/ Candice Hough*_____
Hathaway & Kunz, LLP