Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No. 22-CV-155-SWS |
| CRYPTO INFINITI LLC, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Sometimes less is more. Here, Defendant's (Crypto) motion to dismiss alleges Plaintiffs (MO POW) need more factual allegations to sustain their Amended Complaint. But that premise misses the straightforward nature of this case. MO POW and Crypto executed two contracts at the same time to accomplish a single purpose—leverage economies of scale related to purchasing large amounts of power to drive the cost of power down. Or as the contracts called it, a rate buy-down. That is why the First Master Hosting Services Agreement tied itself explicitly to the Second Master Hosting Services Agreement. But as it turned out, Crypto only had an interest in getting a lower rate not an interest in leveraging economies of scale. Despite asking for MO POW to provide 35 MW of power, Crypto decided only to pay for 15 MW under the

First Agreement. This decision breached both Agreements and the implied covenant of good faith and fair dealing. It also demonstrated that Crypto never had an interest in fulfilling its duties, choosing to falsely represent its needs to secure a lower power purchase price. MO POW's Amended Complaint contains all the factual allegations necessary to state plausible claims for relief.

Crypto's arguments to the contrary suffer from: 1) relying on misstatements like MO POW breached the First Agreement; 2) misstating the nature and basis of MO POW's claims; 3) ignoring key legal nuances such as how to analyze the economic loss rule in a case like this; and 4) asking the Court, contrary to the law, to ignore allegations in MO POW's Amended Complaint or draw unfavorable inferences. But the Court should not make the same mistakes when the allegations already in the Amended Complaint state a plausible claim for relief.

**STANDARD OF REVIEW**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts "all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

**I.    The Court must treat Crypto's motion as one for summary judgment and deny it.**

Generally, a Rule 12(b)(6) motion that presents matters outside the pleadings must be converted a motion for summary judgment, unless the court excludes those matters. *GFF Corp.*

*v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997). A court, however, may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Crypto's motion includes documents that are not specifically referred to in the pleadings and are not central to MO POW's claims. That should convert Crypto's motion to one for summary judgment. As such, the Court need not decide it because the parties dispute genuine issues of material fact and no discovery has taken place. Per Rule 56, that reality should halt any decision. *See* Fed. R. Civ. P. 56(c), (d).

Crypto claims otherwise without any support or explanation. Indeed, Crypto can only assume the agreements that they attached are the agreements MO POW referred to in the Complaint because MO POW did not specify by name any agreements other than the two Master Hosting Services Agreements that were attached to the Amended Complaint. Crypto tacitly admits the documents it attached are not central to the overall Amended Complaint because Crypto only discussed them in addressing MO POW's fraudulent inducement claim. (ECF 14 at 15-16.) And as explained below, Crypto's discussion of those agreements misunderstands the nature of MO POW's claim, further eroding the centrality of those agreements. At a minimum, Crypto should have had to explain the agreements centrality to overcome the conversion to a motion for summary judgment.

To be sure, MO POW executed other agreements to provide the power and other services required under the Master Hosting Services Agreements. Those agreements are relevant to this case because they speak to causation and damages elements for several of MO POW's claims. But there must be a difference between documents that are central to a claim or case and documents that are relevant to a claim or case. If not, then the exception to the general rule about

matters outside the pleadings would swallow the rule. Put another way, MO POW admits that other agreements it executed are relevant and would play a role in seeking or defending against summary judgment. But they are not central to the allegations in the Amended Complaint because those allegations center on the two Master Hosting Services Agreement. Therefore, the Court should convert Crypto's motion to one for summary judgment and deny it.

## II.    MO POW stated a claim for breach of the First Master Services Agreement.

A valid claim for breach of contract requires: 1) a valid contract; 2) breach; and 3) damages. *Schlinger v.* McGhee, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012). A valid contract requires an offer, acceptance of that offer, and consideration. *Frost Const. Co. v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo. 1998). MO POW has stated a plausible breach of contract claim because it alleged facts that:

- The parties entered into valid contracts—the two Master Hosting Services Agreements. (ECF 7 at ¶¶ 9-14);

- Crypto breached both agreements because it: 1) failed to make any of the required payments in the Second Master Hosting Services Agreement with MO POW 4; and 2) by failing to make the payments in the second agreement did not provide the full consideration required in the First Master Hosting Services Agreement with MO POW 3. (*Id.* at ¶¶ 15-16, 20-22.)

- Crypto's breaches damaged MO POW. (*Id.* at ¶¶ 23, 28.)

Treating these facts as true and drawing all favorable inferences from them states a plausible claim for breach of the First Master Hosting Services Agreement.

Crypto first argues these allegations are insufficient because MO POW admitted Crypto "performed its obligations under the First Agreement making the required payments." (ECF 14 at

10.) This is a strawman. MO POW did admit Crypto had slowly made the required payments under the First Agreement. But as explained in the allegations of the Amended Complaint and the plain language in the First Agreement, Crypto had a duty to pay under the Second Agreement to fulfill the consideration for the First Agreement, specifically the rate buy down that made the economics of the agreements work for both parties. Crypto ignores section 1.2 of the First Agreement which ties the performance of both agreements together. As a result, Crypto's undisputed breach of the Second Agreement also constitutes a breach of the First Agreement.

Next, Crypto claims that MO POW cannot state a set of facts to show the two agreements incorporate the other. (ECF 14 at 11-13.) This is yet another strawman argument. MO POW never alleged the two agreements incorporated each other. So MO POW does not need to show facts on that subject. Instead, MO POW alleged the two agreements formed an integrated transaction because the two agreements worked together to accomplish a rate buy down structure. (ECF 7 at ¶¶ 9-14.[1]) The First Agreement clearly references the Second Agreement and ties the performance of both agreements together. Put another way, the rate buy down structure at the heart of each agreement cannot work without the parties executing and performing both agreements. Hence, Crypto's failure to perform its obligations in the Second Agreement breach the First Agreement because Crypto failed to provide the required consideration.

Despite Crypto alleging MO POW "obfuscated" the facts, it is Crypto who twisted MO POW's breach of contract claim into something that it is not to generate an argument. But the

---

[1] Although integrate and incorporate are similar words, the legal doctrine Crypto relies on is incorporation. MO POW's Amended Complaint does not use the word incorporate in relation to the agreements.

Court has to evaluate the facts pertinent to MO POW's actual claim, which show a plausible claim for relief.

## III.    MO POW properly plead a claim for fraudulent inducement.

### A.    MO POW alleged facts that state a claim for fraudulent inducement.

To state a claim for fraudulent inducement, MO POW must allege facts showing: 1) Crypto made a false representation intending to induce action by the plaintiff; 2) MO POW reasonably believed the representation to be true; and 3) MO POW suffered damages in relying on the false representation. *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003, 1016 (Wyo. 2012). MO POW alleged that:

- Crypto made false representations about its desire to locate cryptocurrency mining equipment of such size to require large amounts of power. (ECF 7 at ¶¶ 9-14, 30.) These representations resulted in the specific rate buy down structure in the First and Second Agreements. Indeed, it is why the parties agreed to the structure in the agreements. (*Id.* at ¶¶ 9-14.)

- MO POW relied on these representations and undertook all necessary steps to perform the obligations to host Crypto's mining equipment. (*Id.* at ¶¶ 31-32.) This included entering into many agreements that placed long-term obligations on MO POW. (*Id.*)

- MO POW's reasonable reliance on Crypto's representations caused it to incur material expenses that have resulted in damages. (*Id.* at ¶¶ 32-33.)

These allegations state a plausible claim for fraudulent inducement.

Crypto argues otherwise, claiming MO POW's claim does not include an allegation of fraud but rather a claim for broken promises. (ECF 14 at 15.) This misunderstands MO POW's

claim. The fraud was in the literal nature of the transaction. MO POW has alleged that Crypto's representation that it needed a certain amount of power and therefore could enter into a contract that would allow the parties to create a rate buy down structure was fraudulent. That fraud allowed Crypto to achieve a lower rate of electricity generally with the rate buy down, despite Crypto never intending to need the volume of power that would create actual economies of scale. Put another way, MO POW has alleged Crypto engaged in a classic bait and switch scheme. As a result, the fraud is not a broken promise but the premise that Crypto never intended to fulfill its promise in the first place. MO POW alleged sufficient facts to show a plausible claim for fraudulent inducement.

Crypto next claims that it did not induce MO POW to enter into certain agreements.[2] This argument, however, asks the Court to not take the factual allegations in the Amended Complaint as true. But applying the correct legal standard, the Court has to accept that MO POW entered into agreements based on its reliance on Crypto's alleged need for a certain amount of power. *Albers*, 771 F.3d at 700 (finding that a court must construe allegations "in the light most favorable to the plaintiff."). Further, Crypto's argument wrongly presumes that the agreements attached to its motion are the only agreements MO POW executed or negotiated based on Crypto's fraud. They are not. MO POW will present those agreements as evidence later in this case.

**B.      MO POW's fraudulent inducement claim meets the particularity standard of Rule 9(b).**

Pleading a claim for fraud requires a party to state with particularity the circumstances

---

[2] These are the agreements Crypto attached to its motion.

constituting fraud or mistake. Fed. R. Civ. P. 9(b).[3] In practice, that requires the party to set forth the time, place, and contents of the false representation and the identity of the party making the false representation. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). Contrary to Crypto's vastly oversimplified version of MO POW's pleadings, MO POW met the heightened standard.

To start, MO POW clearly identified the party who made the false representation—Crypto. (ECF 7 at ¶ 30.) MO POW plead the contents of the false representation. MO POW alleged that Crypto falsely represented its desire to locate a certain amount of cryptocurrency mining equipment that required a certain amount of power. (*Id.* at ¶ 31.) That certain amount of power was then large enough to allow for a rate buy down structure in the two agreements, relying on the available economies of scale. (*Id.* at ¶¶ 9-14, 31-32.) MO POW alleged that these false representations occurred during the negotiations of the two agreements because it was what led to the parties executing the agreements, which indicates both time and place to Crypto because it was present for those negotiations. (*Id.* at ¶¶ 9-14.)

Crypto's argument to the contrary confuses the particularity requirement with complexity. A fraud scheme does not need to be complex to be actionable. Here, MO POW alleged a classic bait and switch scheme. Crypto said it needed a certain amount of power for a certain amount of equipment. (*Id.* at ¶ 30.) Based on that representation, MO POW secured the necessary power and struck a deal that allowed Crypto to pay a lower rate for electricity because of the volume of power purchased. (*Id.* at ¶¶ 9-14.) But as soon as the ink was dry, Crypto pulled

---

[3] Crypto alleges MO POW failed to present clear and convincing evidence of its claim. (ECF 14 at 14.) This confuses the legal standard. The evidentiary standard to prevail on a fraud claim is clear and convincing; but that does not apply at the pleadings stage. Instead, MO POW need only meet the relevant pleading standards discussed herein.

the rug out and performed only one of the two contracts. (*Id.* at ¶¶ 15-16.) The result is that Crypto would attempt to pay the lower rate for electricity but consume a much smaller amount of power, defeating the economies of scale. That complete fraud scheme exists in the factual allegations in MO POW's Amended Complaint.

Even so, any defects in MO POW's fraudulent inducement claim are technical and not substantive. The goal, even under 9(b), is to give notice of the claims so that Crypto can respond. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) ("Rule 9(b)'s purpose is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based….'") Crypto does not allege that it cannot understand or know the nature of MO POW's fraud claim. Crypto merely argues that the Amended Complaint should state dates and places. Therefore, to the extent the Court agrees, the remedy is not dismissal with prejudice; it is to allow MO POW the chance to amend its complaint and add those details.

### C.    The Economic Loss rule does not bar MO POW's fraudulent inducement claim.

Crypto argues that MO POW's fraudulent inducement claim is merely a repackaged version of its breach of contract claims, which runs afoul of the economic loss rule. (ECF 14 at 16-17.) This is not true. The economic loss rule bars recovery in tort when a plaintiff claims "purely economic damages unaccompanied by physical injury to persons or property." *Skyco Res., Ltd. Liab. P'ship v. Family Tree Corp.*, 2022 WY 72, ¶ 46, 512 P.3d 11, 27 (Wyo. 2022). But the rule does not apply to all tort claims if the claim depends on "a duty independent of contractual duties." *Id.* at ¶ 47. In situations where the fraud occurs as part of contract negotiations—as happened here—courts measure whether a party breached an independent duty to the contract by looking at the "conduct alleged, its relationship to the contractual duties of the

parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." *Id.* at ¶ 49, 512 P.3d at 28.

Crypto skips over the analysis related to independent duties as part of negotiations; but that forms the basis of MO POW's claim. MO POW alleged that before any contractual duties came into existence, Crypto falsely represented its power needs to secure an artificially low price. The duty to not lie to create a favorable contract must be independent of the contract itself; otherwise, the claim of fraudulent inducement could not exist. That duty is related to the contractual duties in the sense that the lie permeated both agreements. But no specific contractual duty or right relates to Crypto's false representations. The nature of the damages also shows independence. The damages of Crypto's false representation come from the additional obligations that MO POW had to take on external to the contract and why the bait and switch of not performing the Second Agreement caused harm to MO POW. Those damages do not depend on calculating payments owed. They are related but independent. As such, MO POW has alleged a tort duty that arises independent of its breach of contract claim.

Even if the Court concludes otherwise, MO POW has the right to plead alternative claims. Fed. R. Civ. P. 8(d)(3). To the extent, the Court construes the breach of contract duty and the tort duty as the same or similar for the purpose of the economic loss rule, they both should survive the pleading stage. As *Skyco* notes, the rule exists to prevent **recovery** for essentially the same economic harm but plead under two different theories. Allowing an alternative pleading, does not permit recovery. Instead, it allows the case and claims to develop. For example, Crypto could win it has not breached the First Agreement but still lose that it fraudulently induced MO POW to execute both agreements. That scenario would not run afoul of the economic loss rule. But that scenario and others can only happen after the pleadings stage. To be sure, if the Court

does not find MO POW has plead an independent duty, MO POW would have to proceed under one theory and recover under one theory. But that should occur later because there is no risk of double dipping at this stage of the case.

## IV.   MO POW stated a claim for breach of the implied covenant of good faith and fair dealing.

Crypto has two arguments for why the Court should dismiss MO POW's claim for breach of the implied covenant of good faith and fair dealing. First, Crypto claims that MO POW also repacked its breach of contract claim to allege a breach of the implied covenant of good faith and fair dealing. (ECF 14 at 17-19.) That is not true.

"The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Scherer Constr. Ltd. Liab. Co. v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 654 (Wyo. 2001). "Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party." *Id.* (citations omitted). "A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance." *Id.* The Court must consider the contract language and the course of dealings between and conduct of the parties. *Id*.

Here, MO POW has alleged that the common purpose of both agreements was to create economies of scale so MO POW could provide the required power at a price point that Crypto wanted. (ECF 7 at ¶ 36.) The rate buy down provisions in each agreement and integrated nature of the transaction make that purpose clear. Crypto, however, has undermined that purpose by

breaching both agreements and defeating the economies of scale for MO POW. Those allegations state a claim for breach of the implied covenant.

Crypto contends otherwise because the factual allegations do not rise beyond a breach of contract. Of course, that relies on inferences favorable to Crypto, which are not available at this stage. Likewise, Crypto wrongly presumes the Court must divorce the contract from breach of the implied covenant. The law says the opposite, noting the Court has to consider the terms of the contract and the parties' course of dealings. *Scherer Constr. Ltd. Liab. Co.*, ¶ 19, 18 P.3d at 654. Here, the only question is whether MO POW has a plausible claim—it does.

Second, Crypto argues that MO POW cannot state a claim because it admitted "they were the first party to breach the First Agreement." (ECF 14 at 18.) MO POW addressed this false claim above. It never admitted it breached. The paragraphs in the Amended Complaint to which Crypto directs the Court are in MO POW's declaratory judgment claim that talk about the integrated nature of the two agreements and why Crypto must complete the payments in both before MO POW's duties begin. (*See* ECF 7 at ¶¶ 43-44.) But MO POW never said it would not perform or has breached. The Court should reject this strawman.

## V.    MO POW's declaratory judgment claim is not duplicative.

Crypto argues the Court should dismiss MO POW's declaratory judgment action because it relies on similar factual and legal findings that are necessary to decide its breach of contract claims. (ECF 14 at 19-20.) Crypto does cite a case that reaches that conclusion. But Crypto positions its argument as if there is binding case law that says as a matter of law there can be no overlap between a declaratory judgment claim and another. For the Court to dismiss, it needs to conclude as such to foreclose the claim moving forward. But the case law Crypto cites does not say that. And MO POW could find none with that conclusion.

Instead, the case law Crypto cites discusses the discretion a court has based on the purpose of the Declaratory Judgment Act to resolve rights before an injury occurs. *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1271 (D. Wyo. 2007). Using that standard, the Court should exercise its discretion to allow MO POW's claim for declaratory judgment because this case presents a unique circumstance. Namely, MO POW did not have any time between entering into the agreements and incurring injury to clarify its rights. Immediately after signing the two agreements, Crypto breached both. Further, MO POW should be able to have this Court declare its rights under the First Agreement should the Court find Crypto did not breach that agreement. In that scenario, MO POW and Crypto would need to understand their rights and obligations since it is undisputed Crypto breached the Second Agreement. Put another way, Crypto presumes a declaration of rights has no value because it may win. But in that event, the declaration is even more important before any other injury could occur.

## CONCLUSION

MO POW needed to plead facts to show its claims are plausible. It has done so, especially when the Court accepts those facts as true and relies on reasonable inferences from those facts. Crypto's arguments overreach and ask the Court to render a premature judgment more akin to summary judgment, hence the additional documents it attaches to its motion. Instead, the Court should deny the motion for the reasons above.

13

DATED: September 12, 2022.

/s/ Jeffrey S. Pope
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC and MO POW 4, LLC

19784484_v1