**FILED**

4:37 pm, 10/18/22

**U.S. Magistrate Judge**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

MO POW 3, LLC and MO POW 4, LLC,

        Plaintiffs,

    vs.

CRYPTO INFINITI LLC,

        Defendant.

Case No.  1:22-CV-155-KHR

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Crypto Infiniti's Motion to Dismiss. Defendant seeks to have four of Plaintiffs' claims dismissed with prejudice under Rule 12(b)(6). The Court, after carefully considering the filings and being fully advised, finds as follows:

### BACKGROUND

This action is related to two agreements entered between Plaintiffs and Defendant. The first is MO POW 3's Master Services Agreement with Defendant (the "First Agreement") and the second is MO POW 4's Master Services Agreement with Defendant (the "Second Agreement"). (ECF No. 7, at 3). Both agreements show the same basic terms and requirements. *Id.* at 4, Ex. 1, Ex. 2. MO POW 3 and MO POW 4 (collectively "Plaintiffs") "are part of a consortium of companies providing hosting services for companies that mine for digital currency." *Id.* at 3. The two contracts entered were to

provide Defendant with 35 Megawatts (MW) hosting service for its digital currency mining equipment. *Id.* Specifically, the First Agreement provided for 15 MW of power and the Second Agreement provided for 20 MW of power. The facilities for both agreements are located in Greene County, Missouri with one being owned my MO POW 3 and related to the First Agreement while the other was owned by MO POW 4 and related to the Second Agreement. *Id.*

Upon executing the agreements on May 26, 2022, two types of payments—a rate buy down payment and a down payment—were due from Defendant to Plaintiffs.[1] *Id.* at 4, Ex. 1, Ex. 2. The rate buy down payment of $2,000,000 represented the payment Defendant was making to Plaintiffs for their discounted managed colocation services. *Id.* at Ex. 1. Only the First Agreement provided for a rate buy down payment, however, the agreement specified that the payment was to "buy down" both MO POW 3's and MO POW 4's typical managed services fee while referencing both the First Agreement and the Second Agreement. *Id.* The other payments due at signing were a down payment of $2,135,250 for the power usage in the First Agreement and down payment of $3,066,000 for the power usage in the Second Agreement. *Id.* at Ex. 1, Ex. 2. All of these payments were due upon execution of the documents. *Id.* Additionally, each agreement provided a payment schedule for an estimated managed services fee to be made monthly in the future. *Id.*

After both agreements were signed, Defendant was late making the payments required under the First Agreement. *Id.* at 5. As of the date the Amended Complaint was

---

[1] The Court notes that Defendant refers to the $2,000,000 payment as the "down payment" and the $2,135,250 payment as the rate buy down payment. (ECF No. 14, at 7). However, based on the language of the contract and Plaintiffs' Amended Complaint, this is believed to be in error.

filed, none of the payments required under the Second Agreement had been paid. *Id.* MO POW 4 informed Defendant it was in default of its obligations and Defendant responded demanding MO POW 3 uphold its obligations under the First Agreement even if the Second Agreement was terminated. *Id.* Plaintiffs responded with this action.

## RELEVANT LAW

This is a diversity action. When sitting in diversity, a federal court applies federal procedural law and state substantive law. *E.g., Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 660 (10th Cir. 2018). A "federal court's task is not to reach its own judgment regarding the substance of common law, but simply to 'ascertain and apply the state law'" using the "most recent decisions of the state's highest court." *Wade v. EMASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (quoting *Wankier v. Crown Equip, Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). However, "'[w]here no controlling state decision exists, [a] federal court must attempt to predict what the state's highest court would do.'" *Id.* at 666 (quoting *Progressive Casualty Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001)).

In considering a motion to dismiss, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may respond to a complaint with a defense of "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). Additionally, a court "may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Property*

*Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility that the defendant acted unlawfully, passing the line from speculation or conceivability to plausibility. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### RULING OF THE COURT

Plaintiffs bring five claims against Defendant. Defendant seeks to have the first, third, fourth, and fifth dismissed with prejudice. Each will be addressed in turn.

### Claim 1: Breach of Contract

Plaintiffs' first claim is for breach of contract of the First Agreement. The Amended Complaint as a whole alleges that Defendant's actions breached both the First and Second Agreement. Specifically, Plaintiffs argue both agreements formed an integrated transaction that worked together. (ECF No. 17, at 5). Plaintiffs assert this was achieved through: one the shared consideration between the First and Second agreement; and, through the rate buy down structure of the two contracts, the performance of each necessary for the other. *Id.* Defendant argues that Plaintiffs have alleged no facts indicating the First Agreement

was breached. (ECF No. 14, at 10–13). Rather, only facts indicating the Second Agreement was breached have been plead and the two agreements are not integrated. *Id.*

"To establish a prima facie case for breach of contract, a plaintiff must show: (1) a lawfully enforceable contract, (2) an unjustified failure to timely perform all or any part of what is promised therein, and (3) entitlement of the injured party to damages." *Kappes v. Rhodes*, 2022 WY 82, ¶ 17, 512 P.3d 31, 36 (Wyo. 2022) (internal citations and quotations omitted). It does not appear to be in dispute whether or not both agreements are valid contracts on their own. Rather, the main point of disagreement is whether or not the agreements incorporated each other or formed an integrated transaction.

Plaintiffs argue that the agreements form an "integrated transaction." (ECF No. 17, at 5). A thorough review of Wyoming case law does not point to any governing law for an integrated transaction. Expanding to other jurisdictions, it appears that an integrated transaction is primarily a bankruptcy principle in recoupment cases. *See Columbus Steel Castings Co. v. Transportation & Transit Associates, LLC*, 2007-Ohio-6640, ¶¶ 40–43, No. 06AP-1247, 2007 WL 4340558, at *9–10 (Ohio Ct. App. 2001) (discussing recoupment and the integrated transaction test). Plaintiffs point to no cases or other authority with a contrary result or that it is a different legal doctrine than incorporation. Rather, Plaintiffs state Defendant's incorporation argument is a "strawman" and that "[a]lthough integrate and incorporate are similar words, the legal doctrine Crypto relies on is incorporation. MO POW's Amended Complaint does not use the word incorporate in relation to the two agreements." (ECF No. 17, at 5). While there may be cases that support Plaintiffs' argument in other jurisdictions, the Court is not aware of any that are controlling

under Wyoming law. As such, based on diversity principles, the Court is hesitant to expand

Wyoming law to include the doctrine of integrated transactions.

Unlike integrated transactions, the law of incorporation is well defined in Wyoming.

[W]hen a contract refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both the instruments are to be construed together. However, in order for an instrument to be incorporated into and become part of a contract, the instrument must actually be incorporated. It is not enough for the contract to merely mention the instrument; the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument. Parties do not undertake obligations contained in a separate document unless their contract clearly says so. A reference in a contract to another instrument will incorporate the other instrument only to the extent indicated and for the specific purpose indicated.

*Fleig v. Estate of Fleig by and through Fleig*, 2018 WY 30, ¶ 9, 413 P.3d 638, 641–42

(Wyo. 2018) (quoting *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, ¶ 32, 371 P.3d 120,

127–28 (Wyo. 2016)).

Contract interpretation is a question of law. *Pope v. Rosenberg*, 2015 WY 142, ¶ 21,

361 P.3d 824, 830 (Wyo. 2015). When interpreting contracts, a court aims to determine the

intent of the parties. *Holding v. Luckinbill*, 2022 WY 10, ¶ 14, 503 P.3d 12, 17 (Wyo.

2022). As such, courts look to the plain meaning of a contract. *Id.* In doing so, a contract

is interpreted as whole, reading each provision in light of the others and giving meaning to

each provision so as to avoid finding inconsistencies that render other provisions

meaningless. *Id.* The contract language is construed in the context it was written, looking

to the surrounding circumstances, the subject matter, and the purpose of the agreement in

order to find the intent of the parties. *Skaf v. Wyoming Cardiopulmonary Services, P.C.*,

2021 WY 105, ¶ 42, 495 P.3d 887, 901 (Wyo. 2021). However, a court may not save parties

from poorly drafted agreements or unwise bargains under the guise of judicial construction. *Id.* Rather, a court must adhere to the language of the contract as written unless there is ambiguity. *Id.*

> The First Agreement makes three references to the Second Agreement:
>
> WHEREAS Client is also concurrently entering into a second hosting agreement (the "2nd Agreement") with Host's affiliate MO POW 4, LLC for colocation at MO POW 4's facility located at 5501 East Farm Road 112, Strafford, Missouri 65757;
>
> WHEREAS Client desires to "buy down" Host's typical Managed Services Fee and also MO POW 4's typical Managed Services Fee, by providing a two million dollars ($2,000,000) payment for discounted Managed Services in this Agreement and the 2nd Agreement during the Initial Term;
>
> 1.2 2nd Agreement. The Rate Buy Down is being paid as consideration to "buy down" the Managed Services Rate of this Agreement and the 2nd Agreement.

(ECF No. 7, Ex. 1). Defendant argues that neither the recitals nor Section 1.2 indicate an intent from the parties to incorporate any portion of the Second Agreement into the First Agreement, that the references make no specific references, and the parties to both agreements are different. (ECF No. 14, at 12). These arguments overlook and oversimply the facts of this case.

First, it is clear through these provisions that both agreements share consideration. Offer, acceptance, and consideration are the three basic elements of a contract. *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 38, 360 P.3d 1006, 1019 (Wyo. 2015). "Consideration means that a legal detriment has been bargained for and exchanged for a promise." *Rogers v. Wright*, 2016 WY 10, ¶ 47, 366 P.3d 1264, 1278 (Wyo. 2016) (internal citations and quotations omitted). It "may take a variety of forms including the performance

of some act, a forbearance, or the creation, modification, or destruction of a legal relationship." *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 14, 35 P.3d 1232, 1237 (Wyo. 2001). As a basic element of a contract, it leans towards incorporation that the First and Second Agreement shared consideration. Consideration is essentially the promise each party is making to the other. Thus, it is plausible based off the Amended Complaint, part of Defendant's promise for the Second agreement is included in the First Agreement by these references.

The shared consideration also begs the question of why the parties would mention the fact at all unless it carried some level of importance to the First Agreement. At a minimum, it creates some level of ambiguity in that it is not clear from the face of the First Agreement as to why the shared consideration was mentioned. Thus, it is appropriate, at least at the motion to dismiss stage, to consider that both contracts share the same subject matter, are for a similar purpose of providing hosting services to Defendant, and were concurrently entered into. *See Skaf*, 2021 WY at ¶ 42, 495 P.3d at 901 (stating contract language is construed in the context it was written, looking to **the surrounding circumstances**, **the subject matter**, **and the purpose of the agreement** in order to find the intent of the parties). Last, while both Plaintiffs are different entities, they are also affiliates owned by the same single member. (ECF No. 7, Ex. 1 & Ex. 2). Viewing all of these facts together, Plaintiffs' First Claim for Relief is plausible and survives Defendant's Motion to Dismiss.

### Claim 3: Fraudulent Inducement

Defendant also moves to dismiss Plaintiffs' Fraudulent Inducement claim for three reasons: lack of particularity, failure to state a claim for which relief can be granted, and because the economic loss rule bars the claim. (ECF No. 14, at 13–17). Each argument will be addressed in turn.

### A. Plaintiffs' Amended Complaint Meets the Particularity Requirements of Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's state of mind may be alleged generally." Fed. R. Civ. P. 9(b). The Tenth Circuit "has held that Rule 9(b) requires only the identification of the circumstances constituting fraud." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). "[A] complaint must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal citations and quotations omitted). In plain terms, Rule 9(b) requires the who, what, when, where, and how of the alleged fraud. *U.S. ex rel. Lacy v. New Horizon's Inc.*, 348 Fed. Appx 421, 424 (10th Cir. 2009). The purpose of this "is to afford fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Schwartz*, 124 F.3d at 1252. (internal citations and quotations omitted) (alteration in original).

Generally, Defendant argues Plaintiffs' Amended Complaint fails facially because it does not "provide the times, places, or content of any of the alleged fraudulent representations …; they fail to identify the speakers or recipients of any representations; and fail to provide the method of communication." (ECF No. 14, at 14). Defendant cites

*Koch v. Koch Industries, Inc.* 203 F.3d 1202 (10th Cir. 2000) in support of these arguments.

(ECF No. 14, at 14).

In *Koch*, the Tenth Circuit affirmed a dismissal of one of multiple fraud claims.

*Koch*, 203 F.3d at 1236. The relevant paragraph in the complaint stated:

> during 1982 and continuing to the present time, defendants planned and acted
> to conceal the true value of shares of stock in Koch Industries from plaintiffs
> and the other selling shareholders and carried out a scheme designed to
> understate the existence, extent and value of property and assets owned
> directly or beneficially by Koch Industries by failing to disclose the
> existence, location, ownership, condition and true value of assets and
> property, including, but not limited to, oil and gas reserves, acreage,
> prospects and properties, oil and gas production and planned development of
> oil and gas properties owned or acquired prior to June 10, 1983.

*Id.* The trial court found, and the Tenth Circuit affirmed, the broad allegation did not satisfy

the Rule 9(b) requirements did not give a precise time frame, a place where the

misrepresentations occurred, nothing of the content of the misrepresentations, and no

specific defendant was identified. *Id.* at 1236–37. These defects are not present in

Plaintiffs' Amended Complaint.

First, a sufficiently precise time frame is given as to when the representations were

made. Plaintiffs allege that the misrepresentations occurred during the negotiations of the

two agreements. (ECF No. 7, at 3–4, 6–7). This is not a large undefined date as was the

case in *Koch*. Rather, it is a set time known to both parties because of their involvement in

negotiating and creating the contract.

Second, the allegation that the misrepresentations took place during the negotiations

in combination with the written contract is sufficient to satisfy the "place" requirement.

Negotiations, by nature, are a course of dealings between parties. That alone may not be

enough to satisfy the place requirement. *See Schaffer v. Eden*, 209 F.R.D. 460, 463 (D. Kan. 2002) (holding that alleging misrepresentations occurred in employee meetings without a date or place is insufficient for Rule 9(b)); *see also Jamieson v. Vatterott Educational Center, Inc.*, 473 F. Supp. 2d 1153, 1157–58 (D. Kan. 2007) (holding that alleging "written representations delivered through mail" or verbal representations without a location is not enough to satisfy the Rule 9(b) standard).

There are two signed contracts by both parties reflecting that the parties had contemplated and agreed to certain terms, including 35 MW of hosting capacity between the two agreements. (ECF No. 7, at 3). This directs Defendant to exactly where it may see the alleged misrepresentation. Additionally, the alleged misrepresentation is not a scheme of fraud but a "bait and switch" that occurred during contract negotiations. (ECF No. 17, at 7). This distinguishes the present case from others in that the Defendant need not search through various publications or meeting records to find the alleged misrepresentation. Rather, the culmination of the alleged misrepresentation is reflected in the contract. The Defendant may also look to negotiation documents it has in its possession. At a minimum, this serves Rule 9(b)'s purpose "to afford fair notice of [Plaintiffs'] claims and the factual ground upon which [they] are based." *Schwartz*, 124 F.3d at 1252. (internal citations and quotations omitted) (second alteration in original).

Third, the content of the alleged misrepresentation is simply that Defendant sought 35 MW of hosting capacity when it only intended to use 15 MW. (ECF No. 7, at 3–7). While this alone may seem more akin to breach of contract, the allegation posits that this was done to take advantage of economies of scale to achieve a lower overall rate. (ECF

No. 7, at 3–5, 8). Only general allegations of malice or intent are required to satisfy Rule 9(b). Fed. R. Civ. P. 9(b). As such, the Amended Complaint satisfies the content requirement of Rule 9(b).

Fourth, Crypto Infinity, the sole Defendant, was identified as the party making the alleged misrepresentation. (ECF No. 7, at 3–5). While this may include a broad class of persons, both the First and Second Agreement are signed by Yin Lin of Crypto Infiniti LLC. Because the alleged misrepresentation is contained within the agreements, the signature affirms the alleged misrepresentation and is sufficient to satisfy Rule 9(b).

Last, at least two consequences of the alleged misrepresentation are listed by Plaintiffs. Paragraph 33 of the Amended Complaint states that Plaintiffs have incurred expenses preparing the sites and contractual exposure with the local utility companies. (ECF No. 7, at 7). This meets the final particularity requirement for Rule 9(b).

### B. Plaintiffs' Amended Complaint States a Claim for Which Relief Can be Granted

Defendant also moves to dismiss Plaintiffs' fraudulent inducement claim under Rule 12(b)(6). In support, Defendant argues that Plaintiffs failed to allege Defendant made a false representation Plaintiffs relied upon and that Plaintiff entered into contracts with the City of Springfield, Missouri before contract negotiations, not after in reliance. Both of these arguments fail for the reasons addressed below.

"The elements of fraud are: (1) the defendant made a false misrepresentation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Singer v. Lajaunie*, 2014 WY 159, ¶ 26, 339 P.3d 277, 285 (Wyo. 2014). For

purposes of a motion to dismiss, Plaintiffs have alleged Defendant made a false representation. Paragraph 30 of the Amended Complaint states "[Crypto] Infiniti made false representations about its intent to locate its mining equipment and the required capacity of hosting services it would require. [Crypto] Infinity made these false representations to induce MO [POW] 3 and MO [POW] 4 to uneconomically develop digital currency mining infrastructure in Missouri for [Crypto] Infiniti." (ECF No. 7, at 6–7). It is clear when reading the rest of the Amended Complaint that the alleged misrepresentation is that Defendant sought 35 MW of hosting capacity when it only intended to use 15 MW. What differentiates this, and makes the fraud allegation plausible, is that Plaintiffs are not simply asserting Defendant did not hold up its end of the bargain. Rather, Plaintiffs are asserting Defendant never intended to fully perform its duties under both agreements and the only reason Defendant sought to enter both agreements was to achieve a lower overall rate than if it had just sought 15 MW.

Reasonable reliance is shown through the parties executing two agreements where the alleged misrepresentation is memorialized. The Plaintiffs then allegedly suffered damages by relying on the contractual agreement and entering into "a variety of property, energy, and economic development agreements with the local municipality and utility creating the obligation to pay the municipal utility company for those services." *Id.* at 7.

Defendant also argues that it could not have induced Plaintiffs to enter the agreements with the City of Springfield because the First and Second Agreement were entered into after Plaintiff contracted with the City of Springfield. Defendant included what

it alleges to be the agreements between Plaintiffs and the City of Springfield in its Motion to Dismiss. (ECF No. 14, Ex's A, B, & C).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion. Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). Plaintiffs admit the agreements may be relevant at the summary judgment stage, but that there are other agreements Plaintiffs entered into with the City of Springfield that will be disclosed during discovery. (ECF No. 17, at 2–4). While the agreements may be between Plaintiffs and the City of Springfield, there is no way for the Court to know whether they are the same agreements referred to by Plaintiffs in their Amended Complaint.

The Court agrees it would be inappropriate to consider Defendant's attached agreements at the motion to dismiss stage. This is not the time to determine what is fact, but whether Plaintiffs have met the pleading requirements under the Federal Rules of Civil Procedure. As such, the Plaintiffs have plead all the elements of fraud and have plausibly made a claim for relief.

### C. *The Economic Loss Rule Bars Plaintiffs' Claim*

Defendant's final argument to dismiss Plaintiffs' fraudulent inducement claim is that the economic loss rule bars the claim. Under Wyoming law, "[t]he economic loss rule bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to person or property." *Skyco Resources, LLP v. Family Tree Corporation*,

2022 WY 72, ¶ 45, 512 P.3d 11, 27 (Wyo. 2022) (internal citations and quotations omitted). The purpose of the rule is to distinguish proper contract claims from tort claims. *Id.* However, the economic loss rule does not apply to all tort claims alleging only economic damages. *Id.* at ¶ 47, 512 P.3d at 27. An exception is made when a duty independent of a contract is violated. *Id.*

The Wyoming Supreme Court has addressed circumstances similar to those here. In *Skyco Resources, LLP*, the parties had entered a purchase and sale agreement for mineral interests. *Id.* at ¶ 3, 512 P.3d at 15. During the parties' negotiations the seller indicated that less than ten percent of the mineral interests were subject to third party drilling permits. *Id.* After the agreement had been signed, but before closing, the buyer discovered that more than half of the mineral interests were subject to third party drilling permits. *Id.* at ¶ 6, 512 P.3d at 16. The buyer then tried to rescind the agreement and sought a return of its earnest money payment but the buyer never responded. *Id.* at ¶¶ 6–10, 512 P.3d at 16–17. The buyer then filed a complaint with various claims including fraud/intentional misrepresentation. *Id.* at ¶ 10, 512 P.3d at 17. The seller was granted summary judgment finding in part that the buyer's fraud/intentional misrepresentation claim was barred by the economic loss rule. *Id.* at ¶ 13, 512 P.3d at 18.

On appeal, the Wyoming Supreme Court was in part tasked with determining whether the economic loss rule barred the buyer's fraud/intentional misrepresentation claim. The buyer argued its claim was based on a duty outside the contract because it was based on the seller's duty to speak truthfully during negotiations. *Id.* at ¶ 48, 512 P.3d at 27. The Court disagreed, reasoning that the timing of the misrepresentation is not

controlling because it would essentially allow any breach of contract claim to be turned into a tort. *Id.* Instead, a court should determine whether the fraud claim is simply a repackaged contract claim. *Id.* at ¶ 49, 512 P.3d at 28. In determining this, the court should consider: "the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." *Id.* (quoting *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 31, 228 P.3d 40, 48 (Wyo. 2010)).

Here, the conduct alleged is that Defendant misrepresented its actual need for hosting capacity during negotiations to achieve a lower rate. In relation to the contract, it provides for a "minimum monthly services fee." (ECF No. 7, Ex's 1 & 2). "Client shall pay a minimum monthly Managed Service Fee equal to thirty percent (30%) of the estimated Managed Service Fees … as calculated in Exhibit A in instances of part **or all** the equipment not utilizing the Host's Managed Services. The Minimum Managed Services Fee is non-refundable, except as otherwise provided under the agreement." (ECF No. 7, Ex's 1 & 2) (emphasis added). The source of the duty alleged to have been breached is the duty to speak truthfully during negotiations. The damages claimed are expenses in preparing the site and contractual exposure in contracting for energy services.

Much like the case in *Skyco Resources, LLP*, this is the sort of circumstance that the economic loss rule is intended to address. The parties recognized a scenario within their contract if Defendant did not utilize part or all of the Plaintiffs' managed services. The managed services include: rack space, installation services, **electrical power connection**, **power supply**, network connectivity, security, maintenance, repair, and technical support.

16

*Id.* Plaintiffs also contracted the ability to terminate the agreements if Defendant failed to make a payment and receive the down payment plus payments due under the payment schedule. Thus, the economic loss rule bars Plaintiffs' fraudulent inducement claim because risk of nonperformance was allocated and negotiated within the agreements. *See Skyco Resources, LLP,* 2022 WY at ¶ 51, 512 P.3d at 28.

Plaintiffs argue in their Response that if this Court does determine that the economic loss rule bars their fraudulent inducement claim, the Court should nevertheless allow the claim to survive the pleading stage. (ECF No. 17, at 10). The direct quote Plaintiffs refer to is "The 'economic loss rule' bars recover in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Skyco Resources, LLP*, 2022 WY at ¶ 46, 512 P.3d at 27 (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 30, 366 P.3d 1264, 1275 (Wyo. 2016) (quoting *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234–35 (Wyo. 1996))). Plaintiffs emphasize the word "recovery" in their argument. This misconstrues the holding in *Skyco Resources, LLP.*

Two sentences later the Wyoming Supreme Court goes on to state "[The economic loss rule] is 'founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.'" *Id.* (quoting *Rissler*, 929 P.2d at 1235)). Reading the paragraph in the entirety, it is clear that the purpose of the rule is not to prevent double recovery as Plaintiffs assert, but to foreclose the claim under a tort theory. *Id.* This is because parties to a contract may allocate their risks within the contract. As explained

above, the parties here have a provision within the contract that does allocate their risks. As such, it is appropriate to dismiss Plaintiffs' fraudulent inducement claim at the pleading stage.

### Claim 4: Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues Plaintiffs' Fourth Claim for breach of the covenant of good faith and fair dealing should be dismissed asserting that MO POW 3 was the first party to breach the First Agreement and a failure to pay sums due under a contract does not amount to bad faith with regard to the Second Agreement. (ECF No. 14, at 18–19).

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 18, 18 P.3d 645, 653 (Wyo. 2001) (quoting Restatement (Second) of Contracts § 205). A breach of "[t]he implied covenant of good faith and fair dealing is a claim separate and distinct from a breach of contract claim, and the two claims are not mutually dependent. Thus, a party may breach the implied covenant of good faith and fair dealing even if it did not breach the express terms of a contract." *Bear Peak Resources, LLC v. Peak Powder River Resources, LLC*, 2017 WY 124, ¶ 68, 403 P.3d 1033, 1054 (Wyo. 2017) (internal citations omitted).

"A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance." *Scherer*, 2001 WY at ¶ 19, 18 P.3d at 653. A court should consider the contract language and the course of dealings of the contracting parties in determining whether there has been a breach. *Id.* "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent

rights or duties not agreed on between the parties." *Id.* The obligation must either arise from the contract language or be indispensable to effectuate the intention of the parties. *Id.* Absent self-dealing or a breach of the community standards of decency, fairness, or reasonableness, exercising contractual rights alone will not be considered a breach. *Id.* at ¶ 19, 18 P.3d at 654. Determining whether there has been a breach requires a factual inquiry into the contract and what the parties have agreed upon. *Id.*

Defendant first argues the claim should be dismissed because MO POW 3 was the first party to breach the agreement. This argument has already been addressed. As stated above, it is plausible that the two agreements incorporate each other. Assuming the agreements do incorporate each other, Defendant would have been the first party to breach the agreement, not Plaintiffs. Thus, this argument fails.

Second, Defendant argues MO POW 4's claim fails because "the exercise of contractual rights alone will not be considered a breach of the covenant." (ECF No. 14, at 19). The alleged failure to pay amounts due does not rise to the level of factual conduct necessary to support a breach of the covenant of good faith and fair dealing. *Id.* This argument again misses the mark.

It is not only an allegation that Defendant failed to pay amounts due, but rather fraudulently represented how much power it would require. Additionally, failing to perform under a contract, without justification, cannot be said to be exercising one's contractual rights. Even so, a breach of the covenant of good faith and fair dealing is a question of fact, and it would be inappropriate to delve into a factual inquiry at the pleading stage. *Scherer*, 2001 WY at ¶ 19, 18 P.3d at 654. Viewing the facts most favorably to

Plaintiffs, the Fourth Claim for Relief is plausible and survives Defendant's Motion to Dismiss.

### Claim 5: Declaratory Judgment

Defendant asserts that Plaintiffs' Declaratory Judgment Claim is duplicative of their breach of contract claim and should be dismissed. (ECF No. 14, at 19–20). Courts may, but are not required to, dismiss a declaratory judgement claim that is duplicative or redundant of other claims. *Reddy v. Essentia Ins. Co.*, No. 21-cv-433, 2021 WL 3742243, at *7 (D. Colo. Aug. 21, 2021) ("However, the mere fact that it may be redundant does not require dismissal."). The Court believes it would be better to let these claims develop, rather than dismiss at the pleading stage for the alleged redundancy. As such, Defendant's Motion to Dismiss with regard to Count Five is Denied.

### CONCLUSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Atlantic Corp.*, 550 U.S. at 570). In reviewing a 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v.*, 561 F.3d at 1098. Plaintiffs have plead sufficient facts for Claims One, Four, and Five. However, the economic loss rule bars Plaintiffs' Third Claim for Relief.

NOW, THEREFORE, IT IS ORDERED, Defendants Motion to Dismiss [13] is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Claim 3: Fraudulent Inducement is dismissed WITH PREJUDICE.

Dated this 18th day of October, 2022.


_____
Kelly H. Rankin
United States Magistrate Judge