Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR DEFENDANT / COUNTERCLAIMANT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | ) |
| Plaintiffs, | ) |
| vs. | ) Civil Action No. 1:22-CV-155-KHR |
| CRYPTO INFINITI LLC, | ) |
| Defendant. | ) |

**DEFENDANT'S ANSWER AND COUNTERCLAIMS**

COMES NOW Defendant, Crypto Infiniti LLC, by and through undersigned counsel, and hereby answers Plaintiffs MO POW 3 and MO POW 4's Amended Complaint [ECF No. 7] as follows:

### 1. INTRODUCTION

Plaintiffs' *Amended Complaint* includes an introduction that purports to characterize Plaintiffs' position on the claims it is asserting, which does not warrant a response. To the extent a response is required, Crypto Infiniti denies the allegations in Plaintiffs introduction.

## PARTIES

1. Crypto Infiniti is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 of Plaintiffs' Amended Complaint and therefore denies the same.

2. Crypto Infiniti is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of Plaintiffs' Amended Complaint and therefore denies the same.

3. In answering Paragraph 3 of Plaintiffs' Amended Complaint, Crypto Infiniti admits that it is a Nevada limited liability company, with its principal place of business in Reno, Nevada. Crypto Infiniti also admits that one of its members is a citizen of California. Crypto Infiniti denies the remaining allegations set forth in Paragraph 3.

## JURISDICTION AND VENUE

4. Crypto Infiniti admits the allegations in Paragraph 4 of Plaintiff's Amended Complaint.

5. Crypto Infiniti admits the allegations in Paragraph 5 of Plaintiff's Amended Complaint.

6. Crypto Infiniti admits the allegations in Paragraph 6 of Plaintiff's Amended Complaint.

7. Crypto Infiniti admits the allegations in Paragraph 7 of Plaintiff's Amended Complaint.

8. Crypto Infiniti denies the allegations in Paragraph 8 of Plaintiff's Amended Complaint.

## FACTS COMMON TO ALL ALLEGATIONS

9. Paragraph 9 purports to characterize Plaintiffs' versions of the facts to support its claims asserted in their Amended Complaint and does not warrant a response. To the extent a response is required, Crypto Infiniti denies the allegations in paragraph 9.

10. Crypto Infiniti admits the allegation in Paragraph 10 that on May 26, 2022, it executed a Master Hosting Agreement with MO POW 3 LLC. In answering the remainder of Paragraph 10,

Crypto Infiniti states that the Hosting Services Agreement speaks for itself, and to the extent a response is required, Crypto Infiniti denies the remaining allegations in Paragraph 10.

11. Crypto Infiniti admits the allegation in Paragraph 11 that on May 26, 2022, it executed a Master Hosting Agreement with MO POW 4 LLC. In answering the remainder of Paragraph 10, Crypto Infiniti states that Hosting Services Agreement speaks for itself, and to the extent a response is required, Crypto Infiniti denies the remaining allegations in Paragraph 11.

12. In answering Paragraph 12, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC speaks for itself. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 12.

13. In answering Paragraph 13, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC speak for themselves. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 13.

14. In answering Paragraph 14, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC speak for themselves. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 14.

15. Crypto Infiniti denies the allegations in Paragraph 15 of Plaintiff's Amended Complaint.

16. Crypto Infiniti denies the allegations in Paragraph 16 of Plaintiff's Amended Complaint.

17. Crypto Infiniti denies the allegations in Paragraph 17 of Plaintiff's Amended Complaint.

**CLAIM 1: BREACH OF CONTRACT**

18. Crypto Infiniti incorporates its responses to Paragraphs 1 through 17 herein.

19. Crypto Infiniti admits the allegations in Paragraph 19 of Plaintiff's Amended Complaint.

20. Crypto Infiniti denies the allegations in Paragraph 20 of Plaintiff's Amended Complaint.

21. Crypto Infiniti denies the allegations in Paragraph 21 of Plaintiff's Amended Complaint.

22. Crypto Infiniti denies the allegations in Paragraph 22 of Plaintiff's Amended Complaint.

23. Crypto Infiniti denies the allegations in Paragraph 23 of Plaintiff's Amended Complaint.

## CLAIM 2: BREACH OF CONTRACT

24. Crypto Infiniti incorporates its responses to Paragraphs 1 through 17 herein.

25. Crypto Infiniti denies the allegations in Paragraph 25 of Plaintiff's Amended Complaint.

26. Crypto Infiniti denies the allegations in Paragraph 26 of Plaintiff's Amended Complaint.

27. Crypto Infiniti denies the allegations in Paragraph 27 of Plaintiff's Amended Complaint.

28. Crypto Infiniti denies the allegations in Paragraph 28 of Plaintiff's Amended Complaint.

## CLAIM 3: FRAUDULENT INDUCEMENT

29. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 29 of their Amended Complaint does not warrant an answer.

30. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 30 of their Amended Complaint does not warrant an answer.

31. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 31 of their Amended Complaint does not warrant an answer.

32. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 32 of their Amended Complaint does not warrant an answer.

33. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 33 of their Amended Complaint does not warrant an answer.

34. Pursuant to the district court's *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered on October 18, 2022 (ECF No. 18), MO POW 3 LLC and MO POW 4 LLC's Claim 3 for Fraudulent Inducement is dismissed with prejudice. As such, Plaintiffs' allegations asserted in Paragraph 34 of their Amended Complaint does not warrant an answer.

### CLAIM 4: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. Crypto Infiniti incorporates its responses to Paragraphs 1 through 17 herein.

36. Crypto Infiniti denies the allegations in Paragraph 36 of Plaintiff's Amended Complaint.

37. Crypto Infiniti denies the allegations in Paragraph 37 of Plaintiff's Amended Complaint.

38. Crypto Infiniti denies the allegations in Paragraph 38 of Plaintiff's Amended Complaint.

### CLAIM 5: DECLARATORY JUDGMENT

39. Crypto Infiniti incorporates its responses to Paragraphs 1 through 17 herein.

40. In answering Paragraph 40, Crypto Infiniti states that 28 U.S.C. § 2202(a) speaks for itself. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 40.

41. In answering Paragraph 41, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Crypto

Infiniti and MO POW 4 LLC speak for themselves. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 41.

42. In answering Paragraph 42, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC speak for themselves. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 42.

43. In answering Paragraph 43, Crypto Infiniti states that the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC speak for themselves. To the extent a response is required, Crypto Infiniti denies the allegations in Paragraph 43.

44. Crypto Infiniti denies the allegations in Paragraph 44 of Plaintiff's Amended Complaint.

## GENERAL DENIAL

Crypto Infiniti denies all allegations contained in Plaintiffs' Amended Complaint that are not expressly and unequivocally admitted herein.

## AFFIRMATIVE DEFENSES

a.  One or more of Plaintiffs' causes of action fail to state a claim upon which relief can be granted.

b.  Plaintiffs were the first-to-breach the Master Hosting Agreement between Crypto Infiniti and MO POW 3 LLC and the Master Hosting Agreement between Infiniti and MO POW 4 LLC.

c.  Plaintiff MO POW 4 LLC repudiated the Master Hosting Agreement between Crypto Infiniti and MO POW 4 LLC.

d. Plaintiffs' claims are barred in whole or in part by the lack or failure of consideration.

e. Plaintiffs have waived their rights to assert one or more claims pled in their Amended Complaint.

f. Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

g. Plaintiffs have failed to perform conditions precedent to seeking the relief sought in their Amended Complaint.

h. The contracts at issue are voidable on grounds of mutual mistake because both parties independently made a mistake at the time the contracts were made as to a basic assumption of the contracts.

i. Plaintiffs are estopped from bringing one or more claims alleged in the Plaintiffs' Amended Complaint due to Plaintiffs' own actions or inactions.

j. Plaintiffs' claims are barred in whole or in part due to their unclean hands.

k. Plaintiffs' claims are barred in who or in part due to their fraudulent activities.

l. Plaintiffs cannot recover some or all their alleged damages because of Plaintiffs' own failure to mitigate their damages.

m. Crypto Infiniti reserves the right to assert additional affirmative defenses as the same become known during the pendency of this matter.

# COUNTERCLAIMS

## PARTIES

1. Counterclaimant, Crypto Infiniti LLC is a Nevada limited liability company with its principal place of business in Reno, Nevada.

2. Counterclaim Defendant MO POW 3, LLC is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming.

3. Counterclaim Defendant MO POW 4, LLC is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount alleged in these counterclaims exceed $75,000 and Crypto Infiniti is a citizen of a different state than MO POW 3 and MO POW 4.

5. The Court has personal jurisdiction over all parties as they have executed contracts wherein the parties consented for Wyoming courts to have jurisdiction and to resolve disputes relating to said contracts.

6. Venue is proper because the contracts executed between the parties select Wyoming as the forum for resolving any disputes.

## FACTS COMMON TO ALL COUNTERCLAIMS

7. On August 28, 2022, a broker approached Crypto Infiniti concerning a 15-megawatt site available in Missouri at $.075 for all-in hosting. Crypto Infiniti stressed that it had concerns with sites using EZ Blockchain "EZB" containers for hosting because of overheating issues with digital currency equipment in such an environment.

8. On May 16, 2022, a Crypto Infiniti representative conducted a pre-contract "site visit" in Springfield, Missouri. Three substations were visited in Springfield at this time by the Crypto Infiniti representative. MO POW 3 and MO POW 4' representative, Thomas Guel, was present for the site visit and represented that the substation that could connect first to the power grid is where Crypto Infiniti's digital currency equipment would be located. Mr. Guel represented that MO POW 3 and MO POW 4 would provide data to Crypto Infiniti concerning management of the EZB containers and represented that the EZB containers would be managed in a way to avoid overheating issues. Mr. Guel also represented that Crypto Infiniti representatives could visit the sites at any time where its digital currency equipment was to be located.

9. On May 26, 2022, Crypto Infiniti and MO POW 3 executed a Master Hosting Services Agreement ("First Contract"). (Exhibit A.) The First Contract requires that MO POW 3 provide hosting services at a site in Greene County, Missouri with 15 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)

10. Also on May 26, 2022, Crypto Infiniti executed a separate Master Hosting Services Agreement with MO POW 4 ("Second Contract"). (Exhibit B.) The Second Contract requires that MO POW 4 provide hosting services at a site in Green County, Missouri with 20 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)

11. On May 27, 2022, Crypto Infiniti initiated a test payment, *via* wire, in the amount of $10.00. (Exhibit C.) This payment was for the "buy down" Host's typical Managed Services Fee as set forth in the First Contract. (*Id.*)

12. On May 28, 2022, Crypto Infiniti initiated a first payment, *via* wire, in the amount of $1,999,990.00. (Exhibit D.) This payment was for the "buy down" Host's typical Managed Services Fee as set forth in the First Contract. (*Id.*)

13. On June 2, 2022, Crypto Infiniti initiated a second payment, *via* wire, in the amount of $2,135,250.00. (Exhibit E.) This payment was for the total Down Payment of Managed Services Fees as set forth on the Payment Schedule attached to the First Contract. (*Id.;* See Exhibit 1 at p. 22.)

14. Plaintiffs received all three payments made by Crypto Infiniti, which totaled $4,135,250.

15. On June 7, 2022, Crypto Infiniti representatives conducted a second site visit in Green County, Missouri. A representative of MO POW 3 and MO POW 4 showed the newly installed software (foreman.mn) and promised to provide Crypto Infiniti with data of digital currency equipment temperatures upon obtaining permission from Mr. Guel.

16. On June 17, 2022, Mr. Guel provided Crypto Infiniti with a bill of laden for transformers and a screen shot for payment of EZB containers. (Exhibit F.)

17. On June 21, 2022, a Crypto Infiniti representative conducted a third site visit in in Green County, Missouri. During this visit, a representative for MO POW 3 and MO POW 4 refused to provide data concerning digital currency equipment temperatures pursuant to Mr. Guel's instruction.

18. On June 24, 2022, counsel for Mr. Guel communicated with Crypto Infiniti, and explained that Mr. Guel had not received $3,066,000 under the Second Contract with MO POW 4, and therefore Mr. Guel "reserves the right to honor the HAS's executed between my client and CI but has no legal obligation to do so." (Exhibit G.)

19. On June 27, 2022, Crypto Infiniti had a Zoom meeting with Mr. Guel regarding the First and Second Contracts. Mr. Guel represented that everything was on schedule for the First Contract, and that he was waiting for payment on the Second Contract. Crypto Infiniti reaffirmed its concern of the overheating issues relating to the EZB containers that Mr. Guel insisted to use for Crypto Infiniti's digital currency machines. Crypto Infiniti requested data of digital currency equipment temperatures to assess live operations. Mr. Guel did not provide such information.

20. On June 28, 2022, Crypto Infiniti requested to have its forthcoming deposit payment under the Second Contract be placed in escrow to ensure the money would be used for construction of the site where Crypto Infiniti's digital currency equipment would be located. Mr. Guel refused such a request, stating: "Not Gonna happen." (Exhibit H.) Crypto Infiniti expressed concern that Mr. Guel used the previous payments totaling of over $4,135,250 for projects not related to Crypto Infiniti's site, which put into question Mr. Guel's ability to complete the designated site that would house Crypto Infiniti's digital currency equipment.

21. On July 5, 2022, Crypto Infiniti's counsel sent a letter to Mr. Guel informing that Crypto Infiniti accepted Mr. Guel's previous notice of right to terminate on June 24, 2022, regarding the Second Contract with MO POW 4. (Exhibit I.) Crypto Infiniti's counsel also reaffirmed that the First contract remained binding, that payment of both the "buy down" payment and the deposit payment had been paid in full by Crypto Infiniti in accordance with the terms of the First Contract. (*Id*.) As such, Crypto Infiniti insisted that MO POW 3 fully perform its obligations thereunder. Crypto Infiniti's counsel made clear that in the event MO POW 3 failed to comply, or delayed compliance, with its obligations under the

First Contract, Crypto Infiniti would suffer damages as a direct result of such failure or delay in compliance. (*Id.*)

22. On July 22, 2022, Crypto Infiniti (through counsel) requested shipping information so that Crypto Infiniti could ship its digital currency equipment to the designated site in Green County, Missouri. Crypto Infiniti's counsel's letter provides in pertinent part:

    Thank you for your email dated July 20, 2022 to our client, Crypto Infiniti LLC (hereinafter "Client"). This letter shall serve as confirmation of our Client's intention to comply with all obligations under the MO POW 3 Master Hosting Agreement executed between the Parties on May 27th, 2022 (hereinafter "Agreement") and as the Shipping Notice under the terms of the Agreement. Pursuant to the terms of the Agreement, the performance of the Agreement shall be independent of and not conditional on, any other agreements including but not limited to the MO POW 4 Master Hosting Agreement.

    Accordingly, our Client seeks confirmation from MO POW 3 LLC of the full address for the Facility, as defined in the Agreement (hereinafter "Facility"), to which our Client may arrange for shipping of all Client Equipment, as defined in the Agreement. Upon receipt of the full address for shipment, our Client shall immediately prepare for shipping of the Client Equipment.

    As of the last date upon which the Parties jointly visited the Facility in-person, construction was still ongoing, and the Facility was unfit to provide the Managed Services. Our Client has made multiple attempts to visit the Facility since that date, however, MO POW 3 LLC has declined to allow a subsequent visit. Due to the state of the Facility as of the date of the last visit, our Client seeks confirmation from MO POW 3 LLC that the Facility is presently prepared to offer the Managed Services, as defined in the Agreement, and that MO POW 3 LLC intends to comply with all obligations under the Agreement, including but not limited to the provision of the Managed Services upon receipt of the Client Equipment.

    In the event MO POW 3 LLC does not intend to comply with the obligations contained in the Agreement, our Client requests a return of any and all deposits, and the Rate Buy Down payment, as required by Section 3.4(A) of the Agreement, no later than five (5) business days from the date of receipt of this letter. Instructions for return of

> the funds, including necessary banking and account information, can be found on Exhibit A which is attached hereto.
>
> Our Client is eager to continue the productive long-term relationship contemplated by the Parties under the Agreement and we look forward to your response on the requested information by July 25, 2022 (PST).

(Exhibit J.)

23. Neither Mr. Guel nor any other representative from MO POW 3 provided the required shipping information in order for Crypto Infiniti to ship its digital currency equipment to MO POW 3's hosting site.

24. Unbeknownst to Crypto Infiniti, MO POW 3 filed an action in the U.S. District Court for Wyoming on July 19, 2022 (ECF No. 4), instead of performing its obligations under the First Agreement it executed with Crypto Infiniti. MO POW 4 is also a named plaintiff in the complaint, even though that contract had been previously terminated by the parties.

25. In their Amended Complaint (ECF No. 7) and their response to Crypto Infiniti's motion to dismiss (ECF No. 17), MO POW 3 and MO POW 4 asserted that the First Contract and Second Contract formed a supposed integrated transaction in hopes of being relieved from performing under the First Contract.

26. Then, in an attempt to gain some sort of after-the-fact strategic advantage to be used in the litigation, on October 12, 2022, MO POW 3 sent a "legal notice" to Crypto Infiniti, despite the pending litigation that MO POW 3 itself had filed. (Exhibit K.) In its "legal notice," MO POW 3 for the first time provided a shipping address for Crypto Infiniti to ship its digital currency equipment. (*Id.*) MO POW 3 also unilaterally attempted to change the Managed Services rate set forth in the First Contract. MO POW 3's "legal notice" also asserted that Crypto Infiniti must pay the first month's invoice and that MO POW 3 would

unilaterally terminate the First Contract if payment was not received within fifteen days. (*Id.*)

27. On October 25, 2022, MO POW 3 sent another "notice" that it would be unilaterally terminating the First Agreement if payment for the first month's invoice was not received by October 27, 2022. (Exhibit L.)

28. Mr. Guel then sent Crypto Infiniti a "notice of termination" letter on October 31, 2022, attempting to unilaterally terminate the First Contract and Second Contract. (Exhibit M.) In his letter, Mr. Guel asserted that because Crypto Infiniti did not pay the first month's invoice, MO POW 3 was terminating the First Contract. (*Id.*) Mr. Guel then went on to assert that because Crypto Infiniti did not pay the down payment under the Second Contract, that MO POW 4 was terminating the Second Contract. (*Id.*) Interestingly, the position taken by Mr. Guel in his October 31, 2022, letter confirms that the First Contract and Second Contract are separate and not an integrated transaction, which is contrary to the arguments made in MO POW 3 and MO POW 4's pleadings filed with the U.S. District Court. (*Compare id. with* ECF No. 7 and ECF No. 17.)

### COUNTERCLAIM I: BREACH OF CONTRACT

29. Crypto Infiniti incorporates Paragraphs 1-28 herein.

30. "The elements of a breach of contract claim are a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised, and entitlement of the injured party to damages." *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022) (cleaned up).

31. Crypto Infiniti and MO POW 3 executed the First Contract, which requires MO POW 3 to provide five Smart Box 3000 containers manufactured by EZ Blockchain for colocation at

MO POW 3's site in Green County, Missouri. The First Contract also requires MO POW 3 to provide myriad hosting services as set forth therein.

32. MO POW 3 failed to perform all its obligations pursuant to the First Contract

33. The above actions are a default and breach of the First Contract.

34. MO POW 3's breaches have caused Crypto Infiniti substantial losses and damages in an amount to be proven at trial, but which include ongoing and accumulating damages amounting to over several million dollars to date. Crypto Infiniti's current losses are in addition to the $4,135,250 that Crypto Infiniti paid to MO POW 3, which MO POW 3 refuses to return.

### COUNTERCLAIM II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. Crypto Infiniti incorporates Paragraphs 1-28 herein.

36. "Wyoming has adopted the Restatement (Second) of Contracts § 205, which states that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *PNS Stores, Inc. v. Cap. City Properties, LLC*, 2022 WY 101, ¶ 22, 515 P.3d 606, 611 (Wyo. 2022) (internal quotations omitted). "The implied covenant of good faith and fair dealing is a claim separate and distinct from a breach of contract claim, and the two claims are not mutually dependent." Id. (internal quotations omitted).

37. Because Wyoming law governs the First Contract, MO POW 3 owes a duty of good faith and fair dealing in its performance. However, MO POW 3 did not perform in any way under the First Contract despite Crypto Infiniti paying $4,135,250 for MO POW's services. Attempting to escape its obligations under the First Contract, the only path MO POW could

pursue was to file this questionable lawsuit and then send subsequent baseless notices outside of the Court's proceedings in an attempt to unilaterally terminate the First Contract.

38. MO POW 3 has breached the implied covenant of good faith and fair dealing through its actions as set forth herein.

39. MO POW 3's breach of the implied covenant of good faith and fair dealing has caused loss and damages to Crypto Infiniti substantial losses and damages in an amount to be proven at trial, but which include ongoing and accumulating damages amounting to over several million dollars. Crypto Infiniti's current losses are in addition to the $4,135,250.00 that Crypto Infiniti paid to MO POW 3, which MO POW 3 refuses to return.

### COUNTERCLAIM 3: CONVERSION

40. Crypto Infiniti incorporates Paragraphs 1-28 herein.

41. "Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *McTiernan v. Jellis*, 2013 WY 151, ¶ 23, 316 P.3d 1153, 1161, 2013 WL 6492447 (Wyo.2013) (internal quotations omitted). "To establish a claim for conversion, the following elements must be met: (1) plaintiff had legal title to the converted property; (2) plaintiff either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property." *Id.*

42. Crypto Infiniti paid $4,135,250.00 to MO POW 3 under the terms of the First Contract. However, MO POW 3 failed to perform its obligations under the First Contract and refuses to return the $4,135,250.00 back to Crypto Infiniti.

43. MO POW 3's conversion of Crypto Infiniti's $4,135,250.00 has caused substantial losses and damages in an amount to be proven at trial.

## REQUESTED RELIEF

WHEREFORE, Crypto Infiniti prays that MO POW 3 and MO POW 4 take nothing from their Amended Complaint, that judgment be entered in favor of Crypto Infiniti in all respects and against MO POW 3 and MO POW 4 on each of Crypto Infiniti's Counterclaims for relief, that Crypto Infiniti be awarded its reasonable costs and attorneys' fees as may be available at law or by contract, and for such other relief as the Court deems just under the circumstances.

**DATED** this 11th day of November 2022.

CRYPTO INFINITI LLC

By: */s/ Tyler J. Garrett*
Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
Hathaway & Kunz, LLP
2515 Warren Ave. Ste 500
P.O. Box 1208
Cheyenne, WY 82003
Phone: 307-634-7723
Fax: 307-634-0985
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR CRYPTO INFINITI LLC

**CERTIFICATE OF SERVICE**

      This is to certify that on the 11th day of November 2022, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Jeffrey S. Pope | [ ✓ ] EM/ECF/Electronic Filing |
| Kasey J. Schlueter | [ ] U.S. Mail |
| Holland & Hart, LLP | [ ] Fax: |
| 2515 Warren Avenue, Suite 450 | [ ] E-mail |
| P.O. Box 1347 | |
| Cheyenne, WY 82003-1347 | |

*Attorneys for Plaintiffs*

                                                                       */s/ Tyler J. Garrett*
                                                                     Hathaway & Kunz, LLP