Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No. 22-CV-155-SWS |
| CRYPTO INFINITI LLC, | |
| Defendant. | |

## PLAINTIFFS' RULE 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND BRIEF IN SUPPORT

### I.   INTRODUCTION

Crypto Infiniti LLC's (Infiniti) counterclaims allege both a tort and breach of contract. In doing so, Infiniti ignores the economic loss rule—the same rule it asked the Court to apply and the same rule the Court applied to dismiss Plaintiffs MO POW 3, LLC's (MO 3) and MO POW 4, LLC's ("MO 4" collectively, "Plaintiffs") fraudulent inducement claim. But the rule applies with equal force here because Infiniti's conversion counterclaim is a repackaged contract claim. Based upon the same analysis the Court outlined in its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, the Court should dismiss Infiniti's conversion counterclaim. Additionally, the Court should dismiss Infiniti's breach of contract counterclaim for two reasons. First, Infiniti failed to plead any facts that, when compared to the terms of the applicable

contracts, would constitute a breach. Second, Infiniti's breach claim fails to provide sufficient notice to Plaintiffs because it does not allege which provision of the agreement was breached and how Plaintiffs breached such provision. Finally, Infiniti fails to state a claim for the breach of the implied covenant of good faith and fair dealing. Infiniti alleges only that Plaintiffs exercised their contractual rights—facts that as a matter of law cannot constitute a breach of the implied covenant. Therefore, this Court should dismiss Infiniti's counterclaims.

## II.    STATEMENT OF MATERIAL FACTS

On May 26, 2022, Plaintiffs entered into two agreements with Infiniti to provide a total of thirty-five (35) megawatts (MW) of hosting service capacity to Infiniti's digital currency mining equipment (Agreements). The first agreement executed by MO 3 set out the arrangement for MO 3 to provide hosting services to Infiniti's initial fifteen (15) MW of digital mining equipment (First Agreement). Simultaneously, MO 4 executed the second agreement to provide additional hosting services to Infiniti's twenty (20) MW of digital mining equipment (Second Agreement). At the time of execution, the Agreements required Infiniti to pay Plaintiffs a rate buy down payment and a down payment. Infiniti was late in making the required payments under the First Agreement and never made the required payments under the Second Agreement.

Infiniti never shipped any digital currency mining equipment to Plaintiffs. Infiniti seems to allege in the Counterclaim that it never shipped the equipment because Plaintiffs never provided "the required shipping information . . . ." ECF Doc., ¶ 23[1]. However, the shipping information was contained within the First Agreement. ECF Doc. 7-1 p. 1, Article 1.1(A)(1) ("Client shall be solely liable for all expenses related to insuring, transporting, and shipping the

---

[1] By reciting Infiniti's allegations herein Plaintiffs do not concede the truth of any of Infiniti's allegations.

Client Equipment to Host's Facility. 400 North Main, Springfield, Missouri, Springfield, MO 65802."). After nearly two months of not receiving the required payments under the Second Agreement, despite numerous requests, Plaintiffs were forced to file this lawsuit. Infiniti filed its Answer and Counterclaims on November 11, 2022.

## III.    STANDARD OF REVIEW

When there is a diversity action, this Court applies federal procedural law and state substantive law. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citations omitted). This Motion to Dismiss is based upon Infiniti's failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or recitation of the elements are not enough, and each element of the claim must be supported by factual allegations. *See Houska v. Newkota Servs. & Rentals*, No. 20-CV-68-SWS, 2020 U.S. Dist. LEXIS 257233, at *5-6 (D. Wyo. Aug. 3, 2020).

## IV.    ARGUMENT

### A.    The economic loss rule bars Infiniti's conversion counterclaim.

In this Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, this Court dismissed Plaintiffs' fraudulent inducement claim based upon the economic loss rule. ECF Doc. 18, pp. 14-18. The Wyoming Supreme Court has explained the economic loss rule as:

> bar[ring] recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. The purpose of the 'economic loss rule' is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles . . . . The controlling policy consideration underlying tort law is the safety of persons and property-the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other. The 'economic loss rule' is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.

*Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 15, 228 P.3d 40, 45 (Wyo. 2010)

(internal quotations and citations omitted).

In support of the Court's ruling dismissing Plaintiffs' fraudulent inducement claim based upon the economic loss rule, the Court cited *Skyco Resources, LLP v. Family Tree Corporation*, 2022 WY 72, ¶ 45, 512 P.3d 11, 27 (Wyo. 2022). In *Skyco Resources, LLP*, after a buyer entered a purchase and sale agreement for mineral interests, the buyer requested the seller return its earnest money. *Id.* at ¶¶ 6-10, 512 P.3d at 16-17. When the seller failed to respond to the request, the buyer filed suit including a claim for fraud/intentional misrepresentation. *Id.* at ¶ 10, 512 P.3d at 17. The seller moved to dismiss this claim and the court agreed that the economic loss rule barred this claim. A nearly identical situation has occurred in this case.

Infiniti's breach of contract counterclaim asserts it entered into the First Agreement with MO 3 for hosting services, MO 3 "failed to perform all its obligations" pursuant to the First Agreement, and Infiniti suffered damages "amounting to over several million dollars to date . . . in addition to the $4,135,250 that [Infiniti] paid to MO POW 3, which MO POW 3 refuses to return." EFC Doc. 21, ¶¶ 31-34. Infiniti's conversion counterclaim alleges "Crypto Infiniti paid

$4,135,250.00 to MO POW 3 under the terms of the First Contract. However, MO POW 3 failed to perform its obligations under the First Contract and refuses to return the $4,135,250.00 back to Crypto Infiniti." *Id.* at ¶¶ 11-14, 22-23, 42. The substance of both counterclaims is based on contractual obligations, Infiniti paid MO 3 pursuant to the First Agreement, Infiniti requested a return of those funds pursuant to the First Agreement, and MO 3 ignored Infiniti's request. Thus, Infiniti's conversion counterclaim is intertwined with the performance of contractual obligations and Infiniti cannot allege an independent duty upon which to base its conversion counterclaim. *See JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo. 1992) ("[T]ort liability can only be premised on a duty independent of contractual duties.").

Additionally, the economic loss rule, is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of contract." *Excel Constr*, 2010 WY 34, ¶ 15, 228 P.3d at 45 (internal quotations and citations omitted). Multiple sections of the agreement protect Infiniti and allow Infiniti to recover for the alleged damages it claims were caused by a breach of contract. ECF Doc. 7-1, pp. 7-8, Article 2.8(B); p. 10, Article 3.4(A)[2]. Therefore, the economic loss rule bars Infiniti's conversion counterclaim and this Court should dismiss this counterclaim.

**B.    Infiniti's breach of contract counterclaim should be dismissed for two reasons.**

**1.    Infiniti's breach of contract counterclaim fails to state a claim upon which relief can be granted.**

Even if this Court takes Infiniti's allegations as true, Infiniti cannot state a claim for relief because the allegations contained in Infiniti's counterclaim do not establish a breach. In order to

---

[2] The Court "may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

properly plead a breach of contract claim, Infiniti must plead "an unjustified failure to timely perform all or any part of what is promised . . . ." *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022) (internal quotations and citations omitted). Even if the Court accepted all of Infiniti's factual allegations as true, Infiniti does not plead "an unjustified failure to timely perform all or any part of what is promised . . . ." With regard to its breach of contract counterclaim, Infiniti mentions what is "required" by the Agreements four times:

- "The First Contract requires that MO POW 3 provide hosting services at a site in Greene County, Missouri with 15 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)" ECF Doc. 21, ¶ 9.

- "The Second Contract requires that MO POW 4 provide hosting services at a site in Green County, Missouri with 20 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)" *Id.* at ¶ 10.

- "Crypto Infiniti and MO POW 3 executed the First Contract, which requires MO POW 3 to provide five Smart Box 3000 containers manufactured by EZ Blockchain for colocation at MO POW 3's site in Green County, Missouri." *Id.* at ¶ 31.

- "The First Contract also requires MO POW 3 to provide myriad hosting services as set forth therein." *Id.*

Within its Answer and Counterclaims, Infiniti never alleges that MO 3 failed to perform any of these "requirements." In fact, Infiniti does not even attempt to isolate specific facts and connect them to contractual obligations. Instead, Infiniti makes general allegations that insinuate MO 3 did something wrong; but none actually show a breach:

- Paragraph 17 alleges: "During this visit, a representative for MO POW 3 and MO POW 4 refused to provide data concerning digital currency equipment temperatures pursuant to Mr. Guel's instruction." ECF Doc. 21, ¶ 17. Infiniti does not allege the First Agreement required this information to be provided and in fact this is not a requirement in the First Agreement.

- Paragraph 19 alleges Mr. Guel represented everything was on schedule but MO 3 did not provide Infiniti with requested temperature data. *Id.* at ¶ 19. Infiniti does not allege the First Agreement required this information to be provided and in fact this is not a requirement in the First Agreement.

- Paragraph 20 alleges "Infiniti requested to have its forthcoming deposit payment under the Second Contract be placed in escrow to ensure the money would be used for construction of the site where [Infiniti's] digital currency equipment would be located . . . . Mr. Guel refused such a request." *Id.* at ¶ 20. Infiniti does not allege the Agreements required the deposit to be placed in escrow and in fact this is not required by the Agreements.

- In paragraph 20 Infiniti states it questioned "Mr. Guel's ability to complete the designated site that would house Crypto Infiniti's digital currency equipment." *Id.* at ¶ 20. But questioning is not an allegation the site was not ready – and thus cannot form the basis of a breach allegation. To the extent Infiniti would have the Court to draw an inference about site readiness from the counterclaim, Infiniti's counterclaim admits MO 3 provided a bill of laden for transformers and containers, indicating Plaintiffs were preparing the site. *Id.* at ¶ 16 ("On June 17, 2022, Mr. Guel provided Crypto Infiniti with a bill of laden for transformers and a

screen shot for payment of EZB containers."). Therefore, the inference the Court could draw cannot be that the site was not ready.

- Paragraphs 21, 22, and 23 allege Infiniti demanded MO 3 perform on the First Agreement, Infiniti requested the shipping address from MO 3, and MO 3 did not respond. *Id.* at ¶¶ 21-23. Infiniti does not allege the First Agreement required MO 3 to provide Infiniti with the shipping address. That is likely because MO 3 was not required to do so and the First Agreement lists the shipping address. ECF Doc. 7-1 p. 1, Article 1.1(A)(1) ("Client shall be solely liable for all expenses related to insuring, transporting, and shipping the Client Equipment to Host's Facility. 400 North Main, Springfield, Missouri, Springfield, MO 65802.").

- Paragraph 26 alleges MO 3 sent a legal notice which "unilaterally attempted to change the Managed Services rate set forth in the First Contract." *Id.* at ¶ 26. The First Agreement provides MO 3 the right to pass through an increased rate. ECF Doc. 7-1, p. 7, Article 2.4(B). The City Utilities of Springfield increased its rate and MO 3 exercised its contractual right and passed that rate increase on to Infiniti. As such, this allegation cannot be a breach.

- Paragraphs 26, 27, and 28 allege MO 3 and MO 4 terminated the Agreements for failure to pay. *Id.* at ¶¶ 26-28. The Agreements allow MO 3 and MO 4 to terminate the Agreements for non-payment. ECF Doc. 7-1, p. 7, Article 2.5, p. 10, Article 3.3(B); ECF Doc. 7-2, p. 8, Article 2.5, p. 9, Article 3.3(B). As such, this allegation cannot be a breach.

Beyond the allegations described above, there are none that Infiniti alleges or cites relating to alleged breaches of contract. Therefore, accepting Infiniti's allegations as true,

Infiniti's breach of contract counterclaim fails to state a claim upon which relief can be granted. Instead, Infiniti has shown it made requests for information outside the Agreements and is upset it did not receive such information. But that is a business problem not a contractual one. Unless Infiniti pleads the Agreements require MO 3 to provide such information, no breach occurred. Therefore, this Court should dismiss Infiniti's breach of contract counterclaim.

### 2.    Infiniti's breach of contract counterclaim does not provide MO 3 adequate notice of the substance of this counterclaim.

Beyond not showing a breach, Infiniti has failed to allege specific facts or identify the provisions in the Agreements MO 3 breached. As a result, Plaintiffs do not have adequate notice of the claim against them. While Rule 8 requires a short plain statement of the allegations and claims, it still requires enough notice for the other party to understand the claim. The purpose of pleading standards is to ensure defendants have fair notice of the claims made against them and the facts upon which the claim is based to ensure such defendants can adequately defend themselves. *See Peter D. Holdings, Ltd. Liab. Co. v. Wold Oil Props., Ltd. Liab. Co.*, No. 17-CV-212-R, 2019 U.S. Dist. LEXIS 226670, at *12 (D. Wyo. May 8, 2019).

In the context of a breach of contract claim, fair notice requires allegations of specific contractual provisions and how the other party breached them. *See Wagner Equip. Co. v. Wood*, No. 11-466 MV/ACT, 2012 U.S. Dist. LEXIS 39589, at *7-11 (D.N.M. Mar. 20, 2012) (dismissing plaintiff's breach of contract claim because the complaint failed to allege which provision of the contract was breached and how defendants breached it). A broad conclusion devoid of factual enhancement which is a "formulaic recitation of the necessary element[]" is not enough. *Foster v. Fay Servicing, LLC*, No. 19-CV-196-R, 2020 U.S. Dist. LEXIS 262228, at *13 (D. Wyo. Feb. 20, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Infiniti's breach of contract claim consists of two paragraphs that state, "MO POW 3 failed to perform all its obligations pursuant to the First Contract. The above actions are a default and breach of the First Contract." ECF Doc. 21, ¶¶ 32-33. Essentially Infiniti concludes MO 3 failed to perform with a broad conclusion referring to the entirety of the pleading that came before. As a matter of law that is insufficient. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.") It also fails the notice requirements because it does not provide any factual allegations as to what promise or requirement under the Agreements Plaintiffs failed to perform. As a result, Plaintiffs cannot identify the substantive basis of the counterclaim. Thus, this Court should dismiss Infiniti's breach of contract counterclaim.

### C. Infiniti's breach of the implied covenant of good faith and fair dealing claim fails to state a claim upon which relied can be granted.

A breach of the implied covenant of good faith and fair dealing occurs when one party interferes or fails to cooperate in the other party's performance under the contract. *White v. Shane Edeburn Constr., LLC,* 2012 WY 118, ¶ 20, 285 P.3d 949, 955-56 (Wyo. 2012) (internal quotations and citation omitted). "Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Harper v. Fid. & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 34, 234 P.3d 1211, 1221 (Wyo. 2010). Put another way, the exercise of a contractual right cannot serve as a basis to allege a breach of the implied covenant, even at the pleadings stage. *See White,* ¶¶ 22-23, 285 P.3d at 956 (affirming a district court's dismissal of a breach of the implied covenant counterclaim because plaintiff terminated the lease pursuant to contractual rights and even when the court viewed the counterclaim in the light most favorable to the

defendant, it did not give rise to a claim for breach of the implied covenant of good faith and fair dealing).

Yet Plaintiffs' exercise of its contractual rights is precisely the basis for Infiniti's counterclaim for breach of the implied covenant of good faith and fair dealing:

> Because Wyoming law governs the First Contract, MO POW 3 owes a duty of good faith and fair dealing in its performance. However, MO POW 3 did not perform in any way under the First Contract despite Crypto Infiniti paying $4,135,250 for MO POW's services. Attempting to escape its obligations under the First Contract, the only path MO POW could pursue was to file this questionable lawsuit and then send subsequent baseless notices outside of the Court's proceedings in an attempt to unilaterally terminate the First Contract . . . . MO POW 3 has breached the implied covenant of good faith and fair dealing through its actions as set forth herein.

ECF Doc. 21, ¶¶ 37-38. The only allegations that can even impliedly relate to a breach of the implied covenant is Infiniti's allegations that Plaintiffs filed a "questionable lawsuit" and sent "subsequent baseless notices." *Id.* at ¶ 37.

But just like the plaintiff in *White,* Plaintiffs here exercised their right to seek a contractually available remedy for harm caused by Infiniti's failure to pay. Article 3.4(B) in the First Agreement provides: "Host may pursue any of the remedies in this Section; however, these remedies do not constitute any limitation on Host seeking additional remedies available in law or in equity . . . ." ECF Doc. 7-1, pp. 9-10, Article 3.4(B). With regard to the "baseless notices," Plaintiffs had a contractual right to pass through the rate increase, invoice Infiniti for the Minimum Managed Service Fee, and terminate the Agreements for nonpayment. *Id.* at p. 6, Article 2.3(A) (Minimum Managed Services Fees); *Id.* at p. 7, Article 2.4(B) (Modifications); *Id.* at p. 9, Article 3.3(B) (Termination for Non-Payment). Therefore, even if the Court accepted all Infiniti's allegations as true, they would still fail to plead a claim for breach of the implied covenant of good faith and fair dealing as a matter of law.

11

Plaintiffs recognize this Court stated in its prior order that "a breach of the covenant of good faith and fair dealing is a question of fact, and it would be inappropriate to delve into a factual inquiry at the pleading stage." ECF Doc. 18, p. 19 (citing *Scherer*, 2001 WY 23, ¶ 19, 18 P.3d 645, 654 (Wyo. 2001)). But the Court also recognized the legal limit of the implied covenant, noting "[a]bsent self-dealing or a breach of the community standards of decency, fairness, or reasonableness, exercising contractual rights alone will not be considered a breach." *Id.* The Court has no need to inquire as to the facts. Infiniti's counterclaim is the same as the dismissed counterclaim in *White* because it depends on the Court finding the exercise of a contractual right is bad faith. Therefore, the Court can dismiss Infiniti's counterclaim.

For the Court to disagree, it must find Infiniti has alleged self-dealing or a breach of the community standards of decency, fairness, or reasonableness or alleged a breach of the implied covenant for reasons other than Plaintiffs' exercise of a contractual right. If that is what the Court finds, then the Court should order Infiniti to amend its counterclaim to provide a more definite statement. Federal Rule of Civil Procedure 12(e) states "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Based on the existing allegations, Plaintiffs cannot determine from the face of the counterclaim another factual basis and by extension prepare a responsive pleading. Therefore, if this Court does not dismiss Infiniti's counterclaim, Plaintiffs request an order for Infiniti to more definitively state the facts that constitute a breach of the implied covenant of good faith and fair dealing.

## V.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request this Court dismiss Infiniti's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: December 2, 2022.

*/s/ Kasey J. Schlueter*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC and MO POW 4, LLC

20229456_v3