Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CRYPTO INFINITI LLC,<br><br>Defendant. | Civil Action No. 22-CV-155-SWS |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR
### RULE 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

**I.      INTRODUCTION**

Crypto Infiniti LLC's (Infiniti) Response is long on pages but short on substantive responses to Plaintiffs' Motion to Dismiss. Infiniti asserts a breach of contract but ignores the basic principle of alleging a breach of contract—alleging a fact that is contrary to plain language of a contract. Infiniti's factual allegations, even if true, do not breach any provision of the applicable contracts. Leaning into the same problem, Infiniti asserts Plaintiffs non-breach of the contract supports a claim for breaching the implied covenant of good faith and fair dealing. But Infiniti's pleading shows Plaintiffs have followed the terms of the contracts and worked toward realizing the parties' expectations. Finally, Infiniti pretends that its conversion counterclaim is independent of its breach of contract counterclaim based on several theories that are either

contrary to this Court's prior ruling or contrary to the facts. As a result, the economic loss rule still bars that counterclaim.

## II. ARGUMENT

### A. Infiniti has still failed to plead a breach of contract.

Plaintiffs' motion to dismiss Infiniti's breach of contract counterclaim was simple—Infiniti failed to plead facts that even if true would constitute a breach of any provision of the contracts. Infiniti responds by claiming, "Infiniti gave notice to ship its digital currency mining equipment and requested confirmation of MO POW 3's shipping information (ECF Doc. 21-10), MO POW 3 intentionally did not provide such information in hopes of not having the commencement date triggered and their managed services kick-in." (ECF Doc. 24, p. 12.[1]) For this to constitute a breach, the parties' agreements must require Plaintiffs to confirm a shipping address—neither do. (*See* ECF Docs. 7-1, 7-2.) And despite the pages devoted to defending this counterclaim, Infiniti never points to the language that would support its breach counterclaim. Indeed, Infiniti cannot because the First Agreement provides Infiniti the shipping address. (ECF Doc. 24, p. 4 ("The First Contract provides that MO POW 3's facility is located at 400 North Main, Springfield, Missouri 65802, **which is where Crypto Infiniti's equipment was to be shipped**" (citing to ECF Doc. 21-1[the First Agreement]) (emphasis added)).)

Infiniti attempts to distract from its glaring problem by noting Plaintiffs provided a different equipment receiving address in Plaintiffs' legal notice sent months after Infiniti

---

[1] As a factual matter, Infiniti did not "give notice to ship." Infiniti's notice stated it would "arrange for shipping" and "prepare for shipping of the Client Equipment." (ECF Doc. 21-10, p. 1.) Pursuant to the First Agreement, delivery notice is only to occur "once [Infiniti] has arranged for the Equipment to be shipped" and "shall include any tracking information provided to [Infiniti]." (ECF Doc. 21-1, p. 1.) Infiniti never attempted to ship the equipment despite the fact that it had the shipping information as admitted in its Response. (*See* ECF Doc. 24, p. 4.)

2

requested confirmation. This is a red herring. The First Agreement does not prohibit Plaintiffs from using a different shipping address. As such, a new address is not a breach and does not show Plaintiffs breached by not confirming a detail already in the contract.

Infiniti also attempts to bootstrap a different breach counterclaim, by arguing MO 3 breached Article 1.3(A)(3) of the First Agreement because MO 3 denied Infiniti access to the facility. (ECF Doc. 24, p. 13 (citing ECF Doc. 21-1 at 3).) Article 1.3(A)(3) falls under the managed services section of the First Agreement. As Infiniti notes, Plaintiffs have a duty to provide managed services only **AFTER** Plaintiffs receive Infiniti's equipment. (ECF Doc. 21-1, p. 3, Article 1.3(A)(3).) Because Infiniti never shipped its equipment, Plaintiffs had no duty to provide managed services, including allowing physical access to the facility.

Still, Infiniti's argument proves too much. Infiniti's counterclaim never alleges a breach of the physical access provisions. In fact, the counterclaims never mention Article 1.3(A)(3) and thus Plaintiffs did not have sufficient notice of the breach of contract counterclaim against it. Likewise, Infiniti's use of the plausibility standard does not cover the scenario before the Court—comparing the alleged facts to the contracts shows no breach. As such, Infiniti has no plausible claim for relief.

> **B.    Since Infiniti's breach of contract counterclaim fails, Infiniti's breach of the implied covenant counterclaim should be dismissed as well.**

In its Response Infiniti fails to respond to Plaintiffs' arguments in its Motion to Dismiss. Instead, Infiniti only claims that its breach of the implied covenant of good faith and fair dealing counterclaim was plausible because Infiniti showed in its Response its breach of contract counterclaim was plausible. (ECF Doc. 24, p. 14 (citing *McCarty*, No. 15-CV-210-KHR, 2016 WL 8290131, at *5).) As described above, Infiniti's breach of contract counterclaim fails to plead a claim, which would also defeat Infiniti's breach of the implied covenant of good faith

and fair dealing counterclaim. *See Ins. Concepts & Design, Inc. v. Healthplan Servs.*, 785 So. 2d 1232, 1236 (Fla. Dist. Ct. App. 2001).

Even so, Infiniti's admission that its breach of contract and breach of the implied covenant of good faith and fair dealing are based on the same facts and alleged breaches doom this counterclaim too. While Wyoming has not addressed this issue, other courts have and rejected a breach of the implied covenant claim that duplicates a breach of contract claim. *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 611 (Sup. Ct. 2010) ("A breach of the implied covenant of good faith and fair dealing claim that is duplicative of a breach of contract claim must be dismissed.") Going one step further, other courts require a breach of the implied covenant claim to plead more than just a breach of the contract. Instead, a party must "allege some kind of 'subterfuge[]' or 'evasion[],' such as 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.'" *Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 596 (2013) (quoting Second Restatement of Contracts § 205). As a matter of law, Infiniti has failed to plead a claim for breach of the implied covenant and the Court should dismiss this counterclaim.

      **C.**      **The economic loss rule bars Infiniti's conversion counterclaim because it is not independent of its breach of contract counterclaim.**

Ignoring that its counterclaims contradict the position it took relative to Plaintiffs' Complaint, Infiniti offers three reasons its conversion counterclaim should survive.

First, Infiniti argues that since Plaintiffs contend the Agreements are integrated and the Second Agreement was terminated before this lawsuit then the economic loss rule should not apply. (ECF Doc. 24, p. 3.) This argument suffers from several problems. To start, it does not matter whether the agreements are integrated or terminated. Infiniti's conversion counterclaim

4

seeks to remedy the same alleged harm as that contained in its breach of contract counterclaim. The economic loss rule exists for this scenario. *Excel Constr., Inc. v. HKM Eng'g Inc.*, 2010 WY 34, ¶ 15, 228 P.3d 40, 35 (Wyo. 2010) ("The 'economic loss rule' is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract."). Further, Plaintiffs did not terminate the Second Agreement until October 28, 2022—long after this case started. (ECF Doc. 21, ¶¶ 27-28.)

To conjure a different story, Infiniti intentionally misconstrues prior correspondence.[2] Plaintiffs' June 24, 2022 legal notice stated it "reserves the right to honor the [Second Agreement] executed between [Plaintiffs] and [Infiniti] but has no legal obligation to do so" because Infiniti had not paid the required amounts. (ECF Doc. 21-7.) That language does not terminate the Second Agreement. Infiniti tried to pretend that it did, stating in follow up correspondence that "we hereby accept your notice of termination for the [Second Agreement]." (*Id.* at 21-9.) But that acceptance means nothing because Plaintiffs never terminated the Second Agreement until months later.

Infiniti's next argues this Court should not apply the economic loss rule because "in *Skyco*, the Wyoming Supreme Court dealt with a ruling at the summary stage and applied the economic loss rule to the fraud claim, but not to the conversion claim." (ECF Doc. 24, p. 3.) In *Skyco*, the Wyoming Supreme Court did not opine that the economic loss rule did not apply to

---

[2] Infiniti may take issue with whether it intentionally misconstrued correspondence. But in addition to the proof above, Infiniti took Plaintiffs' statements out of context to insinuate Plaintiffs' facility was not ready. But Plaintiffs said the opposite, noting final approval was only days away. (ECF Doc. 21-6 ("In the permit status document, all is approved except for electric and the due date for that approval is the 21st of June or Tuesday. The disapproval was at a preliminary stage and has been corrected so all we are waiting for is the final approval **on Tuesday**." (emphasis added) (compare with ECF Doc. 21-6 pp. 5-6)).)

the conversion claim. *See Skyco Res., LLP v. Family Tree Corp.,* 2022 WY 72, 512 P.3d 11 (Wyo. 2022). Instead, the district court in *Skyco* had granted summary judgment and dismissed the conversion claim for reasons other than the economic loss rule – which the Wyoming Supreme Court reversed due to a question of material fact. *Id.* ¶ 36, at 24. The question of whether the conversion claim in *Skyco* should be dismissed based upon the economic loss rule was not before the Wyoming Supreme Court. *Id.* Put simply, the Wyoming Supreme Court's decision in *Skyco* does not stand for the proposition that the economic loss rule does not apply to conversion claims.

To the extent Infiniti is arguing that this Court should allow the conversion claim to proceed past the pleading stage as was done in *Skyco*, Infiniti is guilty of copying Plaintiffs' homework. Plaintiffs made the same argument in its Response to Infiniti's Motion to Dismiss, which the Court rejected. (ECF Doc. 17, p. 10; ECF Doc. 18.) Tongue in cheek aside, Infiniti does not get to maintain inconsistent positions on the economic loss rule. *See Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo. 1976) (describing judicial estoppel as a doctrine that prevents a party from playing "fast and loose with the courts" by disallowing a party from maintaining "inconsistent positions in judicial proceedings."); *DLB v. DJB (Paternity of JRW)*, 814 P.2d 1256, 1265-66 (Wyo. 1991); *Willowbrook Ranch v. Nugget Expl.*, 896 P.2d 769, 771 (Wyo. 1995).

Finally, Infiniti argues its affirmative defense of mutual mistake requires it to plead a counterclaim for conversion. (ECF Doc. 24, p. 18.) Infiniti cites no law for this claim, likely because it would render the economic loss rule meaningless. A party could avoid the rule barring a counterclaim by pleading the right affirmative defense. It would also make the economic loss rule apply differently to counterclaims because a counterclaimant would also assert affirmative

6

defenses. Further, the economic loss rule deals with claims not defenses, which is why it address the connection between tort claims and contract claims.

Moreover, Infiniti's claim that it will need a separate claim to disgorge money if it wins an affirmative defense makes no sense. If Infiniti prevails on its affirmative defense, then Plaintiffs cannot enforce the contracts. If Infiniti wants money back in that scenario its alternative claim is either recission of the contract or replevin—not to have both a breach of contract action and tort claim.

### III.    CONCLUSION

For the reasons discussed above and in Plaintiffs' Motion to Dismiss, Plaintiffs respectfully request this Court dismiss Infiniti's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: December 23, 2022.

*/s/ Jeffrey S. Pope*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC and MO POW 4, LLC

20572551_v1