ATTACHMENT 1

Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR DEFENDANT / COUNTERCLAIMANT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:22-CV-155-KHR |
| vs. | ) | |
| | ) | |
| CRYPTO INFINITI LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S FIRST AMENDED COUNTERCLAIMS

COMES NOW Defendant, Crypto Infiniti LLC, by and through undersigned counsel, and hereby files its *First Amended Counterclaims* as follows:

## AMENDED COUNTERCLAIMS

### PARTIES

1.      Counterclaimant, Crypto Infiniti LLC is a Nevada limited liability company with its principal place of business in Reno, Nevada.

2.      Counterclaim Defendant MO POW 3, LLC is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming.

3.      Counterclaim Defendant MO POW 4, LLC is a Wyoming limited liability company with its principal place of business in Jackson, Wyoming.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount alleged in these counterclaims exceed $75,000 and Crypto Infiniti is a citizen of a different state than MO POW 3 and MO POW 4.

5.      The Court has personal jurisdiction over all parties as they have executed contracts wherein the parties consented for Wyoming courts to have jurisdiction and to resolve disputes relating to said contracts.

6.      Venue is proper because the contracts executed between the parties select Wyoming as the forum for resolving any disputes.

## FACTS COMMON TO ALL COUNTERCLAIMS

7.      On August 28, 2022, a broker approached Crypto Infiniti concerning a 15-megawatt site available in Missouri at $.075 for all-in hosting. Crypto Infiniti stressed that it had concerns with sites using EZ Blockchain "EZB" containers for hosting because of overheating issues with digital currency equipment in such an environment.

8.      On May 16, 2022, a Crypto Infiniti representative conducted a pre-contract "site visit" in Springfield, Missouri. Three substations were visited in Springfield at this time by the Crypto Infiniti representative. MO POW 3 and MO POW 4's representative, Thomas Guel, was present for the site visit and represented that the substation that could connect first to the power grid is where Crypto Infiniti's digital currency equipment would be located. Mr. Guel represented

that MO POW 3 and MO POW 4 would provide data to Crypto Infiniti concerning management of the EZB containers and represented that the EZB containers would be managed in a way to avoid overheating issues. Mr. Guel also represented that Crypto Infiniti representatives could visit the sites at any time where its digital currency equipment was to be located.

9.      On May 26, 2022, Crypto Infiniti and MO POW 3 executed a Master Hosting Services Agreement ("First Contract"). (Exhibit A.)

10.      The First Contract requires that MO POW 3 provide hosting services with 15 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)

11.      The First Contract requires that MO POW 3 provide "Managed Services" to Crypto Infiniti including rack space allocation for Crypto Infiniti's equipment, installation services, electrical power connection, power supply of at least 15 MW, network connectivity, security, maintenance, repair, and technical support. (*Id.*) The First Contract provides that these services are to be provided at MO POW 3's facility specifically located at 400 North Main, Springfield, Missouri 65802.  (*Id.*)

12.      Also on May 26, 2022, Crypto Infiniti executed a separate Master Hosting Services Agreement with MO POW 4 ("Second Contract"). (Exhibit B.)

13.      The Second Contract requires that MO POW 4 provide hosting services with 20 megawatts of power to run Crypto Infiniti's digital currency equipment. (*Id.*)

14.      The Second Contract requires that MO POW 4 provide "Managed Services" to Crypto Infiniti including rack space allocation for Crypto Infiniti's equipment, installation services, electrical power connection, power supply of at least 15 MW, network connectivity, security, maintenance, repair, and technical support. (*Id.*) The Second Contract provides that these

services are to be provided at MO POW 4's facility specifically located at 5501 East Farm Road 112, Strafford, Missouri 65757. (*Id.*)

15.    On May 27, 2022, Crypto Infiniti initiated a test payment, *via* wire, in the amount of $10.00. (Exhibit C.)

16.    This payment was for the "buy down" Host's typical Managed Services Fee as set forth in the First Contract. (*Id.*)

17.    On May 28, 2022, Crypto Infiniti initiated a first payment, *via* wire, in the amount of $1,999,990.00. (Exhibit D.)

18.    This payment was for the "buy down" Host's typical Managed Services Fee as set forth in the First Contract. (*Id.*)

19.    On June 2, 2022, Crypto Infiniti initiated a second payment, *via* wire, in the amount of $2,135,250.00. (Exhibit E.) This payment was for the total Down Payment of Managed Services Fees as set forth on the Payment Schedule attached to the First Contract. (*Id.; See* Exhibit A at p. 22.)

20.    Plaintiffs received all three payments made by Crypto Infiniti, which totaled $4,135,250.

21.    On June 7, 2022, Crypto Infiniti representatives conducted a second site visit in Green County, Missouri.

22.    A representative of MO POW 3 and MO POW 4 showed the newly installed software (foreman.mn) and promised to provide Crypto Infiniti with data of digital currency equipment temperatures upon obtaining permission from Mr. Guel.

23.    On June 17, 2022, Mr. Guel provided Crypto Infiniti with a bill of laden for transformers and a screen shot for payment of EZB containers. (Exhibit F.) In his communication,

Mr. Guel admitted that there still had not been permit approval for electric, and that "[t]he disapproval was at a preliminary stage and has been corrected so all we are waiting for is the final approval . . . ." (*Id.*)

24.    On June 21, 2022, a Crypto Infiniti representative conducted a third site visit in Green County, Missouri.

25.    During this visit, a representative for MO POW 3 and MO POW 4 refused to provide data concerning digital currency equipment temperatures pursuant to Mr. Guel's instruction.

26.    On June 24, 2022, counsel for Mr. Guel communicated with Crypto Infiniti, and explained that Mr. Guel had not received $3,066,000 under the Second Contract with MO POW 4, and therefore Mr. Guel "reserves the right to honor the HSA's executed between my client and CI but has no legal obligation to do so." (Exhibit G.)

27.    On June 27, 2022, Crypto Infiniti had a Zoom meeting with Mr. Guel regarding the First and Second Contracts. Mr. Guel represented that everything was on schedule for the First Contract, and that he was waiting for payment on the Second Contract. Crypto Infiniti reaffirmed its concern of the overheating issues relating to the EZB containers that Mr. Guel insisted to use for Crypto Infiniti's digital currency machines. Crypto Infiniti requested data of digital currency equipment temperatures to assess live operations. Mr. Guel did not provide such information.

28.    On June 28, 2022, Crypto Infiniti requested to have its forthcoming deposit payment under the Second Contract be placed in escrow to ensure the money would be used for construction of the site where Crypto Infiniti's digital currency equipment would be located. Mr. Guel refused such a request, stating: "Not Gonna happen." (Exhibit H.) Crypto Infiniti expressed concern that Mr. Guel used the previous payments totaling of over $4,135,250 for projects not

related to Crypto Infiniti's site, which put into question Mr. Guel's ability to complete the designated site that would house Crypto Infiniti's digital currency equipment.

29.    On July 5, 2022, Crypto Infiniti's counsel sent a letter to Mr. Guel informing him that Crypto Infiniti accepted Mr. Guel's previous notice of right to terminate on June 24, 2022, regarding the Second Contract with MO POW 4. (Exhibit I.) Crypto Infiniti's counsel also reaffirmed that the First Contract remained binding, that both the "buy down" payment and the deposit payment had been paid in full by Crypto Infiniti in accordance with the terms of the First Contract. (*Id*.) As such, Crypto Infiniti insisted that MO POW 3 fully perform its obligations thereunder. Crypto Infiniti's counsel made clear that in the event MO POW 3 failed to comply, or delayed compliance, with its obligations under the First Contract, Crypto Infiniti would suffer damages as a direct result of such failure or delay in compliance. (*Id.*)

30.    On July 22, 2022, Crypto Infiniti (through counsel) requested shipping information so that Crypto Infiniti could ship its digital currency equipment to the designated site in Green County, Missouri. Crypto Infiniti's counsel's letter provides in pertinent part:

> Thank you for your email dated July 20, 2022 to our client, Crypto Infiniti LLC (hereinafter "Client"). This letter shall serve as confirmation of our Client's intention to comply with all obligations under the MO POW 3 Master Hosting Agreement executed between the Parties on May 27th, 2022 (hereinafter "Agreement") and as the Shipping Notice under the terms of the Agreement. Pursuant to the terms of the Agreement, the performance of the Agreement shall be independent of and not conditional on, any other agreements including but not limited to the MO POW 4 Master Hosting Agreement.
>
> Accordingly, our Client seeks confirmation from MO POW 3 LLC of the full address for the Facility, as defined in the Agreement (hereinafter "Facility"), to which our Client may arrange for shipping of all Client Equipment, as defined in the Agreement. Upon receipt of the full address for shipment, our Client shall immediately prepare for shipping of the Client Equipment.

As of the last date upon which the Parties jointly visited the Facility in-person, construction was still ongoing, and the Facility was unfit to provide the Managed Services. Our Client has made multiple attempts to visit the Facility since that date, however, MO POW 3 LLC has declined to allow a subsequent visit. Due to the state of the Facility as of the date of the last visit, our Client seeks confirmation from MO POW 3 LLC that the Facility is presently prepared to offer the Managed Services, as defined in the Agreement, and that MO POW 3 LLC intends to comply with all obligations under the Agreement, including but not limited to the provision of the Managed Services upon receipt of the Client Equipment.

In the event MO POW 3 LLC does not intend to comply with the obligations contained in the Agreement, our Client requests a return of any and all deposits, and the Rate Buy Down payment, as required by Section 3.4(A) of the Agreement, no later than five (5) business days from the date of receipt of this letter. Instructions for return of the funds, including necessary banking and account information, can be found on Exhibit A which is attached hereto.

Our Client is eager to continue the productive long-term relationship contemplated by the Parties under the Agreement and we look forward to your response on the requested information by July 25, 2022 (PST).

(Exhibit J.)

31.     Neither Mr. Guel nor any other representative from MO POW 3 provided the required shipping information in order for Crypto Infiniti to ship its digital currency equipment to MO POW 3's hosting site or to receive container approval from MO POW 3 as required in the Onboarding Policies of the First Contract prior to scheduling delivery of the equipment.

32.     MO POW 3 has not performed its obligations under the First Contract and has not provided any services to Crypto Infiniti pursuant to the terms of the First Contract.

33.     MO POW 4 has not performed its obligations under the Second Contract and has not provided any services to Crypto Infiniti pursuant to the terms of the Second Contract

34.     MO POW 3 and MOW POW 4 have not returned the $4,135,250 Crypto Infiniti paid for MO POW 3 and MO POW 4 to perform their obligations under the First and Second Contracts.

35.     Both the First Contract and Second Contract include the following provision concerning Crypto Infiniti's remedies for MO POW 3 and/or MO POW 4's non-performance of its obligations under the First and Second Contracts:

> 3.4 Effect of Default.
>
> **A. Client Remedies**. **<u>Client may pursue any of the remedies in this Section for Host's non-performance of its obligations under this Agreement</u>**; however, these remedies do not constitute any limitation on Client seeking additional remedies available in law or equity, nor does Client's forbearance to enforce one or more of the remedies set forth herein constitute a waiver of the right to exercise such remedy at a later date. <u>**In the event of Host's non-performance of its obligations under this Agreement, Client shall be entitled to a refund of any and all fees paid to Host for**</u>- (i) the three (3) service month's preceding the then-current service month, <u>**(ii) any Down Payment of Managed Services not rendered during the Initial or Renewal Term**</u>, and (iii) the remaining, pro rata portion of the Rate Buy Down Payment not applied to the Client's Payment Schedule as enumerated in Exhibit A as of the date of termination, as applicable. Unless applicable law requires a longer period, any action against Host in connection with this Agreement must be commenced within two (2) years after the purported cause of the action has accrued. Client agrees to look first to Client's insurance to recover for injury or damages in the event the insurance policies required by Article 1 cover the losses or injuries.

(Exhibit A at p. 9; Exhibit B at p. 9.) (emphasis added.)

36.     MO POW 3 filed an action in the U.S. District Court for Wyoming on July 19, 2022 (ECF No. 4), instead of performing its obligations under the First Contract it executed with Crypto Infiniti. MO POW 4 is also a named plaintiff in the complaint, even though that contract had been previously terminated by the parties. (Exhibits G & J.)

37.     In their Amended Complaint (ECF No. 7) and their response to Crypto Infiniti's motion to dismiss (ECF No. 17), MO POW 3 and MO POW 4 asserted that the First Contract and Second Contract formed a supposed integrated transaction in hopes of MO POW 3 being relieved from performing under the First Contract.

38.     Then, in an attempt to gain some sort of after-the-fact strategic advantage to be used in the litigation, on October 12, 2022, MO POW 3 sent a "legal notice" to Crypto Infiniti, despite the pending litigation that MO POW 3 itself had filed. (Exhibit K.) In its "legal notice," MO POW 3 for the first time provided a shipping address for Crypto Infiniti to ship its digital currency equipment. (*Id.*) MO POW 3 also unilaterally attempted to change the Managed Services rate set forth in the First Contract. Despite the commencement date not being initiated pursuant to Section 1.1(B)(3) of the First Contract, MO POW 3's "legal notice" also asserted that Crypto Infiniti must pay the first month's invoice and that MO POW 3 would unilaterally terminate the First Contract if payment was not received within fifteen days. (*Id.*)

39.     On October 25, 2022, MO POW 3 sent another "notice" that it would be unilaterally terminating the First Agreement if payment for the first month's invoice was not received by October 27, 2022. (Exhibit L.)

40.     Mr. Guel then sent Crypto Infiniti a "notice of termination" letter on October 31, 2022, attempting to unilaterally terminate the First Contract and Second Contract. (Exhibit M.) In his letter, Mr. Guel asserted that because Crypto Infiniti did not pay the first month's invoice, MO POW 3 was terminating the First Contract. (*Id.*) Mr. Guel then went on to assert that because Crypto Infiniti did not pay the down payment under the Second Contract, that MO POW 4 was terminating the Second Contract. (*Id.*) Interestingly, the position taken by Mr. Guel in his October 31, 2022, letter confirms that the First Contract and Second Contract are separate and not an

integrated transaction, which is contrary to the arguments made in MO POW 3 and MO POW 4's pleadings filed with the U.S. District Court. (*Compare id. with* ECF No. 7 and ECF No. 17.)

## COUNTERCLAIM I: BREACH OF CONTRACT – THE FIRST CONTRACT

41.     Crypto Infiniti incorporates Paragraphs 1-39 herein.

42.     Crypto Infiniti and MO POW 3 executed a valid contract with the First Contract.

43.     MO POW 3 breached the First Contract by failing to perform its obligations and provide services to Crypto Infiniti.

44.     This breach includes failing to provide five Smart Box 3000 containers manufactured by EZ Blockchain for colocation at MO POW 3's facility located at 400 North Main, Springfield, Missouri 65802, rack space allocation for Crypto Infiniti's equipment, installation services, electrical power connection, power supply of at least 15 MW, network connectivity, security, maintenance, repair, and technical support.

45.     Upon information and belief, this breach also includes MO POW 3's failure to use Crypto Infiniti's payments for MO POW 3's facility located at 400 North Main, Springfield, Missouri 65802, and instead used the money for other purposes not related to the First Contract.

46.     Crypto Infiniti paid $4,135,250 for these services.

47.     Pursuant to Section 3.4 of the First Contract, MO POW 3's non-performance of its obligations under the First Agreement constitutes a default and Crypto Infiniti is entitled to a refund of any and all fees paid to MO POW 3 for services not rendered.

48.     MO POW 3 has refused to refund Crypto Infiniti's fees paid in breach of Section 3.4 of the contract.

49.     As a direct result of MO POW 3's material breaches, Crypto Infiniti has suffered damages in an amount to be proven at trial, but to include no less than $4,135,250, plus fees, costs, and interest as allowed under Wyoming law.

**COUNTERCLAIM II: BREACH OF CONTRACT – THE SECOND CONTRACT**

50.     Crypto Infiniti incorporates Paragraphs 1-39 herein.

51.     Crypto Infiniti and MO POW 4 executed a contract with the Second Contract.

52.     MO POW 4 breached the Second Contract by failing to perform its obligations and provide services to Crypto Infiniti.

53.     This breach includes failing to provide rack space allocation for Crypto Infiniti's equipment located at 5501 East Farm Road 112, Strafford, Missouri 65757, installation services, electrical power connection, power supply of at least 20 MW, network connectivity, security, maintenance, repair, and technical support.

54.     Upon information and belief, this breach also includes MO POW 4's failure to use Crypto Infiniti's payments for MO POW 4's facility located at 5501 East Farm Road 112, Strafford, Missouri 65757, and instead used the money for other purposes not related to the Second Contract.

55.     Crypto Infiniti paid $2,000,000 to "buy down" the typical Managed Services Fee, a portion of which is for these services to be provided by MO POW 4.

56.     Pursuant to Section 3.4 of the Second Contract, MO POW 4's non-performance of its obligations constitutes a default and Crypto Infiniti is entitled to a refund of any and all fees paid to MO POW 4 for services not rendered.

57.     MO POW 4 has refused to refund Crypto Infiniti's fees paid in breach of Section 3.4 of the contract.

58.     As a direct result of MO POW 4's material breaches, Crypto Infiniti has suffered damages in an amount to be proven at trial, but to include no less than $4,135,250, plus fees, costs, and interest as allowed under Wyoming law.

## COUNTERCLAIM III - BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

59.     Crypto Infiniti incorporates Paragraphs 1-39 herein.

60.     Every contract in Wyoming includes an implied covenant of good faith and fair dealing in the performance of that contract.

61.     MO POW 3 and MO POW 4 have breached the covenant of good faith and fair dealing implied in the First and Second Contracts under Wyoming law by taking Crypto Infiniti's $4,135,250 for services they never provided, refusing to return the money to Crypto Infiniti even though no services have been provided, and then attempting to escape its obligations under the First Contract by trying to unilaterally terminate the First Contract, first by filing a lawsuit and second by sending subsequent baseless notices outside of the Court's proceedings, all while maintaining Crypto Infiniti's $4,135,250.

62.     MO POW 3 and MO POW 4 have also breached the implied covenant of good faith and fair dealing because, upon information and belief, they failed to use Crypto Infiniti's money for their obligations under the First and Second Contracts, thus injuring the rights of Crypto Infiniti to receive the benefit of those agreements.

63.     MO POW 3 and MO POW 4's conduct in failing to provide services, retaining funds provided for such services, using the funds for purposes unrelated to the First and Second Contracts, and refusing to return funds to Crypto Infiniti is contrary to the agreed common purpose and justified expectations of Crypto Infiniti, and injured the rights of Crypto Infiniti to receive the

benefit of the agreement that MO POW 3 and MO POW 4 would properly prepare for and effectuate the services contemplated therein.

64.    As a direct result of MO POW 3 and MO POW 4's conduct, Crypto Infiniti has suffered damages in an amount to be proven at trial, but to include no less than $4,135,250, plus fees, costs, and interest as allowed under Wyoming law.

## COUNTERCLAIM IV: UNJUST ENRICHMENT

65.    Crypto Infiniti incorporates Paragraphs 1-39 herein.

66.    Counterclaim IV is asserted in the alternative to Counts I and II in the event the First Contract, Second Contract, or provisions therein are deemed invalid or otherwise unenforceable.

67.    Crypto Infiniti rendered $4,135,250 to MO POW 3 and MO POW 4.

68.    MO POW 3 and MO POW 4 accepted, used, and enjoyed the money.

69.    MO POW 3 and MO POW 4 have been unjustly enriched by maintaining possession of the $4,135,250 due and owed to Crypto Infiniti.

70.    MO POW 3 and MO POW 4 did not provide any services or other benefit to Crypto Infinity in exchange for the funds rendered.

71.    Furthermore, based upon information and belief, MO POW 3 and MO POW 4 have used the subject funds for purposes other than to provide services or any other benefit to Crypto Infiniti.

72.    In the event the First or Second Contracts, or provisions therein are deemed invalid or otherwise unenforceable, Crypto Infiniti has no adequate remedy at law.

73.    As a direct result of MO POW 3 and MO POW 4's unjust enrichment, Crypto Infiniti is entitled to restitution damages in the amount of $4,135,250.

## COUNTERCLAIM V: DECLARATORY JUDGMENT

74.    Crypto Infiniti incorporates Paragraphs 1-39 herein.

75.    Pursuant to the Federal Declaratory Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

76.    After Crypto Infiniti and MOW POW 3 executed the First Contract, Crypto Infini performed its obligation by paying MO POW 3 the $2,000,000 "buy down" Host's typical Managed Services Fee and $2,135,250 for the total Down Payment of Managed Services Fees as set forth on the Payment Schedule attached to the First Contract.

77.    Except for the narrow provision in the First Contract relating to the $2,000,000 "buy down" of Host's typical Managed Services Fee being applicable to the Second Contract, the terms of the First Contract between Crypto Infiniti and MO POW 3 are wholly separate from the terms of the Second Contract between Crypto Infiniti and MO POW 4. Thus, regardless of a party's performance under the separate Second Contract, the First Contract is valid and binding between Crypto Infiniti and MO POW 3, under which MO POW 3 must perform.

78.    Accordingly, a declaration by this Court is warranted that the First Contract between Crypto Infiniti and MO POW 3 is a separate, enforceable contract from the Second Contract between Crypto Infiniti and MO POW 4.

79.    As such, an additional declaration by the Court is warranted that the First Contract is valid and binding and that performance by MO POW 3 is required regardless of Crypto Infiniti's or MO POW's 4 performance under the Second Contract.

80.     To the extent the Court declares the First and Second Contracts constitute one binding contract, a declaration by this Court is required that MO POW 3 and MO POW 4 are required to return all funds to Crypto Infiniti for nonperformance of services under the express terms of Section 3.4 in the First Contract and Second Contract.

## REQUESTED RELIEF

WHEREFORE, Crypto Infiniti prays that MO POW 3 and MO POW 4 take nothing from their Amended Complaint, that judgment be entered in favor of Crypto Infiniti as follows concerning its counterclaims:

A.  On Counts I-IV, an award of damages in an amount to be proven at trial, as a judgment against MO POW 3 and MO POW 4, jointly and severally;

B.  On Count V, a judgment declaring the First and Second Contracts are two separate and enforceable contracts and performance by a party under one contract is not excused based on performance by a party under the other contract. In the event this Court declares the First and Second Contracts constitute one binding contract, a declaration by this Court is required that MO POW 3 and MO POW 4 are required to return all funds to Crypto Infiniti for nonperformance of services under the express terms of Section 3.4 in the First and Second Contracts;

C.  Costs and pre-judgment interest of 7% per annum dating back to July 19, 2022, as allowed under Wyoming law;

D.  Post-judgment interest of 10% per annum as allowed under Wyoming law;

E.  Reasonable costs and attorneys' fees as may be available at law or by contract; and

F.  For such other relief as the Court deems just and proper under the circumstances.

**DATED** this 3rd day of March 2023.

CRYPTO INFINITI LLC

By: */s/   Tyler J. Garrett*
   Matthew D. Kaufman, WSB #6-3960
   Tyler J. Garrett, WSB #6-4400
   Melissa K. Burke, WSB #7-5694
   Hathaway & Kunz, LLP
   2515 Warren Ave. Ste 500
   P.O. Box 1208
   Cheyenne, WY 82003
   Phone:  307-634-7723
   Fax:  307-634-0985
   mkaufman@hkwyolaw.com
   tgarrett@hkwyolaw.com
   mburke@hkwyolaw.com

   ATTORNEYS FOR CRYPTO INFINITI LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 3rd day of March 2023, a true and correct copy of the foregoing was served upon counsel as follows:

Jeffrey S. Pope               [ ✓ ] CM/ECF/Electronic Filing
Kasey J. Schlueter            [  ] U.S. Mail
Holland & Hart, LLP          [  ] Fax:
2515 Warren Avenue, Suite 450    [  ] E-mail
P.O. Box 1347
Cheyenne, WY 82003-1347

*Attorneys for Plaintiffs*

*/s/ Tyler J. Garrett*
Hathaway & Kunz, LLP