

FILED
8:36 am, 3/21/23
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYPTO INFINITI, LLC,<br><br>Defendant. | Case No.  22-CV-155-KHR |

### ORDER GRANTING DEFENDANT'S MOTION TO AMEND COUNTERCLAIMS [31]

Before the Court is Defendant's Motion to Amend Counterclaims. (ECF No. 31). On January 27, 2023, this Court entered an Order granting Plaintiffs' Motion to Dismiss Defendant's Counterclaims. (ECF No. 26). Within that Order, the Court stated Defendant may seek leave to amend its counterclaims so that it can sufficiently provide Plaintiffs with notice of the claims. Defendant now seeks leave to do so and Plaintiffs oppose the Motion. The Court, being fully advised, finds that the Motion should be granted.

#### BACKGROUND

This action is related to two agreements entered between Plaintiffs and Defendant.[1] The first is MO POW 3's Master Services Agreement with Defendant (the "First

---

[1] The Court will use the same Background facts as used in its Order addressing Defendant's Motion to Dismiss. (ECF No. 18). To the extent facts differ or new facts are raised in Defendant's counterclaims, those will be accepted as true

Agreement") and the second is MO POW 4's Master Services Agreement with Defendant (the "Second Agreement"). (ECF No. 7, at 3). Both agreements show the same basic terms and requirements. *Id.* at 4, Ex. 1, Ex. 2. MO POW 3 and MO POW 4 "are part of a consortium of companies providing hosting services for companies that mine for digital currency." *Id.* at 3. The two contracts entered were to provide Defendant with 35 Megawatts (MW) hosting service for its digital currency mining equipment. *Id.* Specifically, the First Agreement provided for 15 MW of power and the Second Agreement provided for 20 MW of power. The facilities for both agreements are located in Greene County, Missouri, with one being owned my MO POW 3 and related to the First Agreement while the other was owned by MO POW 4 and related to the Second Agreement. *Id.*

Upon executing the agreements on May 26, 2022, two types of payments—a rate buy down payment and a down payment—were due from Defendant to Plaintiffs.[2] *Id.* at 4, Ex. 1, Ex. 2. The rate buy down payment of $2,000,000 represented the payment Defendant was making to Plaintiffs for their discounted managed colocation services. *Id.* at Ex. 1. Only the First Agreement provided for a rate buy down payment, however, the agreement specified that the payment was to "buy down" both Plaintiffs' typical managed services fee while referencing both the First Agreement and the Second Agreement. *Id.* The other payments due at signing were a down payment of $2,135,250 for the power usage in the

---

for purposes of Plaintiffs' Motion to Dismiss and listed later in this Order. Additionally, for purposes of clarity, the Court will continue to refer to MO POW 3 and MO POW 4 as "Plaintiffs" and Crypto Infiniti as "Defendant."

[2] The Court notes that Defendant refers to the $2,000,000 payment as the "down payment" and the $2,135,250 payment as the rate buy down payment. (ECF No. 14, at 7). However, based on the language of the contract and Plaintiffs' Amended Complaint, this is believed to be in error. The amounts are correct, but the purpose of the payments is flipped.

First Agreement and down payment of $3,066,000 for the power usage in the Second Agreement. *Id.* at Ex. 1, Ex. 2. All of these payments were due upon execution of the documents. *Id.* Additionally, each agreement provided a payment schedule for an estimated managed services fee to be made monthly in the future. *Id.*

After both agreements were signed, Defendant was late making the payments required under the First Agreement. *Id.* at 5. As of the date the Amended Complaint was filed, none of the payments required under the Second Agreement had been paid. *Id.* MO POW 4 informed Defendant it was in default of its obligations and Defendant responded demanding MO POW 3 uphold its obligations under the First Agreement even if the Second Agreement was terminated. *Id.* Plaintiffs responded with this action.

Defendant initially filed an Answer asserting three counterclaims: breach of contract, breach of the duty of good faith and fair dealing, and conversion that were dismissed by this Court. (ECF No. 26). Now seeking to amend two of those counterclaims, as well as assert a claim for unjust enrichment and declaratory judgment, Defendant asserts a more thorough factual basis for those claims.

### RELEVANT LAW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The purpose of Rule 15 "is to provide litigants 'the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties.'" *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

"[T]he grant of leave to amend pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). However, Rule 15 has a liberal standard and provides that a "court should freely give leave when justice so requires." *Id.*

Thus, "[i]f the underlying facts or circumstances may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182–83 (1962). A non-exhaustive list of reasons to deny the motion includes undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, or futility of the amendment. *Id.*; *Minter*, 451 F.3d at 1204.

### RULING OF THE COURT

Plaintiffs oppose Defendant's Motion primarily on the same basis as their original Motion to Dismiss. (ECF No. 22); (ECF No. 32). However, Defendant's additional factual allegations sufficiently put Plaintiffs on notice of the alleged breaches.

### *Breach of Contract Claims*

"To establish a prima facie case for breach of contract, a plaintiff must show: (1) a lawfully executed contract, (2) an unjustified failure to timely perform all or any part of what is promised therein, and (3) entitlement of [the] injured party to damages." *Kappes v. Rhodes*, 2022 WY 82, ¶ 17, 512 P.3d 31, 36 (Wyo. 2022) (internal citations and quotations omitted). Plaintiffs argue that Defendant's "proposed counterclaims ignore the contracts have a precondition before MO POW has any duty to provide Managed Services—Crypto must ship its equipment to MO POW for set up and testing. But Crypto neither alleges it

4

shipped equipment nor that it attempted to ship equipment." (ECF No. 32, at 4). In other words, Plaintiffs assert that a condition precedent never occurred and they had no duties under the contract.

"A condition precedent is an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises. A condition precedent must be performed before an agreement shall become a binding contract." *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School Dist. No. 25, Freemont County, Wyo.*, 681 P.2d 1326, 1331 (Wyo. 1984) (internal citations and quotations omitted). The Court is unwilling to make a ruling that there was an unsatisfied condition precedent at this early stage in the litigation. Defendant asserts the alleged breaches include failing to provide five Smart Box 3000 containers manufactured by EZ Blockchain for colocation, rack space allocation for Defendant's equipment, installation services electrical power connection, power supply as stated in the agreements, network connectivity, security, maintenance, repair, and technical support. (ECF No. 31-1, at 11–12). Additionally, Defendant asserts it tried to mail the equipment in accordance with the First Agreement. *Id.* at 7–8. These factual allegations are sufficient to survive the pleading stage and put Plaintiffs on notice of the claims.

***Breach of the Covenant of Good Faith and Fair Dealing***

"The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 653 (Wyo. 2001). Compliance requires "a party's actions to be consistent with the agreed

upon common purpose and justified expectations of the other party." *Id.* An interference or failure to cooperate leads to a breach of the implied duty. *Id.* Both the contract language and the parties' course of dealings are relevant to determine a breach. *Id.* "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties." *Id.* "The implied obligation 'must arise from the language used or it must be indispensable to effectuate the intention of the parties.'" *Id.* (quoting *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990)).

Defendant claims Plaintiffs "have breached the covenant of good faith and fair dealing implied in the First and Second Contracts under Wyoming law by taking Crypto Infiniti's $4,135,250 for services they never provided, refusing to return the money to Crypto Infiniti even though no services have been provided, and then attempting to escape its obligations under the First Contract by trying to unilaterally terminate the First Contract." (ECF No. 31-1, at 13). Assuming there is a valid contract, the failure to return the payments made by Defendant could qualify as a breach of the covenant of good faith and fair dealing. Whether it is depends on the facts of this case and the Court cannot make a factual determination at this point.

***Unjust Enrichment***

Defendant also asserts a claim for unjust enrichment in the alternative to its breach of contract claims in the event the agreements are found unenforceable. Under Wyoming law, "the elements of unjust enrichment are 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the

other party would expect payment for the services." *Symons v. Heaton*, 2014 WY 4, ¶ 15, 316 P.3d 1171, 1176 (Wyo. 2014) (quoting *Redland v. Redland*, 2012 WY 148, ¶ 137, 288 P.3d 1173, 1203 (Wyo. 2012)). The fourth element is at the heart of an unjust enrichment claim. *Id.* 2014 WY 4, ¶ 16, 316 P.3d at 1176.

Plaintiffs correctly argue that "the unjust enrichment remedy is not available when an express contract exists." *Sowerine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000). However, as stated above, "[a] condition precedent must be performed before an agreement shall become a binding contract." *Robert W. Anderson Housewrecking and Excavating, Inc.*, 681 P.2d at 1331. Should the Court find that a condition precedent not to have occurred here, a restitution claim would be proper as there would be no binding contract.

### *Declaratory Judgment*

Last, Defendant seeks relief under the Declaratory Judgment act. Specifically, that the Court declare the rights and legal relations with regard to the agreements, that the two agreements are separate and do not incorporate each other, and that the First Agreement remains binding on Plaintiff MO POW 3. Plaintiffs do not oppose this amendment. (ECF No. 32, at 6) ("For the reasons expressed herein, the Court should deny Crypto's motion for Leave to Amend Counterclaims with regards to counterclaims I through IV"). As such the Court will accept this amendment.

## CONCLUSION

Rule 15 of the Federal Rules of Civil Procedure provides a party may amend their pleadings with leave of the court. Additionally, the Tenth Circuit has adopted a liberal standard for the amendment of pleadings and a district court has broad discretion in

granting leave. *Minter*, 451 F.3d at 1204. Defendant's amendment is timely and there is no undue prejudice as the Motion comes before the initial pretrial conference, this would be the first amendment and there has been no claim of bad faith, and the Court cannot ascertain the futility at the present stage—the only contested point.

NOW, THEREFORE, IT IS ORDERED Defendant's Motion for Leave to Amend Counterclaims is GRANTED.

Dated this 21st day of March, 2023.

Kelly H. Rankin
United States Magistrate Judge