Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>CRYPTO INFINITI LLC,<br><br>    Defendant. | Civil Action No. 22-CV-155-SWS |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS**

**INTRODUCTION**

Defendant's (Crypto) original counterclaims failed in large part because Crypto had no facts that when compared to the terms of the contracts amounted to a breach. That factual problem cascaded, making it impossible for Crypto to state a claim for breach of the implied covenant of good faith and fair dealing. Crypto returns with the same claims, centered on three factual allegations: 1) Plaintiffs did not provide managed services; 2) Plaintiffs did not use Crypto's funds for the host site; and 3) Plaintiffs did not return Crypto's funds. But the same factual problem that doomed Crypto's original counterclaims dooms its amended ones.

Accepting these amended claims as true, none violate a term of the agreements. Per the terms of the agreements, Plaintiffs' duty to provide managed services begins once Plaintiffs

receive all Crypto equipment. But Crypto admits it has shipped nothing and thus Plaintiffs do not yet have any duty to provide managed services. Case and point, Crypto's amended counterclaims fault Plaintiffs for not providing installation services. But without Crypto's equipment, Plaintiffs have nothing to install. This is why the agreements do not require managed services until after equipment delivery. Plaintiffs also have no duty to use Crypto's funds for the host site for a very simple reason—the agreements do not require that. And Plaintiffs have no duty to return funds because the agreements call for a refund only if Plaintiffs breach. In the absence of a breach, Crypto also has no viable claim for a breach of the implied covenant of good faith and fair dealing because that claim relies on the same facts that do not show a breach. Finally, the existence of a valid, binding contract precludes recovery for unjust enrichment.

While the Court must accept Crypto's factual allegations as true, it need not lose sight of the critical fact—Crypto has yet to ship equipment to Plaintiffs' site. Given the agreements in this case concern Plaintiffs installing and powering that equipment, it should come as no surprise the agreements impose duties on Plaintiffs after receipt of the equipment but not before. As such, Crypto's second attempt to allege a breach where none exists should fail. Therefore, Plaintiffs request the Court dismiss counts I-IV in Crypto's amended counterclaims for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**RELEVANT FACTS**

On May 26, 2022, Plaintiffs entered into two agreements with Crypto to provide a total of thirty-five (35) megawatts (MW) of hosting service capacity to Crypto's digital currency mining equipment (Agreements). (ECF Doc. 35, ¶¶ 9-13.[1]) The first agreement executed by MO 3 set

---

[1] By reciting Crypto's amended allegations herein Plaintiffs do not concede the truth of any of Crypto's amended allegations.

out the arrangement for MO 3 to provide hosting services to Crypto's initial fifteen (15) MW of digital mining equipment (First Agreement). (*Id.* at ¶ 10.) Simultaneously, MO 4 executed the second agreement to provide additional hosting services to Crypto's twenty (20) MW of digital mining equipment (Second Agreement). (*Id.* at ¶13.) At the time of execution, the Agreements required Crypto to pay Plaintiffs a rate buy down payment and a down payment. (*Id.* at ¶¶ 15-20.) Crypto was late in making the required payments under the First Agreement and never made the required payments under the Second Agreement. (*Id.* at ¶¶ 17, 19, 27-28.)

Crypto never shipped any digital currency mining equipment to Plaintiffs. After nearly two months of not receiving the required payments under the Second Agreement, despite numerous requests, Plaintiffs were forced to file this lawsuit. Crypto filed its Answer and Counterclaims on November 11, 2022. Plaintiffs filed a Rule 12(b)(6) Motion to Dismiss Defendant's Counterclaims on December 2, 2022. On January 27, 2022 this Court granted Plaintiffs' Motion to Dismiss, dismissing all of Defendant's counterclaims. This Court granted leave for Defendant to amend its counterclaims on March 21, 2023.

## STANDARD OF REVIEW

In a diversity action, this Court applies federal procedural law and state substantive law. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citations omitted). This Motion to Dismiss is based upon Crypto's failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or recitation of the elements are not enough, and each element of the claim must be supported by factual allegations. *See Houska v. Newkota Servs. & Rentals*, No. 20-CV-68-SWS, 2020 U.S. Dist. LEXIS 257233, at **5-6 (D. Wyo. Aug. 3, 2020).

## ARGUMENT

**I.     Crypto's breach of contract amended counterclaims fail to state claims upon which relief can be granted.**

In order to properly plead a breach of contract claim, Crypto must plead "an unjustified failure to timely perform all or any part of what is promised . . . ." *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022) (internal quotations and citations omitted). Even if the Court accepted all of Crypto's factual allegations as true, Crypto does not plead "an unjustified failure to timely perform all or any part of what is promised . . . ." Crypto alleges three breaches. But even accepting the factual allegations in Crypto's counterclaims as true, Crypto cannot state a claim.

**A.     Crypto has not alleged facts to show MO POW must currently provide managed services.**

Crypto claims Plaintiffs breached Article 1.3 of the First and Second Agreements because Plaintiffs failed "to provide five Smart Box 3000 containers manufactured by EZ Blockchain for colocation at MO POW 3's facility located at 400 North Main, Springfield, Missouri 65802 [and MO POW 4's facility located at 5501 East Farm Road 112, Strafford, Missouri 65757], rack space allocation for Crypto Infiniti's equipment, installation services, electrical power connection, power supply of at least 15 [and 20] MW[s], network connectivity, security, maintenance, repair, and technical support." (ECF Doc. 35, ¶¶ 44, 53.) Article 1.3 falls under the managed services section of the First and Second Agreements. (ECF Docs. 7-1, 7-2, ¶ 1.3.)

4

But before managed services begin, the Agreements provide a commencement date that triggers the duty to provide managed services. Section 1.1(B)(3) states:

> Host [Plaintiffs] shall commence the provision of Managed Services ("Commencement Date") on the later of:
>
> (i) Thirty (30) calendar days after Host's receipt all Client [Crypto] Equipment, or
>
> (ii) a date agreed to by the Parties in writing as stated in Exhibit A; provided, however, that Host may extend the agreed-upon Commencement Date by up to ninety (90) days with prior written consent of the Client.

(ECF Docs. 7-1, 7-2, ¶ 1.1(B)(3).) As the Court noted in its Order Granting Plaintiff's Motion to Dismiss (Order), the obligation for Plaintiffs to provide managed services was never triggered because Crypto never mailed the equipment. (ECF Doc. 26, p. 9.) In context of the Agreements, the commencement date will be 30 calendar days after Plaintiffs receive all of Crypto's equipment. Because Crypto never shipped its equipment, Plaintiffs had no duty to provide managed services, including "rack space allocation for Crypto Infiniti's equipment, installation services, electrical power connection, power supply of at least 15 [and 20] MW[s], network connectivity, security, maintenance, repair, and technical support." As a result, Plaintiffs cannot breach a duty that has not yet become a duty per the terms of the Agreements.

In the Court's Order Granting Defendant Crypto Infiniti's Motion to Amend Counterclaims, the Court stated, "Plaintiffs assert that a condition precedent never occurred, and they had no duties under the contract." (ECF Doc. 33, p. 5.) This is not Plaintiffs' argument. Plaintiffs contend their duties to provide the managed services as outlined in Paragraph 1.3 of the First and Second Agreements begin only after Plaintiffs receive Crypto's equipment. (ECF Doc. 25, p. 3; EFC Doc. 32, pp. 3-4.) This is not a condition precedent that affects the validity of the Agreements like the law the Court cited in its order. Indeed, Plaintiffs' Complaint acknowledges

the Agreements are valid and binding. Instead, the Agreements outlined a sequence of events that occur and then attach duties that one side or the other must perform **after** an event happens. Here, Crypto has yet to ship equipment. That means Plaintiffs duty to provide managed services has not yet begun. Put another way, only after Crypto ships equipment can the Court measure whether Plaintiffs have performed their duties.[2] Therefore, no breach has occurred. Likewise, the Court need not analyze conditions precedent or law applicable to that issue.

> B.      **The Agreements are silent about how MO POW spends Crypto's payments.**

Crypto next alleges Plaintiffs failed "to use Crypto Infiniti's payments for MO POW 3's facility located at 400 North Main, Springfield, Missouri 65802 [and MO POW 4's facility located at 5501 East Farm Road 112, Stafford, Missouri 65757], and instead used the money for other purposes not related to the First Contract [and Second Contract]." (ECF Doc. 35, ¶¶ 45, 54.) For this amended allegation to constitute a breach, one or both Agreements must require MO POW to direct Crypto's payments into the listed facilities. But neither Agreement contains such a term. (*See* ECF Docs. 7-1, 7-2.) Crypto admits as much, never citing or quoting a provision in the Agreements that would relate to its allegation. Therefore, Plaintiffs' use of Crypto's funds relative to the site can never be a breach.

> C.      **Crypto has not alleged facts that Plaintiffs have a duty to refund payments.**

Finally, Crypto alleges Plaintiffs failed "to refund Crypto Infiniti's fees paid in breach of Section 3.4 of the contract[s]." (ECF Doc. 35, ¶¶ 48, 57.) But Section 3.4 does not require Plaintiffs to refund Crypto's fees unless Plaintiffs fail to perform under the Agreements. (ECF Docs. 7-1, 7-2, ¶ 3.4(A) ("In the event of **Host's non-performance of its obligations** under this

---

[2] Sequencing duties after events is common in the Agreements. For example, the initial payments have a triggering event that then requires the payment after that event.

Agreement, Client shall be entitled to a refund of any and all fees paid to Host . . . ." (emphasis added).) Plaintiffs had no duty to return the funds unless Plaintiffs breached the Agreements. In the Court's Order, the Court found that when the agreement does not obligate Plaintiffs to do something, then a breach has not occurred. (ECF Doc. 26, pp. 7-8.) Crypto has failed to allege facts to support a breach, meaning Crypto's amended breach of contract counterclaims fail to state claims upon which relief can be granted.

**II.    Crypto's amended breach of the implied covenant of good faith and fair dealing claim fails to state a claim upon which relief can be granted.**

A breach of the implied covenant of good faith and fair dealing occurs when one party interferes or fails to cooperate in the other party's performance under the contract. *White v. Shane Edeburn Constr., LLC,* 2012 WY 118, ¶ 20, 285 P.3d 949, 955-56 (Wyo. 2012). "Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Harper v. Fid. & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 34, 234 P.3d 1211, 1221 (Wyo. 2010). Put another way, the exercise of a contractual right cannot serve as a basis to allege a breach of the implied covenant, even at the pleadings stage. *See White,* ¶¶ 22-23, 285 P.3d at 956 (affirming a district court's dismissal of a breach of the implied covenant counterclaim because plaintiff terminated the lease pursuant to contractual rights and even when the court viewed the counterclaim in the light most favorable to the defendant, it did not give rise to a claim for breach of the implied covenant of good faith and fair dealing).

Yet Plaintiffs' exercise of its contractual rights is the primary basis of Crypto's amended counterclaim for breach of the implied covenant of good faith and fair dealing. Crypto alleges Plaintiffs exercised their contractual right to terminate the Agreements based on nonpayment. (ECF Doc. 35, ¶ 61 ("[A]ttempting to escape its obligations under the First Contract by trying to

7

unilaterally terminate the First Contract, first by filing a lawsuit and second by sending subsequent baseless notices outside of the Court's proceedings . . . .").) This is the same claim Crypto alleged in its original counterclaims. As explained in Plaintiffs' Motion to Dismiss and this Court's Order, that allegation cannot state a claim for relief. (ECF Docs. 26, 22, pp. 10-12.)

Crypto also alleges Plaintiffs "failed to use Crypto Infiniti's money for their obligations under the First and Second Contracts, thus injuring the rights of Crypto Infiniti to receive the benefit of those agreements" and "refus[ed] to return the money to Crypto Infiniti even though no services have been provided . . . ." (ECF Doc. 35, ¶¶ 61-62.) But as the Court noted "[t]he implied obligation 'must arise from the language used or it must be indispensable to effectuate the intention of the parties.'" (ECF Doc. 33, pp. 5-6 (quoting *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990).) "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties." *Id.* (citing *Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 654 (Wyo. 2001).) As explained above, Plaintiffs have no duty to use Crypto funds for a specific purpose, nor does Crypto point to a single obligation in the First and Second Agreements that Plaintiffs failed to perform. Plaintiffs also have no duty to refund Crypto's funds. Crypto's amended allegations attempt to establish new duties on Plaintiffs that are not required by the Agreements, not agreed upon by the parties, and not indispensable to effectuate the intention of the parties. Therefore, as a matter of law, Crypto has failed to plead a claim for breach of the implied covenant and the Court should dismiss this amended counterclaim.

**III.     Crypto's amended unjust enrichment claim fails to state a claim upon which relief can be granted.**

Under Wyoming law, "the unjust enrichment remedy is not available when an express contract exists." *Hunter v. Reece*, 2011 WY 97, ¶ 28, 253 P.3d 497, 504 (Wyo. 2011) (internal

quotations and citations omitted). Crypto admits express agreements exist; indeed, they are at the heart of the parties' dispute. (ECF Doc. 35, ¶¶ 9, 12.) As such, unjust enrichment is not a remedy available under Wyoming law.

In the Court's Order Granting Defendant Crypto Infiniti's Motion to Amend Counterclaims, the Court dismissed this argument by holding that "[s]hould the Court find that a condition precedent not to have occurred here, a restitution claim would be proper as there would be no binding contract." (ECF Doc. 33, p. 7.) As explained above, Plaintiffs do not assert there was a condition precedent. Plaintiffs also agree valid, express agreements exist. Thus, the Court should dismiss Crypto's unjust enrichment claim because it fails as a matter of law.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request this Court dismiss Crypto's amended counterclaims I-IV pursuant to Rule 12(b)(6).

DATED: April 4, 2023.

*/s/ Jeffrey S. Pope*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
jspope@hollandhart.com
kjschlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC and MO POW 4, LLC

21145790_v1