Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
JSPope@hollandhart.com
KJSchlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CRYPTO INFINITI LLC, <br><br> Defendant. | Civil Action No. 1:22-CV-155-SWS |

**PLAINTIFFS' OPENING BRIEF ON DAMAGES**

**INTRODUCTION**

Plaintiffs (MO POW) and Defendant (Crypto) envisioned a minimum three-year relationship with renewal periods to follow. For MO POW, the signed contract with Crypto (Second Agreement) represented a chance at a minimum revenue of over $36,000,000.00. Of course, MO POW never received anything close to that revenue because Crypto breached the Second Agreement by failing to pay the down payment. This failure destroyed the economic value of the contract, precluded performance from both sides, and deprived MO POW the benefit of its bargain. The $3,066,000.00 down payment under the Second Agreement best measures the loss of MO POW under the unique circumstance of a party repudiating a contract and destroying its economic value.

# ARGUMENT

**I.    MO POW should receive $3,066,000.00 in damages.**

"In an action for breach of contract, the plaintiff is entitled to such damages as would put him in the same position as if the contract had been performed, less proper deductions." *Stone v. Devon Energy Prod. Co., L.P.*, 181 P.3d 936, 944 (Wyo. 2008). Crypto breached the Second Agreement and as such MO POW is entitled to damages that would place it in the same position as it would, had the Agreement been performed. (ECF No. 64 at 25-26.)

The Second Agreement required Crypto to pay an initial fee for a "Down Payment" upon execution with specifics of the payment in the "Order Form." (ECF No. 51-2 at 7, § 2.1.) The Order Form described the Down Payment as "Due Upon Execution of this Agreement." (*Id.* at 20, § 2.A.) The Order Form provides the amount of $3,066,000.00 as the Down Payment. (*Id.* at 21.) In short, the Second Agreement required Crypto to pay $3,066,000.00 upon contract execution. The Rate Buy Down, just as the Down Payments, was due at contract execution. (ECF No. 51-1 at 21, § 2.A.) The Rate Buy Down had a value of $2,000,000.00 and Crypto paid it. (*Id.* at 23, § 2.1.) Only the First Agreement contains the Rate Buy Down price, but Section 1.2 of the First Agreement explains that the Rate Buy Down was consideration for both Agreements. (*Id.* at 4, § 1.2.)

In *Legacy Builders, LLC v. Andrews*, 335 P.3d 1063 (Wyo. 2014), the Wyoming Supreme Court held "[c]ontract damages are intended to give the injured party the benefit of the bargain — to place the injured party in the same position he would have been if the breach had never occurred." *Id.* at 1068 (citation omitted). If Crypto had fully performed under the Second Agreement, in addition to the $2,000,000.00 Rate Buy Down, Crypto would have also paid MO POW 4 an initial $3,066,000.00 Down Payment at contract execution. Placing MO POW in the

position it would have been in had Crypto not breached the Second Agreement, as required by Wyoming law, entitles MO POW to $3,066,000.00 in damages.

In its Order, the Court expressed concern that this may "result in profit to Mo Pow 4." (ECF No. 64 at 26.) However, under Wyoming law, the proper calculation of damages includes the profit the nonbreaching party would have received if a breach had not occurred. *Goodwin v. Upper Crust*, 624 P.2d 1192, 1197 (Wyo. 1981) (upholding the district court's measure of damages which included profit). As recognized by this Court, "as with any commercial agreement, there is an expectation of profit when providing services." (ECF No. 64 at 15.) Thus, Wyoming law requires a finding that MO POW is entitled to $3,066,000.00 in damages.

The Court's summary judgment decision suggests it may view damages from the perspective that MO POW suffered no loss because nothing happened to MO POW from Crypto's breach. (*See* ECF No. 64 at 26.) This is untrue. MO POW did not receive money Crypto owed—that is harm measured by the $3,066,000.00. Of course, had MO POW received that money, it would have spent money to ready the site and perform. On the surface that might dimmish the harm of non-payment. But it magnifies the harm because MO POW lost the benefit of its bargain with Crypto.

Crypto repudiated the contract right from the start. In doing so, Crypto caused the following to happen. After Crypto breached, MO POW had a duty to mitigate damages. *M&M Auto Outlet v. Hill Inv. Corp.*, 230 P.3d 1099, 1109 (Wyo. 2010). This meant MO POW could not ready the site because every dollar it spent **after** Crypto breached would increase the damages and violate the duty to mitigate. Crypto did not ship. MO POW could not ready the site. The commencement date could not occur. And MO POW could neither provide services nor

receive revenue from billing. Consequently, performance of the Second Agreement became impossible.

The lost benefit of the bargain is a measurable harm. MO POW lost the opportunity to collect over $33,000,000.00 in managed service fees. Using Exhibit A, Section 2.2 of the Second Agreement, MO POW would have received $33,726,000.00 in services fees. (ECF No. 51-2 at 21.) And that number is low because utility rates increased during the litigation. (ECF No. 51-4 at 2; ECF No. 51-2 at 8, § 2.4(B).) Combined with the lost down payment, Crypto's actions represent a loss to MO POW of over $36,000,000.00 in revenue. *See Scherer v. Laramie Reg'l Airport Bd.*, 236 P.3d 996, 1001 (Wyo. 2010) ("The measure of damages for breach of contract is that which . . . will compensate him for the loss which full performance would have prevented . . . .").

Of course, MO POW did not request $36,000,000.00 in damages. Instead, the $3,066,000.00 measures MO POW's lost benefit of the bargain in a conservative manner. Put in terms of a profit margin, the amount would represent an 8.33% profit margin, which is very low. In similar cases where one party repudiates entirely, a percentage of the contract value was the proper measure of damages. *Robert W. Anderson Housewrecking & Excavating v. Bd. of Trs.*, 681 P.2d 1326 (Wyo. 1984) (awarding damages representing 26% profit margin).

If, however, the Court were to take the view that MO POW should receive no money, it will have done three things. First, it will have allowed Crypto to breach without any consequence, contrary to the fundamental principle of placing a non-breaching party back where it would have been had it performed so that in can receive the benefit of the bargain. *Stone*, 181 P.3d at 944. Second, the Court will have rewritten the terms of the Second Agreement to allow Crypto a unilateral right of termination without cause or consequence. That too would violate

4

Wyoming law. *Four B Props., LLC v. Nature Conservancy*, 458 P.3d 832, 846 (Wyo. 2020). Third, it will have allowed Crypto to undermine the rate buy down premise of the First and Second Agreements. While the Court found the agreements separate for breach purposes, the agreements clearly note that the rate buy down structure and pro-rata sharing of the rate buy down payment apply to both agreements. (ECF No. 51-2 at 10, § 3.4(A); ECF No. 51-1 at 4, § 1.2.) As the Court knows, the rate buy down structure allowed Crypto to get a lower rate on electricity in exchange for purchasing a larger volume. But if Crypto faces no consequence for its breach of the Second Agreement, then it will have effectively captured the buy down structure without compensating MO POW by purchasing larger volumes of power. In this circumstance, MO POW now loses the benefit of the bargain under both agreements.

## CONCLUSION

Therefore, MO POW requests the Court enter a judgement finding it is entitled to damages in the amount of $3,066,000.00 for Crypto's breach of the Second Agreement.

DATED: April 19, 2024.

>*/s/ Kasey J. Schlueter*
>Jeffrey S. Pope (Wyo. State Bar # 7-4859)
>Kasey J. Schlueter (Wyo. State Bar # 8-6521)
>HOLLAND & HART LLP
>2020 Carey Avenue, Suite 800
>P.O. Box 1347
>Cheyenne, WY 82003-1347
>Telephone: 307.778.4200
>Facsimile:  307.778.8175
>JSPope@hollandhart.com
>KJSchlueter@hollandhart.com
>
>ATTORNEYS FOR PLAINTIFFS
>MO POW 3, LLC AND MO POW 4, LLC