Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
Kari Hartman, WSB #8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com
khartman@hkwyolaw.com

ATTORNEYS FOR DEFENDANT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:22-CV-00155-KHR |
| | ) | |
| CRYPTO INFINITI LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CRYPTO INFINITI'S RESPONSE TO PLAINTIFFS' OPENING BRIEF ON DAMAGES

COMES NOW Defendant, Crypto Infiniti LLC ("Crypto Infiniti"), by and through its counsel, HATHAWAY & KUNZ, LLP, and hereby submits this *Response to Plaintiffs' Opening Brief on Damages*.

## BACKGROUND

On April 19, 2024 the parties submitted briefing regarding damages pursuant to the Court's Order. *See* ECF Nos. 72 & 73. This Court ordered the parties to engage in mediation and stayed the remaining briefing deadlines related to damages until after the mediation, if it was unsuccessful. ECF No. 70. The parties engaged in mediation on June 12, 2024, which did not resolve the case. Therefore, Crypto Infiniti submits this Response.

In their Opening Brief, Plaintiffs argue that Mo Pow 4 is entitled to $3,066,000.00 in damages, which is the equivalent of the down payment for the Second Agreement because it would purportedly place Mo Pow 4 in the same position as if the Second Agreement had not been breached. ECF No. 73 at 1. They contend that Wyoming law allows for the consideration of profit in a damages calculation and that Mo Pow 4 suffered a loss because it did not receive the down payment and it lost the benefit of its bargain with Crypto Infiniti, which would have purportedly equated to over $33,000,000 in managed service fees. *Id.* at 3-4. So, Plaintiffs seek to lend credence to their claim for the $3,066,000 by claiming that they are really entitled to $36,000,000 in damages. *Id.* at 4. Finally, Plaintiffs evoke a policy argument in that a failure to award damages would allow Crypto Infiniti to breach an agreement without consequence, allow a unilateral right of termination without cause or consequence, and to undermine the rate buy down in the agreements. *Id.* at 4-5. Plaintiffs' arguments are unpersuasive.

Plaintiffs did not address any calculations of Crypto Infiniti's damages for Mo Pow 3's breach of the First Agreement in its Opening Brief. *See generally* ECF No. 73. Therefore, Crypto Infiniti will continue to rely on the arguments relevant to that claim which were made in its initial brief (ECF No. 72).

**ARGUMENT**

In its initial brief, Crypto Infiniti already addressed why Mo Pow 4 is not entitled to any damages; as a result, Crypto Infiniti simply provides additional context to those arguments in this response. *See* ECF No. 72 at 5-6.

A.  *The Down Payment is not the proper measure of damages.*

Under the Second Agreement, the $3,066,000 is a down payment *of managed service fees*. ECF No. 35-2 at 20-21. It is undisputed that Mo Pow 4 never provided managed services because the site was never physically developed. *See* ECF No. 53 at 4. So, Mo Pow 4 is not entitled to the down payment.

In a similar context when considering an earnest payment, the Wyoming Supreme Court noted that the function is either a "partial payment of any actual damages which can be proven as the result of the breach … part payment of the purchase price in the enforcement of the contract in a suit for specific performance; and … liquidated damages for breach of the contract by the buyer." *Skyco Res., LLP v. Fam. Tree Corp.*, 2022 WY 72, ¶ 32, 512 P.3d 11, 23 (Wyo. 2022). There is no specific performance claim at issue here. Further, Plaintiffs cannot show any actual damages because Mo Pow 4 did not undertake any managed services pursuant to the Second Agreement. *See* ECF No. 53 at 4. Therefore, the down payment can only serve as a liquidated damage, but the Agreement does not specify that it serves as such, as the Court aptly noted in its prior order. ECF No. 64 at 25-26.

The case cited by Plaintiffs to support their damages calculations which would award a profit to Mo Pow 4 is distinguishable. ECF No. 73 at 3. In *Goodwin v. Upper Crust*, 624 P.2d 1192, 1197 (Wyo. 1981), the Court was discussing damages resulting from failure to make rental payments and noted that some of the damages amount included profit to the injured party. While

the damages calculation did account for profit, this did not involve a scenario where the party received money for doing nothing. In that case the plaintiffs had entered into a sublease agreement with the defendants for a term of one year and the defendants occupied the premises for over two months and then rescinded the lease offer. *Id.* at 1194. The damages were intended to compensate for the rental payments for that period, and such rental payments may have included profit. *Id.* at 1197. The distinction here is that Mo Pow 4 would be provided $3,066,000 for doing nothing, as opposed to a profit from a rental payment where the rental property was actually provided and used. Again, it is undisputed that Mo Pow 4 never provided managed services and never housed Crypto Infiniti's equipment. *See* ECF No. 53 at 4.

    B. *Mo Pow 4 was not prepared to provide services.*

This Court found that the July 5, 2022, letter was an anticipatory repudiation in that it manifested the intention that one party cannot or will not perform at least some of its obligations under the contract. ECF No. 64 at 25. Plaintiffs also characterize it as a repudiation. ECF No. 73 at 3 ("Crypto repudiated the contract right from the start."). Under Wyoming law, an

> anticipatory breach, by itself, does not entitle the injured party to damages. To recover damages, in addition to proving repudiation, the nonbreaching party need only show that it would have been ready and willing to have performed the contract, if the repudiation had not occurred. Thus, a party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform its return promise.

*Skyco Res., LLP v. Fam. Tree Corp.*, 2022 WY 72, ¶ 34, 512 P.3d 11, 24 (Wyo. 2022).

Plaintiffs have failed to provide evidence that Mo Pow 4 was prepared to provide services such that Crypto Infiniti should owe any damages. In fact, the evidence is to the contrary. Crypto Infiniti was concerned that Mo Pow 4 would not provide any services and fail to perform under the Second Agreement because of their lack of development of the sites to house the equipment. *See* ECF No. 53 at 4. Mo Pow 4 is not entitled to any damages for a breach by anticipatory

repudiation where there is no evidence that it was prepared to provide the managed services to Crypto Infiniti if it had made the down payment.

C. *Mo Pow 4 suffered no loss.*

While Plaintiffs claim that Mo Pow 4 suffered a loss because it did not receive money that it was owed, as Plaintiffs acknowledge, that money would have been spent to ready the site and provide the requisite managed services. ECF No. 73 at 3. Indeed, it is ironic that Plaintiffs have repeatedly argued they were not required to use the money obtained pursuant to the Agreements for any specific purpose yet are now claiming that if they received the down payment, it would have gone to preparations of the site for Crypto Infiniti to provide the managed services. *See id.*; ECF No. 51 at 15. Nonetheless, as discussed above, since it is undisputed that the sites were never physically developed, and Plaintiffs now acknowledge that the money would have gone to site development, there is no loss. *See* ECF No. 73 at 3*;* ECF No. 53 at 4.

Plaintiffs also claim they lost the benefit of the bargain, which would equate to over $33,000,000 in managed service fees, but this is complete conjecture. ECF No. 73 at 4. Mo Pow 4 has the burden of producing evidence of its damages with a reasonable degree of certainty and there cannot be speculation or conjecture in determining that amount. *Summit Constr. v. Koontz*, 2024 WY 68, ¶ 26 (Wyo. June 19, 2024). Plaintiffs' calculation of the lost benefit of the bargain assumes that it would have provided managed services under the Second Agreement. Plaintiffs did not provide any evidence of their capability to provide managed services in order to receive those managed service fees. Additionally, as they note, there were changes in utility rates and the Second Agreement payment schedule was specifically noted as an estimation. ECF No. 73 at 4; ECF No. 35-2 at 21. While Plaintiffs attempt to use the estimation of managed services fees to make their actual damages request appear conservative, Mo Pow 4 was not entitled to the managed service

fees as lost revenue or the down payment because it failed to provide any services or even prepare to provide services under the Second Agreement.

D. *If the Court does not award Mo Pow 4 any damages, it will not violate any notions of equity.*

While Plaintiffs appear to argue it would be unfair to not award Mo Pow 4 any damages for Crypto Infiniti's breach, Plaintiffs failed to prove their damages and failed to draft provisions in the contract to dictate said damages. The nonbreaching party should be placed where it would have been absent the breach, as Plaintiffs argue, but it is their burden to prove damages – which they failed to do. *See Summit Constr.* 2024 WY at ¶ 26. It is not inequitable to decline to award damages for a breach where the damages were not proven. Such a determination would be in accordance with Wyoming law.

Second, the terms of the Second Agreement regarding the ability to terminate are not rewritten as Plaintiffs contend. ECF No. 73 at 4. Had Plaintiffs desired to include a provision regarding damages for anticipatory repudiation, it could have included such provision, but it did not do so. *See Pope v. Rosenberg*, 2015 WY 142, ¶ 20, 361 P.3d 824, 830 (Wyo. 2015) (noting that courts will not rewrite a contract under the guise of interpretation).

Finally, the rate buy down premise is not undermined with such a result because no managed services were provided under either agreement, as the sites were never developed. *See* ECF No. 53 at 4. Crypto Infiniti did not "capture[] the buy down structure" as Plaintiffs contend; it never received the benefit of the buy down structure because managed services were never provided under either agreement and as this Court found, Mo Pow 3 breached the First Agreement. ECF No. 64 at 26. Plaintiffs cannot breach a contract and then assert that it should be compensated for the lost benefit of the bargain that it destroyed through its own breach.

## CONCLUSION

For the reasons stated above, Mo Pow 4 is not entitled to any damages for the breach of the Second Agreement.

DATED this 26th day of June 2024.

HATHAWAY & KUNZ, LLP,

By: /s/ Tyler Garrett_____
　　Matthew D. Kaufman, WSB #6-3960
　　Tyler J. Garrett, WSB #6-4400
　　Melissa K. Burke, WSB #7-5694
　　Kari Hartman, WSB #8-6507
　　Hathaway & Kunz, LLP
　　2515 Warren Ave. Ste 500
　　P.O. Box 1208
　　Cheyenne, WY 82003
　　Phone:  307-634-7723
　　Fax:  307-634-0985

　　ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that on the 26th day of June 2024, a true and correct copy of the foregoing was served upon counsel as follows:

Jeffrey S. Pope　　　　　　　　　[ ✓ ] CM/ECF/Electronic Filing
Kasey J. Schlueter　　　　　　　　[  ] U.S. Mail
Holland & Hart, LLP　　　　　　　[  ] Fax:
2020 Carey Ave Suite 800　　　　　[  ] E-mail
P.O. Box 1347
Cheyenne, WY 82003-1347

/s/ Hayley Wheeler_____
Hathaway & Kunz, LLP