Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
JSPope@hollandhart.com
KJSchlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>    Plaintiffs,<br><br>        v.<br><br>CRYPTO INFINITI LLC,<br><br>    Defendant. | Civil Action No. 1:22-CV-155-KHR |

**PLAINTIFFS' REPLY BRIEF[1] ON DAMAGES**

### Introduction

Crypto Infiniti LLC's (Crypto) entire Response to Plaintiffs' Opening Brief on Damages (Response Brief) boils down to Mo Pow 4, LLC (MO POW) is not entitled to damages because the site was not prepared, and it did not provide services. This argument is flawed for multiple reasons. First, Crypto misconstrues MO POW's argument as to why it is entitled to damages. Second, it ignores the facts of the case and the plain language of the Second Agreement. Third,

---

[1] Crypto alleges in its Reply Brief that MO POW's Response Brief was untimely. (ECF No. 77 at 1-2.) The Court's Order states "[s]hould the mediation be unsuccessful, responses will be due fourteen (14) days **thereafter**[.]" (ECF No. 70 at 1.) Mediation was held on June 12, 2024 – fourteen days thereafter is June 27, 2024. The day of mediation would not be counted in the "fourteen (14) days thereafter." Thus, MO POW's Response Brief, filed on June 27, 2024, was timely.

MO POW has proved its damages with a reasonable degree of certainty. Finally, Crypto misrepresents the statements made by MO POW in its brief.

## Argument

**I.      Crypto misconstrues MO POW's argument on damages.**

MO POW is entitled to the benefit of its bargain. *Legacy Builders, LLC v. Andrews*, 335 P.3d 1063, 1068 (Wyo. 2014). Crypto argues MO POW is not entitled to damages "because it failed to provide any services or even prepare to provide services under the Second Agreement." (ECF 75 at 3, 5-6.) MO POW did not provide services because Crypto repudiated the agreement, preventing MO POW's performance. Further, the lack of site readiness or services is a non-issue in awarding damages. *See Robert W. Anderson Housewrecking & Excavating v. Board of Trustees*, 681 P.2d 1326 (Wyo. 1984).

In *Robert W. Anderson Housewrecking & Excavating*, the Board of Trustees were accepting bids for the demolition of the old Riverton High School. *Id.* at 1328. The low bidder was Gillingham Construction Company, Inc. (Gillingham) and the next low bidder was Robert W. Anderson Housewrecking and Excavating Inc. (Anderson). *Id.* Gillingham withdrew its bid because it was unable to obtain liability insurance in the State of Wyoming. *Id.* at 1328-29. The Board then informed Anderson that it would accept his bid for demolition of the school. *Id.* at 1329. Gillingham then told the Board it was able to obtain the necessary insurance and would resubmit his original bid. *Id.* The Board accepted this bid and signed a contract with Gillingham. The Board then informed Anderson that the Board had signed the contract with Gillingham. *Id.* Thereafter Anderson filed suit against the Board for breach of contract. *Id.*

Although Anderson did not and would not perform services for the Board, the Wyoming Supreme Court affirmed the district court's finding of a breach of contract and remanded with

instructions for the district court to increase the award of damages to the lowest possible amount based upon the average net profit testified to at trial. *Id.* at 1332-33. In its analysis of this issue, the Supreme Court stated:

> Damages for breach of contract are calculated to put the plaintiff in the same position as if the contract had been performed, less proper deductions. The damages should compensate for the loss which would have been prevented by a full performance of the contract. *Reynolds v. Tice*, Wyo., 595 P.2d 1318 (1979); *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436 (1976).

*Id.* at 1333.

Just like in *Robert W. Anderson Housewrecking & Excavating*, MO POW and Crypto signed a contract where Crypto prevented MO POW from performing by refusing to pay the required down payment. MO POW is entitled to damages in an amount which would compensate it for the loss it has suffered due to Crypto's breach preventing full performance of the Second Agreement. As explained in MO POW's opening brief, that amount is $3,066,000.00. (ECF No. 73.)

**II.     Crypto ignores the facts of the case and the plain language of the Second Agreement.**

Crypto argues MO POW "failed to provide evidence that Mo Pow 4 was prepared to provide services such that Crypto Infiniti should owe any damages" and that "the evidence is to the contrary" citing to its Memorandum in Support of its Motion for Summary Judgment for support that Crypto was concerned due to the "lack of development of the sites to house the equipment." (ECF No. 75 at 4.) Crypto's argument is contrary to the evidence.

Pursuant to Wyoming law, MO POW "need only show that it would have been ready and willing to have performed the contract[.]" *Skyco Res., LLP v. Fam. Tree Corp.*, 512 P.3d 11, 24 (Wyo. 2022). MO POW stood ready to perform. Mr. Guel's testimony is that if Crypto had provided MO POW with a shipping notice of its equipment, "MO POW could have completed

3

the site between the time of shipping and the commencement date in the Agreements." (ECF 59-2, ¶ 3.) MO POW's team had experience in assembling these kinds of sites and could efficiently assemble the prefabricated materials upon notice of Crypto shipping its equipment. (*Id.*)

To be sure, Crypto doubts those statements. But even if Crypto was right to have site-specific doubts, the Second Agreement allowed MO POW to host Crypto's equipment at a temporary site at MO POW's expense. (ECF No. 51-2 at 3 ("In the event Client Equipment is delivered to Host Facility, and Client has provided proper Shipping Notice as defined in Section 1.1(A)(2), the Host may find other comparable facilities to host Client Equipment before the Facility is ready to accept the Equipment [] and all such costs related to the Host-Paid Temporary Relocation shall be the responsibility of Host.")). Therefore, the readiness of one site is immaterial to MO POW's overall ability and right to perform.

**III.     MO POW has proved its damages with a reasonable degree of certainty.**

As explained in MO POW's Opening Brief on Damages, Wyoming law requires a finding that MO POW is entitled to $3,066,000. (ECF No. 73.) Crypto's breach caused MO POW to suffer a loss to the benefit of its bargain under the Second Agreement – i.e., collecting nearly $33,726,000 in managed service fees. (ECF No. 51-2 at 21; see explanation in ECF No. 73 at 4-5.) Crypto argues this is "complete conjecture." (ECF No. 75 at 5.) Not at all. The payment schedule in the Second Agreement outlines the managed services fee schedule, which provides an estimated total managed services fees for the life of the Second Agreement of $33,726,000. (ECF No. 51-2 at 21.) This is the benefit of MO POW's bargain. Crypto's refusal to perform in paying the down payment diminished the benefit of MO POW's bargain. There are no terms or conditions in the Second Agreement that would have foreseeably changed the estimated total of managed services fees in the payment schedule or stopped either party from performing under

4

the Second Agreement. (ECF No. 51-2.) Additionally, the Second Agreement provides the down payment amount as $3,066,000. (*Id.*) Thus, MO POW is entitled to $3,066,000 and has proved its damages with a reasonable degree of certainty.

## IV.  MO POW suffered a loss.

In its Response Brief, Crypto states:

> Indeed, it is ironic that Plaintiffs have repeatedly argued they were not required to use the money obtained pursuant to the Agreements for any specific purpose yet are now claiming that if they received the down payment, it would have gone to preparations of the site for Crypto Infiniti to provide the managed services. *See id.*; ECF No. 51 at 15. Nonetheless, as discussed above, since it is undisputed that the sites were never physically developed, and Plaintiffs now acknowledge that the money would have gone to site development, there is no loss. *See* ECF No. 73 at 3; ECF No. 53 at 4.

(ECF 75 at 5.)

This is wrong. MO POW does not claim that if it received the down payment, the down payment "would have gone to preparations of the site" as Crypto represents. MO POW simply said it would not spend money readying the site until it received Crypto's down payment. (ECF No. 73 at 3 ("Of course, had MO POW received that money, it would have spent money to ready the site and perform.")). Still, that has nothing to do with whether MO POW suffered a loss. As explained above, the loss is the loss of everything the Second Agreement represented. On this, Crypto has no argument.

## Conclusion

Therefore, MO POW requests the Court enter a judgment finding it is entitled to damages in the amount of $3,066,000.00 for Crypto's breach of the Second Agreement.

DATED: July 3, 2024.

*/s/ Kasey J. Schlueter*
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
JSPope@hollandhart.com
KJSchlueter@hollandhart.com
ATTORNEYS FOR PLAINTIFFS
MO POW 3, LLC AND MO POW 4, LLC

32295717_v1