FILED

10:57 am, 8/6/24

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> CRYPTO INFINITI LLC, <br><br> Defendant. | Case No. 22-CV-00155-KHR |

## ORDER FOR EXPERTS AND FURTHER BRIEFING

Before the Court are the parties' briefs regarding damages. On February 20, 2024, the Court entered its Order on the parties' cross motions for summary judgment, finding both Mo Pow 4 and Crypto Infiniti were entitled to damages. [ECF No. 64]. Defendant Crypto Infiniti claims it is entitled to $7,056,975.30 in damages for Mo Pow 3's breach of the First Agreement. [ECF No. 72]. Plaintiff Mo Pow 4 claims it is entitled to $3,066,000.00 in damages for Defendant Crypto Infiniti, LLC's breach of the Second Agreement. [ECF No. 73]. After reviewing the relevant filings, this Court has determined the need for additional expert opinion(s) to determine the precise extent of each party's damages and further briefing on the issues.

## BACKGROUND

The parties entered into two agreements, both containing nearly identical terms. One was for Mo Pow 3 to provide hosting or managed services for digital currency mining to Crypto Infiniti and another for Mo Pow 4 to provide Crypto Infiniti the same services at a different site. The managed services were to include: "rack space allocation for [Crypto Infiniti's] equipment, installation services, electrical power connection, power supply…network connectivity, security, maintenance, repair, and technical support as outlined in the agreement." [ECF No. 51-1, at 4]; [ECF No. 51-2, at 3].

These agreements were executed but no fulfillment of the contract occurred. Crypto Infiniti developed doubts about whether Plaintiffs would provide the agreed upon services. Crypto Infiniti subsequently failed to make the down payment required by the Second Agreement. Through Thomas Guel, a representative of Mo Pow 3 and Mo Pow 4, Mo Pow 4 accepted what it perceived to be a termination of the Second Agreement. However, Mr. Guel announced Mo Pow 3's intent to honor the First Agreement. Crypto Infiniti, through its representative Jinwei Zhang, stated that it would make the buy-down payment for the Second Agreement, but asked for the funds to be placed in escrow. Mo Pow 4 denied that request, and Mr. Guel told Ms. Zhang not to send any money until they were "on the same page." Plaintiffs then filed this suit.

Both Plaintiffs and Defendant filed cross-motions for summary judgment, each alleging that other had breached the agreements. This Court held that Mo Pow 3 breached the First Agreement, and that Crypto Infiniti breached the Second Agreement. The Court

then set a status conference where it set a briefing schedule on the parties' respective damages.

## DISCUSSION

Crypto Infiniti claims it is owed $7,056,975.30 in damages while Mo Pow 4 claims it is owed $3,066,000.00 in damages. The Court notes that Section 5.3 of the Agreements limits Mo Pow 3's liability significantly, whereas there are no such limitations on Crypto Infiniti's liability. [ECF No. 7-1, at 15]; [ECF No. 7-2, at 14].

### *Crypto Infiniti's Damages*

Crypto Infiniti incorrectly construes Section 5.3 as a liquidated damages clause when it does not have that effect. Rather, Section 5.3 only limits Mo Pow 3's liability. Section 3.4(A) is the primary source of Crypto Infiniti's remedies.

> In the event of Host's nonperformance of its obligations under this Agreement, Client shall be entitled to a refund of any and all fees paid to Host for— (i) the three (3) service month's **preceding** the then-current service month, (ii) any Down Payment of Managed Services not rendered during the Initial or Renewal Term, and (iii) the remaining, pro rata portion of the Rate Buy Down Payment not applied to the Client's Payment Schedule as enumerated in Exhibit A as of the date of termination, as applicable.

[ECF No. 7-1, at 10] (emphasis added). Preceding is the key word. Because no services had begun, there are not any preceding months of damages which limits the remedies to (ii) and (iii). Thus, Section 3.4(A) entitles Crypto Infiniti to a repayment of its Down payment, and a *pro rata* share of the rate down payment. The recitals articulate the rate buy down payment was for the First and Second Agreement. Crypto Infiniti is only entitled to a return to the portion relating to the First Agreement (15/35ths of $2,000,000). Additionally, Section 3.4(A) does "not constitute any limitation on [Crypto Infiniti]

3

seeking additional remedies available in law or equity." *Id.* However, Section 5.3 does place expansive limitations on Mo Pow 3's liability and the remedies Crypto Infiniti may seek. Given this is a commercial contract, that was mutually drafted, the Court intends to enforce its provisions. *Id.* at 18.

In its Response, Mo Pow 3 argues Crypto Infiniti is not entitled to any damages. It asserts this Court granted summary judgment to Crypto Infiniti on a ground not raised by either party. Fed. R. Civ. P. 56(f)(2) does require notice to the parties, and a reasonable time to respond, to grant summary judgment on grounds not raised by either party. However, Plaintiffs did have notice for the reason Crypto Infiniti was granted summary judgment on the First Agreement, and it was not raised *sua sponte*. After considering both parties' theories for breach of the First Agreement, the Court found none of those theories succeeded. Yet it remained undisputed that Mo Pow 3 terminated the First agreement on October 28, 2022. [ECF No. 51, at 12]. Crypto Infiniti raised Mo Pow 3's termination in its Motion for Summary Judgment. [ECF No. 53, at 11–12]. The unilateral termination was thoroughly outlined in Crypto Infiniti's responsive brief. [ECF No. 58, at 11–12, 16–17]. The brief ends with the paragraph:

> Because the Commencement Date was never triggered, Crypto Infiniti did not breach the First Agreement. Consequently, MO POW 3 had no legal basis to unilaterally terminate the First Agreement. MO POW 3's attempt to now use the first month's invoice amount of $880,380.00 as a basis for damages is insincere and should be summarily rejected.

*Id.* at 16–17. Finding the termination a breach was simply a result of the fact that no prior breach occurred based on the parties' arguments. Finally, Crypto Infiniti's Counterclaims contain the allegation that Mo Pow 3 unilaterally terminated the First Agreement. [ECF

No. 9, at 9, 12]. The Court did not pull that theory out of a hat, it was based upon the parties' briefing and arguments before the Court. Thus, the argument that the termination constituted a breach was made to the Court in the filings.

Even if it is not considered an argument, there was more than sufficient notice. A court can "forgo formal notice" if a party was "'on notice that [it] had to come forward with all of [its] evidence.'" *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474, 481 (10th Cir. 2023) (quoting *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010)). The notice requirement is premised on a party's need to present evidence, "not recognition of the issue's importance." *Id*.

Mo Pow 3's argument that it could have cured is also unavailing because it had no right to cure. As the Court explained, the termination was a breach because Mo Pow 3 never had the right to terminate in the first place. [ECF No. 64, at 20–21]. The First Agreement's termination provisions did not permit the termination in those circumstances. The Court found this as a breach because based on the briefing, no prior breach had occurred. That made Mo Pow 3's termination a breach. Accordingly, Crypto Infiniti is entitled to damages.

**Mo Pow *4's Damages***

Mo Pow 4 asserts it is entitled to expectation damages. Under Wyoming law, a party that is successful on a breach of contract claim "is entitled to such damages as would put him in the same position as if the contract had been performed, less proper deductions." *Stone v. Devon Energy Prod. Co., L.P.*, 2008 WY 49, ¶ 24, 181 P.3d 936, 944 (Wyo. 2008).

To obtain those, Mo Pow 4 argues $3,066,000 (the down payment) is the best measure for their expectation damages.

Mo Pow 4 misconstrues the Court's statement in its Order on Summary Judgment. It keys on "would result in profit to Mo Pow 4." The full sentence reads "[i]t is unclear to the Court if all or part of the payment would result in profit to Mo Pow 4." [ECF No. 64, at 26]. That sentence does not prohibit recovery of lost profits, but seeks to determine what the profit is. Mo Pow 4 cannot choose a number, without a basis, and argue that is their damages unless there is a liquidated damages clause providing for it. Crypto Infiniti similarly disputes the down payment as Mo Pow 4's measure of damages. [ECF No. 75, at 3].

Courts are not in the business of guessing damages. Rather, courts are tasked to put a nonbreaching party in the position they would be in had there been no breach. *Stone*, 2008 WY 49, ¶ 24, 181 P.3d at 944. Mo Pow 4 seeks its expectation damages, and the Court does not see any bar to that. Expectations damages provide that "the injured party has a right to damages based on his expectation interest as measured by

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform."

*JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1195 (Wyo. 1992) (quoting Restatement (Second) Contracts § 347 (1981))

Mo Pow 4's claims do not face any limitation of liability clause like Crypto Infiniti faces. However, there must be a legitimate basis for what those damages are, not a symbolic

number. The Second Agreement had an initial term of three years. [ECF No. 7-2, at 8]. Mo Pow 4's damages then would presumably be their profits over the three-year term of the contract, minus any deductions. Over the 36 monthly payments the contract was projected to have $33,726,000 in revenue.[1] *Id.* at 21. However, that only represents revenue. There is insufficient information before the Court to determine what of that amount would amount to profit. Examples of deductions would include: the cost Mo Pow 4 would spend on electricity each month, what it spent to prepare the sites, how much it would cost Mo Pow 4 to provide their managed services, etc. Likely, there are countless different costs to get to what Mo Pow 4's Profit would be. Such calculations are best done by an expert qualified to do so. Accordingly, the Court offers Mo Pow 4 an opportunity to retain an expert that will determine Mo Pow 4's damages by a reliable method.[2] Crypto Infiniti may similarly retain a rebuttal expert to dispute any findings.

However, it does not appear necessary for Crypto Infiniti to retain an expert to calculate its damages under the First Agreement. Section 3.4 lists some remedies it may pursue, and Section 5.3 severely limits the remaining options. The relevant price for crypto currency is available for the first two years of the contract and their costs are readily computable from the managed services fee schedule. Nevertheless, Crypto Infiniti may retain an expert to calculate its damages if it chooses.

---

[1] The Second Agreement does not mention a rate buy down payment so it should not be included in the damages calculation.
[2] The Court will not dictate how an expert should calculate damages at this time. Costs associated with Mo Pow 4's duties are likely numerous and a percentage approach may provide a more reliable answer.

Crypto Infiniti also argues that Mo Pow 4 is not entitled to any damages. Wyoming has "accepted the general rule that an anticipatory repudiation gives the injured party an immediate claim to damages for total breach, in addition to discharging that party's remaining duties of performance." *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 254 (Wyo. 2000) (quoting II E. Allan Farnsworth, Farnsworth on Contracts § 8.20, at 470 (1990)). Crypto Infiniti is correct that under the futility doctrine the non-repudiating party must show it "had the willingness and ability to perform before the repudiation and would have performed" had there been no repudiation to recover damages. *Skyco Res., LLP v. Fam. Tree Corp.*, 2022 WY 72, ¶ 25, 512 P.3d 11, 21 (Wyo. 2022). But this was not a repudiation, it was a breach.[3] "[T]he general rule [is] that 'the first party committing a substantial breach of contract cannot complain that the other party thereafter fails to perform, and where one party to a contract repudiates it or refuses to perform, the injured party is not obligated to perform its promises.'" *Gas Sensing Tech. Corp. v. New Horizon Ventures Pty Ltd as Tr. of Linklater Fam. Tr.*, 2020 WY 114, ¶ 49, 471 P.3d 294, 305 (Wyo. 2020) (quoting *Black Diamond Energy, Inc. v. Encana Oil & Gas (USA) Inc.*, 2014 WY 64, ¶ 26, 326 P.3d 904, 911 (Wyo. 2014)). There wasn't a threat that Crypto Infiniti might not perform some material obligation, but an affirmative termination of the contract. *See Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686 (Wyo. 1996) (discussing termination as a breach in the context of tortious interference); *Bowers Oil & Gas, Inc. v.*

---

[3] The Court acknowledges it quoted a passage from a case explaining repudiation in the Order. [ECF No. 64, at 25]. However, the explanation following the quote shows the finding was that the termination constituted a breach. *Id.* ("In each scenario Crypto Infiniti is in breach because it is either unjustifiably terminating the Second Agreement in the first, or accepting and admitting its breach in the second."

*DCP Douglas*, LLC, 2012 WY 103, ¶¶ 19–35, 281 P.3d 734, 741–45 (Wyo. 2012) (analyzing a termination as a breach, not anticipatory repudiation).

However, even if this was anticipatory repudiation, a party just must "'show an ability to perform as a prerequisite to obtaining a remedy.'" *Skyco Res., LLP*, 2022 WY 72, ¶ 25, 512 P.3d at 21 (quoting 17A Am. Jur. 2d Contracts § 705, at 683–84 (2016)). The repudiating party must show a total failure of performance. *Id.* "A failure is total in this context if it would have been sufficient to have discharged any remaining duties of the party in breach to render his performance." *Id.* at ¶ 24, 512 P.3d at 20 (quoting Restatement (Second) of Contracts § 254 & cmt. A). Moreover, a party "who has made an assertion of anticipatory breach and immediate damages is not required to make an offer to perform or to show his ability to do so, [but] only when the ultimate 'failure to perform conditions [is] induced by the repudiation.'" *Id.* at ¶ 27, 512 P.3d at 21 (quoting *Quivirian Dev. Co. v. Poteet*, 268 F.2d 433, 439–40 (8th Cir. 1959)) (second alteration in original).

"On summary judgment, [Crypto Infiniti] bore the burden of introducing evidence that giving notice and an opportunity to cure the alleged encumbrances on the title would have been useless." *Id.* at ¶ 30, 512 P.3d at 22. The facts contained in the summary judgment motions do not show the Court Mo Pow 4 could not perform. Crypto Infiniti presented no evidence that Mo Pow 4 could not perform other than its conclusory "concerns." What the facts show is that Plaintiffs spent roughly two million dollars to purchase five mobile data centers, corresponding transformers, concrete pads, other electrical components, and poles. [ECF No. 53-1, at 12]. Bills of lading for the transformers

and a screenshot of payment for the containers were provided to Crypto Infiniti on June 17, 2022. [ECF No. 51-3, at 3].

Crypto Infiniti clings to the fact the sites had not been constructed. Yet, as the Court explained in its Order on Summary Judgment, that would not "have been sufficient to have discharged any remaining duties of the party in breach to render his performance." *Skyco Res., LLP.*, 2022 WY 72, ¶ 24, 512 P.3d at 20 (quoting Restatement (Second) of Contracts § 254 & cmt. A). Further, Crypto Infiniti never made a payment under the Second Agreement, which, while not required, would presumably be used to fund the construction. Crypto Infiniti's fault is that it asked for more than it bargained for and conditioned its payments in ways not contractually allowed. No evidence in the summary judgment filings supports a finding Mo Pow 4 could not have performed if it had received the equipment. Mo Pow 4's non-performance was "induced by [Crypto Infiniti's] repudiation"[4] of non-payment and termination.

## CONCLUSION

The Court is still without the necessary information to determine the parties' respective damages. As explained, Crypto Infiniti's damages do not include three months of payments and are further limited by Section 5.3. Mo Pow 3 had sufficient notice of all the factual bases for the Court's ruling. There is no similar restriction on Mo Pow 4's damages, like those contained in Section 5.3, and it is entitled to its expectation damages. The Court does not have the numerous facts needed to determine Mo Pow 4's damages.

---

[4] Assuming there was a repudiation.

Moreover, its damages calculation likely necessitates an expert. Crypto Infiniti's argument Mo Pow 4 is not entitled to damages under the futility doctrine is unavailing. Mo Pow 4 may obtain an expert to calculate those damages. Crypto Infiniti may also retain a rebuttal expert, and an expert to calculate its own damages if it chooses. In fairness, Mo Pow 3 may also utilize a rebuttal expert if Crypto Infiniti retains an expert witness for its own damages. There is a status conference set for August 6, 2024, at 10:00 A.M. for the Court and parties to discuss the related deadlines.

    IT IS SO ORDERED

    Dated this 6th day of August, 2024.

    Kelly H. Rankin
    United States District Judge