Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Kasey J. Schlueter (Wyo. State Bar # 8-6521)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
Facsimile:  307.778.8175
JSPope@hollandhart.com
KJSchlueter@hollandhart.com

ATTORNEYS FOR PLAINTIFFS/COUNTER DEFENDANTS
MO POW 3, LLC AND MO POW 4, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC,<br><br>    Plaintiffs/Counter Defendants,<br><br>    v.<br><br>CRYPTO INFINITI LLC,<br><br>    Defendant/Counter Claimant. | Civil Action No. 1:22-CV-155-KHR |

## PLAINTIFFS/COUNTER DEFENDANTS' RESPONSE TO CRYPTO INFINITI'S MOTION TO STRIKE EXPERT DAVID HALL

### INTRODUCTION

Defendant's (Crypto) motion relies on a contradiction. Crypto argues Mr. Hall's method is unreliable because he assumed Plaintiff MO POW 4 (MO POW) would have exercised its right to move the hosting site to a more profitable location. Crypto also argues Mr. Hall's method is unreliable because he did not assume Crypto would have done things like shut down equipment when doing so would have reduced costs. Both arguments involve whether Mr. Hall should assume the use of sound business judgment. But Crypto argues only it should get the benefit of sound business judgment from Mr. Hall. That does not make sense. Moreover, Mr. Hall accounted for both parties using sound business judgment—allowing him to use a reliable

method to reach a sound conclusion. Beyond the blatant contradiction, Crypto's motion also fails to attack the method Mr. Hall used; instead, focusing on assumptions and variables that go to the weight of Mr. Hall's testimony—not its admissibility. In the end, Crypto's arguments should be left to cross-examination. Therefore, MO POW requests the Court deny Crypto's motion.

## RELEVANT FACTS

Pursuant to the Court's order requiring MO POW to produce an expert report to quantify damages, MO POW retained David Hall to conduct a lost profits analysis. (ECF 91.) Mr. Hall is the Managing Director for Alvarez & Marshall's Disputes and Investigations section. (ECF 91-1 at 22.) He has an M.B.A from the University of Texas and is a certified management accountant, certified fraud examiner, and certified valuation analyst. (*Id.*) Mr. Hall has over 30 years' experience in financial, economic, accounting and valuation issues. (*Id.*) He has also provided expert testimony in over 90 matters. (*Id.*)

In his report, Mr. Hall used the incremental profit method, which calculates profits as lost revenues less avoided costs. (ECF 91-1 at 6-7.) In applying that method, Mr. Hall assumed that MO POW would move the host facility from Strafford, MO to a different location in Odessa, TX. (*Id.* at 7.) Mr. Hall assumed this move because: 1) MO POW had secured the Texas location before executing the agreements with Crypto; 2) MO POW representatives informed him they had planned to move Crypto to Texas had Crypto performed; and 3) the Texas site had enough capacity to host Crypto's equipment. (*Id.*) Mr. Hall also relied on MO POW's right in the Second Agreement to relocate Crypto's equipment to a different site. (*Id.* at 4-5.)

Based on assuming MO POW would relocate Crypto to the Texas site, Mr. Hall used construction and operation data from that site to project the costs MO POW would incur in providing services for Crypto. (*Id.* at 7-10.) Mr. Hall also considered several cost contingencies that could arise, including personnel, repair, commission, and lease expenses. (*Id.* at 7-10, 15-

2

19.) Mr. Hall calculated those costs using available data but also included a contingency percentage to account for unknown costs that could arise. (*Id.*) To further account for the risks associated with providing services, Mr. Hall developed a discount rate of 18%, which he used to reduce the projected lost profits. (*Id.* at 11, 20.) To get to 18%, Mr. Hall used:

- a risk free rate based on the 10-year US Treasury Bond Yield at the time performance would have started under the Second Agreement;
- an equity risk premium from an industry source;
- an industry risk premium also from an industry source;
- a size premium based on financial statements from the Texas site; and
- a company-specific premium.

(*Id.* at 20.) Using this data and method, Mr. Hall calculated MO POW's lost profits from Crypto's failure to perform. (*Id.* at 11.)

Understanding Mr. Hall's use of the Texas site involved documents not yet produced in the case, MO POW produced every document Mr. Hall considered that had not yet been produced four days after filing Mr. Hall's report. (Exhibit 1.)

## LEGAL STANDARD

In evaluating Crypto's motion, the Court must satisfy itself Mr. Hall's testimony is reliable and relevant. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir 2009).[1] The Court evaluates reliability by "assessing the underlying reasoning and methodology" to include the expert's data, method, or application of the method to the data. *Id.* MO POW must show Mr. Hall's method is scientifically sound and based on facts that satisfy Rule 702's reliability

---

[1] The Court must also determine whether Mr. Hall is qualified to offer his opinions. *Id.* But Crypto does not challenge Mr. Hall's qualifications, removing that as an issue.

3

requirement. *Id.* With that said, the focus of the analysis is on the principles and methodology "not on the conclusions that they generate." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217-18 (10th Cir. 2016).

## ARGUMENT

### I. Crypto has conceded Mr. Hall used a sound methodology, making its arguments go to weight not admissibility.

Although Crypto's motion states Mr. Hall did not use a sound methodology, Crypto never challenges Mr. Hall's method. (*See* ECF 98 at 2, 4) Mr. Hall used the incremental profit method for calculating lost profits, which is a method sanctioned by the American Institute for Certified Public Accountants (AICPA). (*See* ECF 91-1 at 6, n. 7.) Crypto does not argue this method is unreliable, unreviewed, untested, or unaccepted within the applicable expert community. *See Etherton*, 829 F.3d at 1217 (discussing considerations for determining the reliability of an expert's method).

Rather, Crypto's arguments concern assumptions Mr. Hall did or did not make in determining the data to use, like the use of cost data from the Odessa, TX site. This should shift the lens through which the Court views Crypto's arguments. Generally, the factual basis of an expert opinion "goes to the credibility of the testimony rather than the admissibility." *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir.1991). An expert opinion is reliable if it is based on "good grounds," not because a court thinks the opinions are correct. *Black Card, LLC v. Visa U.S.A., Inc.*, 2020 U.S. Dist. LEXIS 263596 at *15-17 (D. Wyo. 2020). When arguments to exclude expert testimony focus on evidence and data "relied and not relied upon," those go toward weight. *Id.*; *Sinclair Wyo. Ref. Co. v. A&B Builders Ltd.*, 2018 U.S. Dist. LEXIS 220854, *30-31 (D. Wyo. 2018); *Dow Chem. Co. v. Seegott Holdings, Inc.* (In re Urethane Antitrust Litig.), 768 F.3d 1245, 1263 (10th Cir. 2014) ("Reliability 'is primarily a question of the validity

4

of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.'"); *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (stating that if there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony) *overruled on other grounds*.

      This is particularly true in the specific instance of an expert calculating lost profits. *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 U.S. Dist. LEXIS 32666, *22-23 (D. Colo. 2014) (finding attacks on the assumptions used in calculating lost profits went to weight); *Wilspec Techs., Inc. v. Dunan Holding Grp.*, 2008 U.S. Dist. LEXIS 47750, *1 (W.D. Okla. June 20, 2008) (assumptions made by expert in projecting lost profits goes to weight); *Supervalu, Inc. v. Assoc. Grocers, Inc.*, 2007 U.S. Dist. LEXIS 220, *3 (D. Minn. Jan. 3, 2007) (expert's assumption that plaintiff would win a contract renewal goes to weight, not admissibility, and did not make opinion on lost profits speculative). As a result, Crypto has not raised a challenge to the admissibility of Mr. Hall's opinions. The Court can deny the motion on this basis.

**II.      Mr. Hall using the Texas site as a cost basis is reasonable and reliable.**

      Crypto argues that Mr. Hall had no factual basis to rely on the Texas location, using it only as a basis to inflate his estimate. (ECF 98 at 4.) This is incorrect. Mr. Hall's report explains why it was a reasonable assumption that MO POW would have relocated Crypto's equipment to Texas. (ECF 91-1 at 5.) Two facts underlying his assumption stand out. First, MO POW indicated they planned to move Crypto to the site but did not send the notice because Crypto refused to perform.[2] (*Id.*) Second, MO POW had access to the Texas site, and it had enough

---

[2] Crypto alleges MO POW could not unilaterally relocate the site "without a basis for relocation, notice, and cooperation." (ECF 98 at 4.) This is not true. MO POW could relocate the site "if necessary or desirable for Host's efficient use of the facility." (ECF 91-1 at 4, n. 2.) MO POW

capacity to host Crypto. (*Id.*) Crypto does not dispute this; other than to say Crypto never received notice. But Mr. Hall's report explains why notice never went out. Both these facts make it reasonable for Mr. Hall to assume relocation.

Crypto's expert provided another. He calculated that MO POW would have lost money had it kept Crypto at the site in Missouri. (ECF 95-1 at 8.) Had Crypto performed, MO POW had the choice to lose money in Missouri or make money in Texas. It is reasonable to believe MO POW would choose to make money, which makes Mr. Hall's assumption reasonable.

The rational business decision to assume a move to Texas exposes the hypocrisy in Crypto's arguments. As discussed more below, Crypto argues Mr. Hall should have assumed Crypto would make certain business decisions to minimize costs despite Crypto never actually making those decisions. If Mr. Hall should have assumed Crypto would have acted in its business interest, why is it unreasonable for Mr. Hall to assume MO POW would have done the same? Crypto does not say.

Crypto also alleges Mr. Hall's use of Texas is improper because it relies on documents not previously produced and uses a theory not previously disclosed. These are form over substance claims. As noted above, MO POW produced all documents Mr. Hall relied upon to ensure Crypto could review and use those documents how it wished. Those documents became relevant once Mr. Hall performed his expert work, which is why they were not previously produced. Had MO POW not produced them, Crypto would now be making the opposite argument that the failure to produce precludes Mr. Hall's opinions. Likewise, MO POW disclosed it would seek consequential damages in response to Crypto's interrogatories. (Exhibit

---

would then need to give notice and cooperate with Crypto on the move. (*Id.*) But nothing in the agreement precluded relocation.

2.) In truth, Crypto has suffered no prejudice and does not allege any in its motion. *Popovski v. Titan Transfer, Inc.*, 2022 U.S. Dist. LEXIS 213029, *4-5 (D. Wyo. 2022) (refusing to exclude an expert report based on untimely disclosure because documents were produced, and other party suffered no material prejudice.)

**III.    The other assumptions and non-assumptions Mr. Hall made were reasonable and reliable.**

Largely inserting statements from its expert report, Crypto alleges Mr. Hall should have considered several variables that could have changed his calculations. As noted above, the assumptions or non-assumptions in a lost profits calculation are not admissibility questions. Moreover, an expert has no duty to account for all variables because those are weight issues not admissibility issues. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (collecting cases noting that objections to inadequacies of accounting for variables goes to weight not admissibility); *Moreno v. Specialized Bicycle Components*, 2021 U.S. Dist. LEXIS 222307, *20-21 (D. Colo 2021); *P&G v. Haugen*, 2007 U.S. Dist. LEXIS 107287, *12-13, (D. Utah 2007) (explaining that not including certain variables goes to weight, which is "especially true" where the expert is using professional judgment as to what variables to use). Still, Crypto's arguments are incorrect.

Crypto first claims Mr. Hall had no basis to use Texas electricity rates because those are different than those in Missouri. (ECF 98 at 6.) While the rates are different, the reasonableness of Mr. Hall's assumptions about relocating to Texas are addressed above. Even so, this argument is more proof of why MO POW would have moved to Texas. As Crypto points out, MO POW could have lowered its costs by doing so, which is a rational thing for a business to do.

Next, Crypto argues Mr. Hall did not conduct an analysis to support his 95% uptime estimate for Crypto's equipment. (*Id.* at 7.) He did not need to do so because the 95% uptime comes from a requirement in the Second Agreement. He assumed MO POW would fulfill its obligations in the Second Agreement. It is difficult to envision why it would have been more reasonable for Mr. Hall to assume MO POW would have breached the uptime provision of the Second Agreement.

Crypto is really arguing that it was possible for some variable to affect the uptime of Crypto's equipment and Mr. Hall should have accounted for those unknown variables.[3] While it is true variables (known and unknown) exist that could affect MO POW's profits, what those variables are, the frequency with which they could occur, and their impact on profits is unknown. It is likewise unknown whether a reliable method exists to estimate those variables. Neither Crypto's motion nor its expert attempted to quantify the impact of potential variables. At best, Crypto has pointed out a series of what ifs—hardly a flaw in Mr. Hall's method.

Even so, Mr. Hall used a reliable method to account for variables, specifically he used a discount rate to reduce the potential lost profits. As Crypto's expert admits, a discount rate accounts for risk associated with the cash flow stream. (ECF 95-1 at 20.) In this context, risk is synonymous with variables that could decrease profits. By using a discount rate of 18% and decreasing projected profits by that percentage, Mr. Hall accounted for potential variables.

Crypto next argues Mr. Hall did not consider possible reductions in managed service fees that could occur if Crypto did not utilize all available capacity. (ECF 98 at 7-8.) Like the prior argument, Crypto has isolated another potential variable that may or may not impact the lost

---

[3] Crypto also mentions cooling costs, which are another variable that could affect uptime or overall costs. (ECF 98 at 8.) Crypto never quantifies this potential variable. Like all the arguments about potential variables, Mr. Hall captured the possibility with the discount rate.

profits calculation. But Crypto neither quantifies the impact of this variable nor says why this variable makes Mr. Hall's overall calculations unreliable.

This argument, however, is the best example of Crypto's contradictory position regarding Mr. Hall's assumption about the Texas site. Crypto argues Mr. Hall should have accounted for Crypto exercising good business judgment if mining became unprofitable, which would then reduce the fees it paid to MO POW. But if Mr. Hall should have assumed Crypto would exercise good business judgment, he should have also assumed MO POW would do the same. And this is exactly what Mr. Hall did. He assumed the move to Texas based on reliable facts, and he used a discount rate to account for reductions in cash flow—like Crypto shutting its equipment down.

Crypto finally argues Mr. Hall did not use the correct discount rate. (ECF 98 at 8.) Crypto's short shift analysis on this point ignores key details. To start, Crypto does not allege there is a fixed discount rate for this type of lost profits calculation. This means Mr. Hall exercised judgment on what the rate should be—not something that affects admissibility. *See P&G*, 2007 U.S. Dist. LEXIS 107287 at *12-13. Crypto also leaves out that while its expert disagrees with the overall discount rate (the cited basis for Crypto's reliability argument), Crypto's expert agreed with Mr. Hall's equity risk and size premiums. (ECF 95-1 at 25.) The experts differ on the discount rate by 6%, using different percentages in the same categories of risk. (*See id.*) That does not represent a reliability problem; rather, it is an example of the professional judgment experts in this field use on the margins. At best, it is a weight issue.

## CONCLUSION

Given Crypto's concession that Mr. Hall's method is sound, the Court need only find Mr. Hall had good grounds for his assumptions. This becomes easier when Crypto tacitly concedes Mr. Hall should have assumed the parties would exercise sound business judgment—which is

9

what he did. Ultimately, Crypto has argued issues that go to the weight of Mr. Hall's opinions not their admissibility. Therefore, MO POW requests the Court deny Crypto's motion.

DATED: January 13, 2025.

                                          */s/ Jeffrey S. Pope*
                                          Jeffrey S. Pope (Wyo. State Bar # 7-4859)
                                          Kasey J. Schlueter (Wyo. State Bar # 8-6521)
                                          HOLLAND & HART LLP
                                          2020 Carey Avenue, Suite 800
                                          P.O. Box 1347
                                          Cheyenne, WY 82003-1347
                                          Telephone: 307.778.4200
                                          Facsimile:  307.778.8175
                                          JSPope@hollandhart.com
                                          KJSchlueter@hollandhart.com

                                          ATTORNEYS FOR PLAINTIFFS/
                                          COUNTER DEFENDANTS
                                          MO POW 3, LLC AND MO POW 4, LLC

33989151_v1