Matthew D. Kaufman, WSB #6-3960
Tyler J. Garrett, WSB #6-4400
Melissa K. Burke, WSB #7-5694
Kari Hartman, WSB #8-6507
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
tgarrett@hkwyolaw.com
mburke@hkwyolaw.com
khartman@hkwyolaw.com

ATTORNEYS FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MO POW 3, LLC and MO POW 4, LLC, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Civil Action No. 1:22-CV-00155-KHR |
| CRYPTO INFINITI LLC, | ) ) ) |
| Defendant. | ) ) |

## CRYPTO INFINITI'S REPLY IN SUPPORT OF MOTION TO STRIKE EXPERT DAVID HALL

COMES NOW Defendant, Crypto Infiniti LLC ("Crypto Infiniti"), by and through its counsel, HATHAWAY & KUNZ, LLP, and hereby submits this *Reply in Support of Motion to Strike Expert David Hall.*

MO POW 4 LLC's ("Mo Pow 4") arguments responding to Crypto Infiniti's *Motion to Strike* can be distilled to the following four points: 1) Crypto Infiniti's arguments go to weight and not admissibility; 2) Mr. Hall's use of the Texas location (rather than the specifically contracted for site in Missouri) is permissible because it was a rational business decision; 3) Mr. Hall's reliance on documents not previously produced within the Court's required deadlines is

permissible because the documents were not relevant until now; and 4) Mr. Hall was permitted to ignore different variables contemplated by the Master Hosting Agreement between Mo Pow 4 and Crypto Infiniti (the "Second Agreement") that would likely (and did, in some cases) arise which impact a damages calculation under the Second Agreement. *See generally* ECF No. 99.

First, Mo Pow 4 tries to change the narrative and argues that Crypto Infiniti never challenged Mr. Hall's methodology, so any arguments go to the weight and not the admissibility of his opinions. ECF No. 99 at 4-5. This plainly misstates Crypto Infiniti's *Motion*. Crypto Infiniti did challenge Mr. Hall's methodology because one of the first steps in his methodology was to apply electrical rates that are inapplicable to this case and his later steps included improper discount rates and failure to consider different applicable variables. ECF No. 98 at 6-8. It is axiomatic that these issues raise questions regarding the reliability of Mr. Hall's methodology.

Indeed, under similar circumstances, the United States District Court for the District of Columbia recently held that an expert's damages calculation based on rates that were not agreed upon rendered those opinions inadmissible (and did not merely go to weight). *United States v. DynCorp Int'l LLC,* 715 F. Supp. 3d 45, 58-59 (D.D.C. 2024) (government expert performed a damages calculation based on unsigned leases containing specific rates and the Court excluded that damages calculation, finding it was unreasonable to rely on the unsigned leases when signed leases are available). It is not reasonable for Mr. Hall to rely on electrical rates for an unrelated Texas location that was never contemplated by both parties, especially when there are available rates in Missouri, which Crypto Infiniti's expert utilized. *See* ECF No. 95-1.

Mo Pow 4 cites *Werth v. Makita Elec. Works, Ltd*., 950 F.2d 643, 654 (10th Cir. 1991) for the proposition that the factual basis of an opinion goes to credibility rather than admissibility. ECF No. 99 at 4. However, in *Werth*, the Court noted that the expert's analysis "rested on facts

already in evidence". *Werth*, 950 F.2d at 654. But here, there is no evidence that the Texas location was going to be used for Crypto Infiniti. Rather, the evidence shows that Missouri was the location for the site for Crypto Infiniti per the Second Agreement. ECF No. 7.2. Therefore, the factual basis in this case goes to admissibility and not weight because Mr. Hall's opinions are inherently based on a faulty premise (that Texas would be the location of the site, instead of Missouri as the Second Agreement dictates).

Mo Pow 4 claims Mr. Hall was not using the Texas location to inflate his damages estimate, while also simultaneously acknowledging that if Mr. Hall had used numbers from the Missouri site it would have lost money, thus proving Crypto Infiniti's argument. ECF No. 99 at 5-6. Mr. Hall's alleged factual basis for the Texas site is that Mo Pow 4 indicated they planned to move the site, despite the direct contradiction of that premise in the record. *Id.* at 5. Indeed, when asked specifically "[a]side from the project with Crypto Infiniti at the site at 5501 East Farm Road 112, Strafford, Missouri, what other projects was Mo Pow 4 involved in" the company representative stated "[n]one." **Exhibit A**, *Deposition Transcript of Thomas Guel* at 51:8-12. Putting aside Mo Pow 4's failure to follow the requirements under the Second Agreement to relocate the site to Texas, if Mo Pow 4 actually intended to move the location to Texas, the answer to this question would have been different. Further, one of the few references to Texas in the corporate representative's deposition was to say "[t]here's a site in Texas … It is *unrelated* to Mo Pow 3 and 4." *Id.* at 16:5-9 (emphasis added). There is no basis in the record for location of the site in Texas and there are available rates from Missouri to calculate damages; thus, there is no other reason to use the Texas site besides inflating damages so that Mo Pow 4 could recover lost profits where none exist.

Further, Mr. Hall cannot just make an "assumption" that Mo Pow 4 would have relocated the site to Texas where the Second Agreement requires certain steps be taken before doing so, and where those steps were not taken because notice was not provided.[1] ECF No. 99 at 5-6. Essentially, Mr. Hall reaches an impermissible legal conclusion and usurps the role of the trier of fact when he assumes that Mo Pow 4 would have moved the site to Texas, because such requires him to conduct a legal interpretation of the Second Agreement and apply the facts of this case to that Agreement to find that relocation would have been permissible to support his damages calculation based on the relocated site. Mo Pow 4's entire damages calculation is based on speculation that the site would have been relocated to Texas which cannot support a valid claim for damages. *See WSP, Inc. v. Wyoming Steel Fabricators & Erectors, Inc.,* 2007 WY 80, ¶ 19, 158 P.3d 651, 655 (Wyo. 2007) (holding that a district court cannot speculate about the proper amount of damages).

Ironically, Mo Pow 4 corroborates Crypto Infiniti's argument when it addresses the issue of document production. It claims that Mo Pow 4 produced the documents Mr. Hall relied upon once they became relevant as he performed his expert work. ECF No. 99 at 6. That is precisely the point. These documents and the Texas site which is the subject of the documents were not relevant at any point during this litigation and it is prejudicial for Mo Pow 4 to now do an about-face on its damages claim at such a late stage in this case past the original expert designation deadline, and after summary judgment briefing and the order has been issued. ECF No. 40. Condoning Mo Pow 4's conduct is reversable error. *See Downs v. Homax Oil Sales, Inc*., 2018 WY 71, ¶¶ 23-32, 421 P.3d 518, 524-526 (Wyo. 2018) (finding party violated its obligation under Rule 26 to disclose its

---

[1] Mo Pow 4 claims that Crypto Infiniti does not dispute that Mo Pow 4 had access to the site and it had enough capacity to host Crypto Infiniti, but Crypto Infiniti does not have enough information regarding the status of the Texas site at the time Mo Pow 4 was purportedly intending to relocate the facilities and did not have the ability to conduct discovery on the issue, because in Mo Pow 4's words, the documents only "became relevant once Mr. Hall performed his expert work." ECF No. 99 at 5-6. That is the exact issue with using a location that was never contemplated by the parties or throughout the litigation.

computation of lost profits and the documents supporting such computation, thus such damages evidence is inadmissible).

Next, Mo Pow 4 claims it is contradictory to require Mr. Hall to analyze scenarios where Crypto Infiniti would make business decisions to minimize costs but then not use the Texas site to calculate damages where moving to Texas would have been a rational business decision. ECF No. 99 at 9. The difference here is there is a factual basis that Crypto Infiniti would have shut down operations at certain points during the term of the Second Agreement to minimize costs because it is indisputable that the price of Bitcoin fell below the threshold contemplated under the Second Agreement when operations would cease for a number of months.[2] ECF No. 98 at 7.

Finally, at various points, Mo Pow 4 claims that Crypto Infiniti did not "quantify" variables that Mo Pow 4's expert did not address, and also that Crypto Infiniti did not identify a fixed discount rate for a lost profits calculation. ECF No. 99 at 8-9.[3] Once again, Mo Pow 4 tries to deflect and baselessly change the narrative in its favor. There can be no quarrel that it is Mo Pow 4's burden to prove the admissibility of its expert opinion, not Crypto Infiniti's. *See Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020). Crypto Infiniti identified the issues with Mr. Hall's methodology, and it is *Mo Pow 4's* obligation to prove his opinions are based on reliable

---

[2] Mo Pow 4 claims that Mr. Hall did not conduct an analysis to support his 95% uptime estimate for Crypto Infiniti's site because it is required under the Second Agreement and he did not assume that Mo Pow 4 would breach this obligation. ECF No. 99 at 8. But as Crypto Infiniti noted, a different uptime rate would not necessarily be a breach of the Second Agreement if the price of Bitcoin dropped below $20,000 and mining became unprofitable and Crypto Infiniti chose to shut down its equipment to minimize costs. ECF No. 98 at 7-8.

[3] Mo Pow 4 claims that its expert only differs from Crypto Infiniti's expert's discount rate by 6% and so the difference is based on professional judgment. ECF No. 99 at 9. However, 6% is not minor and inflated damages by at least $221,000. ECF No. 95-1 at 26. Further, Crypto Infiniti argued that Mr. Hall failed to explain the basis for the usage of this discount rate and that the rate he used actually contradicted the recommended rate contained within the publication he was relying upon (the Navigator). ECF No. 98 at 8. It is unclear how the rate could be based on "professional judgment" with no basis. Mo Pow 4 further claims that Mr. Hall accounted for different variables with a discount rate of 18% ECF No. 99 at 8. But the report does not specify that this discount rate was to account for the variables that Crypto Infiniti identified; it is to account for the time and value of money and risk factors. ECF No. 91-1 at 13.

methods. Mo Pow 4's failure to do so vitiates any reliance upon Mr. Hall and this Court should strike him from the case.

DATED this 21st day of January 2025.

                                      HATHAWAY & KUNZ, LLP,

                              By: */s/   Kari Hartman*
                                      Matthew D. Kaufman, WSB #6-3960
                                      Tyler J. Garrett, WSB #6-4400
                                      Melissa K. Burke, WSB #7-5694
                                      Kari Hartman, WSB #8-6507
                                      Hathaway & Kunz, LLP
                                      2515 Warren Ave. Ste 500
                                      P.O. Box 1208
                                      Cheyenne, WY 82003
                                      Phone:  307-634-7723
                                      Fax:  307-634-0985

                                      ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of January 2025, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Jeffrey S. Pope | [ ✓ ] CM/ECF/Electronic Filing |
| Kasey J. Schlueter | [  ] U.S. Mail |
| Holland & Hart, LLP | [  ] Fax: |
| 2020 Carey Ave Suite 800 | [  ] E-mail |
| P.O. Box 1347 | |
| Cheyenne, WY 82003-1347 | |

                                      */s/ Hayley Wheeler*
                                      Hathaway & Kunz, LLP