IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

———————————————



**FILED**

*12:26 pm, 3/11/25*

**U.S. Magistrate Judge**

MO POW 3, LLC and MO POW 4, LLC,

    Plaintiffs,

    vs.

CRYPTO INFINITI, LLC,

    Defendant.

Case No.  1:22-CV-00155-KHR

---

### ORDER ON DEFENDANT'S *MOTION TO STRIKE MO POW 4 LLC'S EXPERT DAVID HALL*

This matter is before the Court on Crypto Infiniti, LLC's ("Crypto" or "Defendant") *Motion to Strike Mo Pow 4 LLC's Expert David Hall* ("*Motion*") (ECF No. 98). Having reviewed the *Motion*, MO POW 3, LLC ("Mo Pow 3") and MO POW 4, LLC's ("Mo Pow 4") (collectively "Mo Pow" or "Plaintiffs") opposition brief ("*Response*") (ECF No. 99), Defendant's reply brief ("*Reply*") (ECF No. 100), the applicable law, and being otherwise fully advised, Defendant's *Motion* shall be **DENIED** for the reasons outlined herein:

#### BACKGROUND

This dispute centers on two agreements that never came to fruition—one between Mo Pow 3 and Crypto (the "First Agreement") (ECF No. 51-1) and the other between Mo Pow 4 and Crypto (the "Second Agreement") (ECF No. 51-2). ECF No. 64 at 2. "Both agreements were intended to provide Crypto…with hosting, or managed services for digital currency mining equipment." *Id.* Crypto made the down payment as required under the

1

terms of the First Agreement, but after the relationship soured, Crypto did not make the down payment for the Second Agreement. *Id.* at 3. While the parties attempted to salvage the First Agreement, ultimately, Mo Pow filed the instant suit, which culminated in cross motions for summary judgment. *Id.* at 3–4.

On February 20, 2024, the Court entered its *Order on Cross Motions for Summary Judgment* (ECF No. 64)—finding, *inter alia*, that "Mo Pow 3 breached the First Agreement by unjustifiably terminating it on October 28, 2022[, and] Crypto Infiniti breached the Second Agreement by unjustifiably terminating it on July 5, 2022." ECF No. 64 at 1. As to the latter finding, the Court held that Mo Pow 4 was entitled to damages, but the Court was uncertain as to whether "all or part of the payment would result in profit to Mo Pow 4." *Id.* at 26. As a result, the Court "determined the need for additional expert opinion(s) to determine the precise extent of each party's damages and further briefing on the issues." ECF No. 79 at 1. As the Court instructed:

> Mo Pow 4 may obtain an expert to calculate those damages. Crypto Infiniti may also retain a rebuttal expert, and an expert to calculate its own damages if it chooses. In fairness, Mo Pow 3 may also utilize a rebuttal expert if Crypto Infiniti retains an expert witness for its own damages.

*Id.* at 11.

Mo Pow 4 retained David A. Hall, MBA, CMA, CVA, CFE ("Mr. Hall") to conduct a lost profits analysis. ECF No. 99 at 2; *see* ECF No. 91-1. Mo Pow 4 filed Mr. Hall's expert report on October 11, 2024. *See* ECF No. 91. In his report, Mr. Hall opined that Mo Pow 4 sustained $5,374,000 in lost profits—a figure he arrived at, in part, by using Odessa, Texas as the hosting site for his calculations. ECF No. 91-1 at 7–13. The decision to use

the Texas site is part and parcel of Crypto's instant *Motion*, for as Crypto points out, "[t]he Second Agreement between Mo [Pow] 4 and Crypto…identifies the location of the bitcoin mining site as Strafford, Missouri." ECF No. 98 at 4 (citing ECF No. 1-2 at 2). Crypto takes issue with Mr. Hall using Texas as the hosting site rather than Missouri, averring that the only rational explanation for the substitution is to inflate the lost profits damage calculation. *Id.*

Crypto's *Motion* requests that the Court strike Mr. Hall's opinions because: (1) "Mr. Hall relies upon a wholly different and irrelevant site to inflate Mo 4's damages[;]" (2) "his entire calculation is not based on a reliable methodology[;]" (3) "Mr. Hall relies upon documents and information related to the Texas site that were not timely disclosed[;]" and (4) "Mr. Hall's opinions fail to consider various terms of the Second Agreement, additional costs, and rate variances which impact his calculations." ECF No. 98 at 2.

In response, Mo Pow generally argues that while Crypto is purporting to challenge the reliability of Mr. Hall's methodology, in actuality, Crypto is challenging the assumptions and variables Mr. Hall chose to consider, not the methodology itself. *See* ECF No. 99. Further, Mo Pow 4 claims that it had the authority to unilaterally relocate the cryptocurrency mining site under the Second Agreement after Crypto failed to perform. *Id.* at 5.

## LEGAL STANDARDS

### I.  Expert Witnesses

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997).[1] In utilizing this discretion, the Court will first look to the Court's Local Rules and the Federal Rules of Civil Procedure. Local Rule 26.1(e)(4) requires expert designations to comply with Federal Rule of Civil Procedure 26(a)(2). U.S.D.C.L.R. 26.1(e)(4). Rule 26(a)(2) provides two separate categories of expert witnesses: retained witnesses and non-retained witnesses. FED. R. CIV. P. 26(a)(2)(B). Retained expert witnesses are those witnesses "retained or specially employed to provide expert testimony." *Id.* If a witness is a retained expert, a party's disclosure of expert testimony must include the following:

> [A] complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

In addition to the requirements of Rule 26, the proponent of the expert testimony bears the burden of proving the foundational requirements of Federal Rule of Evidence 702

---

[1] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (noting that the appellate court's review is deferential, and it will not disturb the lower court's ruling on the admission or exclusion of an expert "unless it is arbitrary, capricious, whimsical or manifestly unreasonable," or the appeals court is "convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1229 (10th Cir. 2003) (internal quotation marks omitted))).

by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020). Rule 702 sets the following parameters for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Each expert's opinions are subject to the same standards of reliability that govern the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding *Daubert* applies even when an expert's opinion relies on skill or experience-based observation). Rule 702 and *Daubert* require courts to act as gatekeepers by ensuring all expert testimony, whether scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Id.* at 152–53.[2] To make the requisite findings, the Court must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *See id.* Second, if the Court finds the proffered expert to be qualified, the Court must then determine whether the expert's opinions are sufficiently reliable. *Id.*; FED. R.

---

[2] *See, e.g.*, *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) ("Fulfilling the gatekeeper duty requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts.").

EVID. 702. Finally, the court must determine whether the proposed expert testimony will assist the trier of fact. FED. R. EVID. 702.[3]

As noted, Rule 702 obliges district courts to gatekeep information and testimony that may be unreliable or irrelevant, *see Goebel*, 346 F.3d at 991, and the main rationale for the rule, of course, is to prevent the jury from hearing irrelevant or unreliable expert testimony. However, this basis becomes tenuous when the court itself sits as the finder of fact. *See id.* That is, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). As one court remarked: "Because the doctrine is designed to protect juries it is largely irrelevant in the context of a bench trial. There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2021 U.S. Dist. LEXIS 105077, at *9 (D. Kan. June 4, 2021) (cleaned up) (quoting *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)).

### ORDER OF THE COURT

The crux of Crypto's argument is that Mr. Hall's use of the Odessa site—instead of the Strafford site as contemplated in the Second Agreement—rendered his opinions

---

[3] *See Cruz v. City & Cty. of Denver*, No. 21-cv-03388-KLM, 2023 U.S. Dist. LEXIS 106421, at *6–7 (D. Colo. June 20, 2023) ("Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court." (citation omitted)); *Perez v. Henneberry*, No. 09-cv-01681-WJM-MEH, 2011 U.S. Dist. LEXIS 52428, at *2 (D. Colo. May 5, 2011) ("The court generally has significant discretion in determining whether to admit expert testimony and that discretion is significantly broader when the case will be tried to the court rather than a jury." (citation omitted)).

unreliable. *See* ECF No. 98 at 4–8. Because of this discrepancy, the main issue before the Court is whether using a wholly different locality for calculating lost profits rendered Mr. Hall's entire expert report unreliable—and thus subject to exclusion. From Crypto's perspective, the Odessa site was chosen solely to inflate the lost profits calculation. ECF No. 98 at 4. Conversely, Mo Pow argues that the Odessa site was chosen on Mr. Hall's assumption that Mo Pow "would have relocated Crypto's equipment to Texas." ECF No. 99 at 5.

## I.  Mr. Hall meets the requirements of Rule 26(a)(2)(B).

Turning to Mr. Hall's credentials, the Court finds, and Defendant does not contest, that Mr. Hall meets the requirements of Rule 26(a)(2)(B).[4] *See* Expert Report of David A. Hall, MBA, CMA, CVA, CFE, ECF No. 91-1 [hereinafter Expert Report].[5] Mr. Hall's Expert Report contains a complete statement of all the opinions he will express, the basis for those opinions, the facts and data considered by him, and the exhibits that will be used to support those opinions. *Id.* at 1–14. Mr. Hall also provides his experience and qualifications via his curriculum vitae, a list of the publications he has authored in the past 10 years, his compensation for working on this matter, and a list of other cases he has testified as an expert in over the past four years. *Id.* at 22–29.

---

[4] ECF No. 99 at 3, n.1.

[5] The page numbers the Court cites in reference to ECF No. 91-1 refer to those numbers assigned by CM/ECF (in blue at the top of each page) not the numbers included on the Expert Report and various attachments thereto.

## II. Mr. Hall meets the requirements of Rule 702.

### A. *Knowledge, Skill, Experience, Training, or Education*

The Court begins its Rule 702 analysis by determining whether the proffered expert is qualified by knowledge, skill, experience, training, or education. *See Bruce v. Minn. Life Ins. Co*., No. 20-CV-44-S, 2021 U.S. Dist. LEXIS 219374, at *4–5 (D. Wyo. Aug. 16, 2021) (citing FED. R. EVID. 702).[6] The expert needn't satisfy every qualification enumerated in Rule 702; "rather, a witness is qualified to testify as an expert so long as the witness'[s] overall qualifications provide expertise relevant to the opinions offered." *Id.* (citations omitted). In this sense, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (citing *United States v. Velasquez*, 64 F.3d 844, 849, 33 V.I. 265 (3rd Cir. 1995)).

Here, the Court finds that Plaintiffs' proffered expert is sufficiently qualified under Rule 702(a): Mr. Hall holds a B.A. from the University of Michigan and a M.B.A. from the University of Texas; he is a Certified Management Accountant, Certified Fraud Examiner, and a Certified Valuation Analyst. Expert Report, at 22. Additionally, Mr. Hall "has over 30 years of experience in financial, economic, accounting, and valuation issues with disputes, compliance, and investigations." *Id.* In reviewing Mr. Hall's curriculum

---

[6] *See Bruce v. Minn. Life Ins. Co.*, No. 20-CV-44-S, 2021 U.S. Dist. LEXIS 219374, at *6-7 (D. Wyo. Aug. 16, 2021) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968-70 (10th Cir. 2001) (noting that if the Court finds the expert unqualified, the analysis may cease)).

vitae, the Court finds Mr. Hall's background demonstrates he is sufficiently qualified by knowledge, skill, experience, training, and education. *See* FED. R. EVID 702(a).

### B. Reliability

Largely, Crypto's arguments center on reliability; Crypto claims that Mr. Hall's opinions are based on disputed and unestablished facts and implement unreliable methodologies. *See* ECF No. 98. Generally, "[r]eliability questions may concern the expert's data, method, or his application of the method to the data." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). And specifically, the subsections of Rule 702 outline the various aspects of reliability that courts should consider. *See* FED. R. EVID. 702. After considering Mr. Hall's Expert Report and the arguments from both parties, the Court finds that the opinions set forth in Mr. Hall's Expert Report meet the reliability standard of Rule 702 for the reasons expressed below.

1. Sufficient Facts or Data

Under Rule 702(b), the expert's opinions must be based on "sufficient facts or data." FED. R. EVID. 702(b). This area of inquiry turns on "whether the expert considered *enough* information to make the proffered opinion reliable." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (emphasis in original) (citing FED. R. EVID. 702 advisory committee's note to 2000 amendment).[7] "Rule 702(b) requires that the facts underlying an expert opinion be 'sufficient,' not exhaustive. The factual basis for an opinion need not result in 'absolute certainty' so long as it 'enable[s] the expert to express

---

[7] In this sense, the "sufficient facts and data" requirement is "quantitative rather than qualitative." *Lieberenz v. Bd. of Cty. Comm'rs of the Cty. of Saguache*, Civil Action No. 21-cv-00628-NYW-NRN, 2025 U.S. Dist. LEXIS 2083, at *40 (D. Colo. Jan. 6, 2025).

a reasonably accurate conclusion.'" *Lieberenz v. Bd. of Cty. Comm'rs of the Cty. of Saguache*, Civil Action No. 21-cv-00628-NYW-NRN, 2025 U.S. Dist. LEXIS 2083, at *40–41 (D. Colo. Jan. 6, 2025) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (alteration in *Liberenz*)). Further, "[a]n expert's reliance on disputed facts in reaching a conclusion 'does not render the expert's opinion unreliable under this test.'" *Id.* (quoting *Cook*, 580 F. Supp. 2d at 1085 (citation omitted)).

Under this first area of inquiry, the Court finds that Mr. Hall's opinions are based upon sufficient facts and data. *See* Expert Report, at 30–36. As demonstrated in Appendix C of the Expert Report, Mr. Hall considered the master hosting agreements between Mo Pow and Crypto, lease and electrical service agreements, hundreds of financial records (including invoices, loan statements, receipts, and tax documents), and various resources pertaining to forensic accounting, valuation, lost profits, economic damages, etc. *Id.* The Court finds that the considered materials in the Expert Report meet the quantitative threshold of Rule 702(b), and while Crypto takes issue with Mr. Hall's reliance upon the Texas site for his lost profits damage calculation, reliance upon a disputed fact does not equate to insufficient facts or data. *See Lieberenz*, 2025 U.S. Dist. LEXIS 2083, at *40–41.

### 2. Reliable Principles and Methods

Rule 702(c) and (d) require the Court to assess the reliability of the principles and methodologies used by the expert and determine whether they were reliably applied to the facts of the case. FED. R. CIV. P. 702(c), (d). However, on a motion to exclude expert testimony, the Court does not endeavor to decide whether the expert is "correct" in their opinions. Rather, "[t]he proper analysis involves only the admissibility of the evidence, not

10

the weight—and the two are distinct concepts." *Weigel v. Cox*, No. 04-CV-355-J, 2010 U.S. Dist. LEXIS 161651, at *5 (D. Wyo. Mar. 18, 2010) (citing *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000)).

In his Expert Report, Mr. Hall plainly sets forth the lost profits damages principles and methodology he relies upon. *See* Expert Report, at 6. He begins by noting that the incremental profit method for calculating lost profits "is a common and well-recognized methodology to quantify damages." *Id.* To that end, Mr. Hall relied upon a methodology approved by the American Institute of Certified Public Accountants ("AICPA").[8] "The AICPA practice aid on calculating lost profits states that, 'damages based on lost profits redress a defendant's unlawful act or acts by compensating the plaintiff for the profits that would have been obtained but for (absent) the unlawful act or acts.'" *Id.* (internal quotation marks omitted) (citing AICPA Forensic & Valuation Services Practice Aid, *Calculating Lost Profits* (2019)).[9] Mr. Hall continues:

> In calculating lost profits, the appropriate method is to determine *the incremental* profit Plaintiffs would have earned on the revenue it would have earned absent Defendant's breach. Incremental profits are generally calculated as lost revenues less avoided costs. To properly calculate Plaintiffs' incremental profit, it is necessary to subtract the costs that [Mo Pow 4] would have incurred but did not (thus the term "avoided costs"), had it earned the revenue lost as the result of Defendant's breach. Avoided costs are also called variable (with respect to the lost revenue) costs or incremental costs.

---

[8] *See generally* Will Kenton, *American Institute of Certified Public Accountants (AICPA)*, Investopedia (Updated Sept. 2, 2024), https://www.investopedia.com/terms/a/american-institute-of-certified-public-accountants.asp.

[9] *Cf.* Matt Connors & Robert P.K. Mooney, *Business Valuation Applications to Economic Damages for Lost Profits*, 24 Utah B.J. 25, 25–26(Jan./Feb. 2011) ("[C]ourts recognize that testimony based on AICPA standards, if those standards are properly applied, are 'the product of reliable principles and methods.'" (quoting *Leon v. Kelly*, Case No. 07-0467 JB/WDS, 2009 WL 1300936, at **13, 20 (D.N.M. Jan. 12, 2009) (admitting lost profit opinion testimony that utilized the AICPA practice aid on lost profits))).

*Id.* at 7 (emphasis in original). After outlining his lost-profits methodology, Mr. Hall describes his application of that methodology to the facts of the case. *See* Expert Report, at 6–14. He discusses the decision to use the Texas site for his calculations, the lost revenue Mo Pow 4 would have received but for the breach, the incremental/avoided costs, and the discounting of estimated lost profits.[10] After doing so, Mr. Hall concluded that Mo Pow 4's total lost profits would be $5,374,000. *Id.* at 13. In reviewing Mr. Hall's Expert Report, the Court finds the principles and methods espoused meet the requirements of Rule 702(c).[11]

Next the Court must determine whether Mr. Hall reliably applied those principles/methods to the facts of the instant case. *See* Fed. R. Evid. 702(d). Crypto does not challenge Mr. Hall's qualifications to render an expert opinion, nor does it challenge the reliability of the AICPA methodology; rather, Crypto cries foul of the use of the Texas site, positing that the only possible explanation for such a choice was to inflate the damages figure, and arguing that such an assumption was unreasonable and rendered Mr. Hall's entire expert report unreliable. *E.g.*, ECF No. 98 at 2, 4; ECF No. 100 at 3.

On first blush, the choice does seem odd, for Odessa is a far cry from Strafford. However, Mo Pow offers the following explanation for Mr. Hall's decision:

---

[10] *See* Expert Report, at 13 ("Economic damages treatises also set forth that damages should be discounted to present value using an appropriate discount rate that accounts for both the time value of money and risk factors. I discounted [Mo Pow 4]'s nominal lost profits applying an ex-ante discounting methodology to the date of damage (August 2022). A plaintiff's cost of equity is often used as a discount rate, and I used the build-up method to estimate Plaintiff's cost of equity at 18.0%. Additionally, I have employed a mid-year convention, which assumes that the lost profits would have been earned evenly throughout the year." (citations omitted)).

[11] It is also worth noting that Crypto does not directly challenge, or even mention, the AICPA practice aid for calculating lost profits in its briefing.

> First, MO POW indicated they planned to move Crypto to the site but did not send the notice because Crypto refused to perform. (*Id.*) Second, MO POW had access to the Texas site, and it had enough capacity to host Crypto. (*Id.*) Crypto does not dispute this; other than to say Crypto never received notice. But Mr. Hall's report explains why notice never went out. Both these facts make it reasonable for Mr. Hall to assume relocation. Crypto's expert provided another. He calculated that MO POW would have lost money had it kept Crypto at the site in Missouri. (ECF 95-1 at 8.) Had Crypto performed, MO POW had the choice to lose money in Missouri or make money in Texas. It is reasonable to believe MO POW would choose to make money, which makes Mr. Hall's assumption reasonable.

ECF No. 99 at 5–6. While there is minimal corroboration in the record for Mo Pow's claim, and Mr. Hall's assumption, that the site would have been relocated to Texas, the Court finds such assumptions go to the weight of the evidence not their admissibility. *See, e.g.*, *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, Civil Action No. 11-cv-01468-WJM-BNB, 2014 U.S. Dist. LEXIS 32666, at *22–23 (D. Colo. Mar. 13, 2014) (finding that challenges to the expert's underlying assumptions and alleged gaps in their calculations go to the weight of the evidence) (citation omitted); *Autotech Techs., Ltd. P'ship v. Palmer Drives Controls & Sys.*, No. 19-cv-00718-PAB-NRN, 2023 U.S. Dist. LEXIS 30372, at *9 (D. Colo. Feb. 23, 2023) (finding that an expert's reliance on "preliminary 'whiteboard' negotiations" did not render the expert's AICPA damages calculations unreliable).[12] Likewise, Crypto's various concerns over the use of inappropriate electrical rates, failure to properly account for variables affecting "uptime," failure to consider reduction in service

---

[12] On this point, Crypto argues that Mr. Hall's methodology was flawed "because one of [his] first steps…was to apply electrical rates that are inapplicable to this case and his later steps included improper discount rates and failure to consider different applicable variables." ECF No. 100 at 2. Despite Crypto's protestations, this is not a challenge to the methodology itself, this is a challenge to the variables and assumptions the expert chose to make when applying this methodology. Undoubtedly, this distinction can be, at times, subtle, but generally, challenges to the assumptions and variables chosen or not chosen by an expert concern the weight of the expert's testimony not the reliability of the underlying methodology.

fees, failure to consider adverse market conditions, and similar omissions all go to the weight of the Expert Report not its reliability. *See SolidFX*, 2014 U.S. Dist. LEXIS 32666, at *22–23.[13]

As Crypto correctly notes in its *Motion*, "any step that renders the expert's analysis unreliable…renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999); *see* ECF No. 98 at 3. However, the use of the Texas site is not a step that renders Mr. Hall's Expert Report unreliable or somehow distorts or misapplies the underlying methodology; rather, the use of the Texas site was an assumption made by the expert. And this assumption, albeit a reliance upon a disputed fact, does not change the methodology itself. Similarly, the use of certain variables, or the decision or oversight not to include such variables, does not, without more, render an expert's opinions unreliable. *See, e.g.*, *Moreno v. Specialized Bicycle Components*, Civil Action No. 19-cv-01750-MEH, 2021 U.S. Dist. LEXIS 222307, at *20-21 (D. Colo. Oct. 18, 2021) ("When an expert's opinion is not based entirely on precise parameters but rather on variables, 'any challenges to those assumptions or to the expert's application of variables   [goes] to the weight of the evidence, not its admissibility.'" (quoting *People v. Shanks*, 467 P.3d 1228, 1239, 2019 COA 160 (Colo.

---

[13] Of course, experts may be called to account for the things they emphasize as well as the things they omit. But upon a motion to strike an expert witness, the Court does not assume the role of advocate—that is, cross examination and the presentation of contrary evidence is in the province of counsel.

App. Ct. 2019) (bracketing provided by *Moreno*)).[14] Ultimately, "the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge*, 328 F.3d at 1222 (citing *Daubert*, 509 U.S. at 595). And in this case, the Court finds the methodology and its application to the underlying facts to be sound.

To be sure, just because the Court finds Mr. Hall's methodologies and their application to be reliable, that does not mean they are exempt from strenuous objection and cross examination during a damages hearing. As this Court has consistently held, the gatekeeper is not a surrogate for the adversarial system, and the proper remedy for "shaky but admissible evidence" is vigorous cross examination and the presentation of contrary evidence. *E.g.*, *Weigel*, 2010 U.S. Dist. LEXIS 161651, at *5 (quoting *Daubert*, 509 U.S. at 596). This axiom rings particularly true when, as here, the Court sits as the finder of fact.[15]

Finally, under the Rule 702 analysis, the Court must determine whether Mr. Hall's opinions will aid the trier of fact in understanding the evidence or determining a fact in dispute. As it was the Court that permitted Mo Pow to retain an expert to opine on lost-

---

[14] *Cf. Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2013) ("The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the [fact finder]; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis.").

[15] Also at issue is whether Mo Pow had the authority to unilaterally relocate the cryptocurrency mining site under the Second Agreement. Crypto argues that "[t]he Second Agreement does not permit Mo [Pow] 4 to unilaterally relocate the facilities for Crypto Infiniti without a basis for relocation, notice, and cooperation with Crypto Infiniti." ECF No. 98 at 4. Conversely, Mo Pow argues that it "could relocate the site if necessary or desirable for Host's efficient use of the facility." ECF No. 99 at 5, n.2 (citation omitted). And further, Mo Pow avers that it did not need to notify Crypto "because Crypto refused to perform." *Id.* at 5. This determination is a question of law for the Court to determine. *See Pope v. Rosenberg*, 2015 WY 142, ¶ 21, 361 P.3d 824, 830 (Wyo. 2015) (noting that contract interpretation is a question of law). Such findings are outside the scope of the instant *Motion*.

profit damages, the Court can only conclude that Mr. Hall's Expert Report will aid the finder of fact in determining the appropriate calculation of damages.

### III.   Mr. Hall's Reliance on Previously Undisclosed Documents

Crypto argues that Mr. Hall "has an insufficient basis for his opinions because of Mo [Pow] 4's failure to properly disclose the documents he relies upon as part of the discovery process." ECF No. 98 at 5. Mo Pow contends that the subject documents did not become relevant until "Mr. Hall performed his expert work, which is why they were not previously produced." ECF No. 99 at 6. According to Mo Pow, "[u]nderstanding Mr. Hall's use of the Texas site involved documents not yet produced in the case, [they] produced every document Mr. Hall considered that had not yet been produced four days after filing Mr. Hall's report." ECF No. 99 at 3.

As Rule 37 provides, if a party fails to provide initial disclosures under Rule 26— "unless the failure was substantially justified or is harmless"—that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial." FED. R. CIV. P. 37(c)(1)(C). Out of an abundance of caution, the undersigned will not make a final determination as to whether Mo Pow's supplemental disclosures were substantially justified or harmless, and only provide a recommendation to the assigned district court judge. With that in mind, the undersigned recommends that the Court find Mo Pow's failure to provide certain documents Mr. Hall relied upon in his report until after his report issued, was substantially justified. As Crypto has repeatedly pointed out, the inclusion of Mo Pow's damages expert was prompted by the Court:

> [T]he Court found that Mo Pow 4 was seeking expectation damages…and
> found that such damages were not limited by the Agreement and presumably
> the damages would be Mo Pow 4's profits over the term of the contract minus
> any deductions; however, the Court did not have sufficient information to
> determine that calculation. Then, the Court offered Mo Pow 4 the opportunity
> to retain an expert, despite discovery being closed and the expert disclosure
> deadline being well passed.

ECF No. 94 at 3 (citations omitted). Over Crypto's protestations, the Court entered an order

allowing Mo Pow 4 to designate a damages expert. *See* ECF No. 79. Given the Court's

prior order, and Mo Pow's claim that the documents in question did not become relevant

until the Court requested briefing on lost-profit damages and allowing the parties to

designate damages experts after the expert disclosure deadline had passed, the undersigned

recommends a finding that Mo Pow's supplementation is reasonable and substantially

justified under Rule 37(c)(1)(C).

**CONCLUSION**

Based upon the preceding, the Court finds that Mo Pow's expert, Mr. Hall and the

opinions set forth in his Expert Report, meet the requirements of Federal Rule of Civil

Procedure 26(a)(2)(B) and Federal Rule of Evidence 702. Further, the undersigned

recommends that the presiding judge find Mo Pow's failure to provide certain documents

relied upon by Mr. Hall to support his lost profits damage opinion until after the close of

discovery was substantially justified. Accordingly, Crypto's *Motion* (ECF No. 98) is

**DENIED**.

Dated this 11th day of March, 2025.

17

Scott P. Klosterman
United States Magistrate Judge